IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SCOTT TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-708C |
| v. | ) | (Judge Lettow) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to the Rule 16 and Appendix A (II & III) of the United States Court of Federal Claims ("RCFC"), the parties, Scott Timber, Inc., ("Scott") and the United States, respectfully submit this Joint Preliminary Status Report:

a. Jurisdiction

Plaintiff, Scott, asserts jurisdiction pursuant to 28 U.S.C. §1491. At this time, the United States is not aware of any reason why the Court would not possess jurisdiction.

b. Should the case be consolidated with any other case?

No.

c. Should trial of liability and damages be bifurcated?

The issues of liability and damages are sufficiently distinct in this case so that they can be tried efficiently in separate proceedings. If plaintiff prevails on one or more issues of liability, then the parties may be able to resolve the issue of damages without further formal proceedings before the Court. On the other hand, if defendant prevails on liability, then a trial on damages will not be necessary. Both parties currently anticipate that they will need experts to testify on damages and expert damage reports. This will entail significant additional expense

and effort that could be avoided if the issue of liability is resolved first. Of course, if defendant indicates that settlement in this case is reasonably likely, assuming that plaintiff's alleged amount of damages can be verified, plaintiff will voluntarily provide backup for its damages to defendant prior to the Court reaching a judgment on liability.

d. Should further proceedings in this case be deferred pending consideration of another case before this court or any other tribunal?

Plaintiff recommends that discovery in this case be suspended pending completion of discovery on liability in Blue Lake Forest Products, Inc., et al. v. United States, No. 01-570C, now pending before Judge Williams.[1] Blue Lake, like the instant case, involves the suspension of Forest Service timber sales in the wake of the decision in Oregon Natural Resource Council Action v. Dombeck, 59 F. Supp.2d 1085 (W.D.Wash. 1999) ("ONRC Action"), and the Forest Service's failure to perform certain required wildlife and plant surveys prior to awarding these timber sales. In ONRC Action, the United States district court found that the Forest Service's interpretation of the wildlife and plant survey requirements was arbitrary and capricious because it exempted many timber sales from the survey requirements. Timber cutting on these sales was enjoined by the court and later suspended under a settlement agreement between the ONRC Action plaintiffs and the Forest Service until the Forest Service could complete the required surveys. 59 F. Supp.2d 1085, 1091-97. Discovery in the Blue Lake case relating to the Forest Service's interpretation of the survey requirements involves essentially the same individuals, documents and issues of fact as in the instant case. That discovery has involved a substantial number of disputes over claims of privilege by the Government. Many of those claims have now

[1] Blue Lake Forest Products, Inc., et al. v. United States, No. 01-570C, is the lead case for the cases for which it is currently consolidated, Timber Products Co. v. United States, No. 01-627C, and CLR Timber Holdings, Inc. v. United States, No. 04-501C.

been resolved by Judge Williams, and she has indicated that she intends to issue a written opinion in the very near future resolving all the remaining claims. The suspension of discovery in this case pending the issuance of Judge Williams' opinion and the completion of discovery on liability in Blue Lake would provide the Court and the parties in this case with the benefit of Judge Williams' reasoning. This may facilitate discovery in this case and obviate the need to relitigate exactly the same discovery issues in this case.

The United States does not believe further proceedings in this case should be deferred pending consideration of Blue Lake or any other case. Defendant agrees that discovery in Blue Lake is well underway. Defendant, however, characterizes that discovery as being focused upon the reasonableness of the Bureau of Land Management's (BLM) and the Forest Service's November 1, 1996 directive, interpreting the survey and manage requirements of the Northwest Forest Plan and the reaffirmation of that directive in a September 11, 1998 instructional memorandum.

The initial suspension, which was caused by the ONRC litigation, is only one of many legal issues present in this case. To determine liability, the Court must consider whether the Forest Service had the authority to suspend the sale pursuant to contract language, and also whether the suspension itself and the duration of the suspension were reasonable. Defendant believes that this Court has previously found that the Government's failure to comply with statutory environmental requirements may qualify as a breach, but only if the Court concluded, after consideration of other relevant facts, that the Forest Service did not act reasonably in carrying out its obligations**.** Scott Timber Company v. United States, 333 F.3d 1358 (Fed. Cir. 2003); H.N Wood Products v. Unites Stated, 59 Fed. Cl. 479 (2003).[2] The answer to these

[2] Plaintiff disputes this interpretation of Scott Timber.

questions requires the analysis of the individual circumstances surrounding each individual sale.

Plaintiff asserts that much of the discovery in Blue Lake also applies directly to the key issue of the Government's liability in this case. Yet, it is defendant's position that the only similarity is the initial issue of law, and not fact, of whether the Government had the contractual authority to suspend the timber sale contracts in light of the ONRC injunction. With respect to whether the suspensions and their duration were reasonable, and, if applicable, whether plaintiff can establish damages owed to it as a result of the suspensions, the similarities between the cases and the discovery begin to diverge.

Additionally, it is questionable that discovery in Blue Lake will conclude in the near future. The parties in those cases have been engaged in discovery for at least three years, are currently in the midst of fact discovery, have taken several depositions, and anticipate that discovery will continue for several months. They have, however, also been engaged in several complex discovery disputes for a year now. There is no guarantee that those disputes will be resolved in the near future. Further, even if the disputes were resolved in the near future, defendant would, of course, work with plaintiff to consolidate any discovery that has already been conducted and to avoid the duplication of effort.

As such, we see no reason to suspend discovery in this case pending the outcome of the Court's decision regarding the discovery in Blue Lake.

e. In cases other than tax refund actions, will a remand or suspension be sought?

The parties agree that no remand or suspension will be sought.

f. Will additional parties be joined?

Neither party intends to join additional parties.

g. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c) or 56 and, if so, a schedule for the intended filing?

Both parties reserve the right to file a dispositive motion before and shortly after the completion of discovery.

h. What are the relevant factual and legal issues?

Plaintiff's Issues:

(1) Whether the United States Forest Service breached the Pigout timber sale contract by suspending that contract.

(2) Whether the suspension of the Pigout timber sale contract was unreasonable as to cause and/or duration.

(3) Whether the Forest Service breached an alleged warranty under clause CT6.25 of the Pigout timber sale contract.

(4) In the alternative, assuming that the Forest Service's suspension of the Pigout contract was not a breach, did the Forest Service fail to pay Scott certain out-of-pocket costs within the scope of contract clause CT6.01?

(5) What damages, if any, is plaintiff entitled to as a result of the Forest Service's suspension of the Pigout timber sale contract?

(6) Whether the United States Forest Service breached the Jigsaw timber sale contract by suspending that contract.

(7) Whether the suspension of the Jigsaw timber sale contract was unreasonable as to cause and/or duration.

(8) Whether the Forest Service breached an alleged warranty under clause CT6.25 of the Jigsaw timber sale contract.

(9) In the alternative, assuming that the Forest Service's suspension of the Jigsaw contract was not a breach, did the Forest Service fail to pay Scott certain out-of-pocket costs within the scope of contract clause CT6.01?

(10) What damages, if any, is plaintiff entitled to as a result of the Forest Service's suspension of the Jigsaw timber sale contract?

(11) Whether the United States Forest Service breached the Whitebird timber sale contract by suspending that contract.

(12) Whether the suspension of the Whitebird timber sale contract was unreasonable as to cause and/or duration.

(13) Whether the Forest Service breached an alleged warranty under clause CT6.25 of the Whitebird timber sale contract.

(14) In the alternative, assuming that the Forest Service's suspension of the Whitebird contract was not a breach, did the Forest Service fail to pay Scott certain out-of-pocket costs within the scope of contract clause CT6.01?

(15) What damages, if any, is plaintiff entitled to as a result of the Forest Service's suspension of the Whitebird timber sale contract?

Defendant's Issues:

(1) Whether the Forest Service breached plaintiff's Whitebird and Jigsaw timber sale contracts by temporarily suspending operations under the contracts from August 31, 1999, to June 9, 2003, pursuant to clause CT6.01 of the contract.

(2) Whether the Forest Service breached plaintiff's Pigout timber sale contract by

temporarily suspending operations under the contract from August 31, 1999, to June 11, 2002, pursuant to clause CT6.01 of the contract.

(3) Even though the Forest Service's temporary suspensions were based upon contract clause CT6.01, did the Forest Service nonetheless breach any implied duties to cooperate and not to hinder plaintiffs' performance and/or breach an implied warranty under CT6.25, if such a warranty exists.

(4) What damages, if any, is plaintiff entitled to as a result of the Forest Service's temporary suspension of plaintiff's Whitebird and Jigsaw timber sale contracts from August 31, 1999, to June 9, 2003, pursuant to clause CT6.01 of the contract.

(5) What damages, if any, is plaintiff entitled to as a result of the Forest Service's temporary suspension of plaintiff's Pigout timber sale contract by temporarily suspending operations under the contract from August 31, 1999, to June 11, 2002, pursuant to clause CT6.01 of the contract.

i. <u>What is the likelihood of settlement? Is alternative dispute resolution contemplated?</u>

The parties intend to make every effort to resolve this case amicably. At this point alternative dispute resolution is not contemplated, but the parties will continue to consider this option throughout the litigation. If deemed warranted, the parties will pursue settlement negotiations as the litigation progresses.

j. <u>Do the parties anticipate proceeding to trial?</u>

If this case cannot be resolved through settlement or dispositive motions, the parties anticipate that they will proceed to trial. Neither party requests an expedited trial schedule. If a trial is required, the parties believe that it should be held at a location that is most convenient for the witnesses and the Court. The parties will work together to determine what that location will

be.

k. Are there special issues regarding electronic case management needs?

There are no special issues regarding electronic case management needs.

l. Is there other information of which the Court should be aware at this time?

The parties are unaware of any such additional information.

m. Joint Proposed Scheduling Plan

Plaintiff recommends that discovery be suspended in this case pending the completion of discovery on liability in Blue Lake Forest Products, et al., No. 01-570C. Within 10 days after the close of discovery in that case, the parties will recommend a schedule for the completion of discovery in this case, if any such discovery is necessary.

In the alternative, if discovery in this case is not suspended, the parties recommend that discovery begin as of the date of this joint preliminary status report and continue until October 30, 2006.

Respectfully submitted,

s/Gary G. Stevens
GARY G. STEVENS
Saltman & Stevens, P.C.
1801 K Street, N.W, Suite M-110
Washington, D.C. 20006
Phone: (202) 452-2140
Fax: (202) 775-8217

Attorney for Plaintiff

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/Lindsay E. Williams
LINDSAY E. WILLIAMS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Phone: (202) 353-7995
Fax: (202) 514-8624

OF COUNSEL:
MARCUS R. WAH
Associate Regional Attorney
USDA-OGC, Pacific Region

January 23, 2006

Attorneys for Defendant