208

United States Department of Agriculture

Forest Service

FAX TRANSMITTAL COVER SHEET

DATE: 11/12/98 TIME: 1:00 pm

TO: T. Boling - Gen. Lit

FAX NO.: Owen Schmidt - OGC

TELEPHONE NO.:

TOTAL NO. PAGES: 6
(Including Transmittal Sheet)

FROM:

U.S. FOREST SERVICE
PACIFIC NORTHWEST REGION
PLANNING & ENVIRONMENTAL AFFAIRS

SUSAN M. ZIKE
ATTORNEY
FOIA & LITIGATION

TELEPHONE NO.:

ROBERT DUNCAN PLAZA
333 SW FIRST AVENUE
PORTLAND, OR 97208-3623

P.O. BOX 3623
TEL: (503) 808-2257
FAX: (503) 808-2255

MESSAGE:

Ted & Owen:

(1) I have rec'd Dugan's 11/10/98 ltr. requesting additional sales & White Pass Ski Area. I am in the midst of Big A.R. filing due Monday. I will check on these sales mid-next week unless you tell me otherwise.

(2) Attached is press release from ONRC to Eugene, OR newspaper. FYI

~~If you do not receive all pages, please call back as soon as possible.~~

Apparently ONRC believes our settlement nego's need some public opinion. I'm appalled at their tactic... but what's new!

Sue

Released Pursuant to Court of Federal Claims Order of 3/29/07

EXHIBIT
Plaintiff's Trial Exhibit No. 86

TAB92212

PLAINTIFF'S EXHIBIT 45
8-24-07 JB

# The Register-Guard

Post Office Box 10188
Eugene, Oregon
97440-2188
**Telephone** (541) 485-1234
**Toll free in Oregon** (800) 377-7428
**News Dept. Fax number** (541) 683-7631

## Fax cover sheet

**Please forward to:** Patti Burrel

**Date:** 11-12-98

**Time:** 12:15 pm

**Sender:** Lance Robertson

**Number of pages: (including cover)** 5

**Comments:**

I didn't send list of specific timber sales, only the list by forest.

Lance

Sent by: REGISTER GUARD 1541 683 7631; 11/12/98 12:16PM;Jetfax #391;Page 1

TAB92213

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

**Oregon Natural Resources Council**

PO Box 11648, Eugene OR 97440, 541/344-0675, fax 541/343-0996

**For Immediate Release, Wednesday, Nov. 11, 1998**

Contact: Doug Heiken, ONRC, 541/344-0675

# Scores of timber sales rushed through to beat new rules

*Clinton administration put logging targets ahead of forest wildlife protection*

Eugene—Scores of Northwest federal timber sales, totaling over half-a-billion board feet, were rushed through by the Clinton administration this fall in order to avoid forest wildlife protection rules that took effect Oct. 1, according to a new study.

The review of federal data by the ForestWater Alliance—a coalition of 21 conservation groups representing over 100,000 citizens from northern California to the Canadian border—shows the administration has been putting timber cutting targets ahead of wildlife protection rules established in President Clinton's Northwest Forest Plan.

Conservationists have long been critical of the government's frequent practice of waiting until the closing hours of the fiscal year to approve a gamut of projects and policy decisions.

A Sept. 14 letter from two U.S. forest supervisors reveals, the government's motivation for this year's last-minute rush of decision-making. The letter states that a decision will be signed on Sept. 30 to avoid wildlife protection rules that would take effect on Oct. 1.

"Beginning in Fiscal Year 1999 (i.e. for any decision signed after September 30, 1998) preproject surveys are required for an additional 71 Survey and Manage and Protection Buffer Species.... Projects like ours face possible lengthy delays if decisions are not signed prior to Oct. 1, 1998," supervisors Ted Stubblefield and Sonny O'Neal wrote in their letter to interested citizens. (The text of the letter, along with a list of all logging sales rushed through to beat the Oct. 1, deadline, are available on the ForestWater Alliance Web site, at: http://www.forestwater.org)

"The federal government made a promise to the American people that they would protect our ancient forests," said Doug Heiken of the Oregon Natural Resources Council, a member of the conservation alliance. "But federal officials are avoiding the forest protection rules because of a political timber target."

"When push comes to shove, the federal government doesn't care about protecting ancient forests or even following their own rules," said Heiken. "They just care about providing old growth timber to a few big timber corporations." "We see this as the first step back to the dark days of federal forest management, when political timber targets held sway over forest protection," said Heiken.





Released Pursuant to
Court of Federal Claims
Order of 3/29/07

Received: 11/11/98 9:21AM; 5033430998 -> REGISTER GUARD; Page 2
NOV-11-98 WED 9:36 ONRC-Eugene P.02

—MORE—

Conservation groups found that 95 timber sales were pushed through before October 1 amounting to 618 million board feet of timber. In Oregon, 67 sales were signed or advertised, amounting to 515.5 million board feet. In Washington, 16 sales and one ski area expansion were signed, amounting to 62.5 million board feet. In California, 12 sales were signed, amounting to 40.73 million board feet.

Locally, the Christy Basin Project on the Middle Fork District of the Willamette National Forest involves 69.5 mmbf of harvest (that 14,000 log trucks worth) on 5,123 acres and 7.2 miles of new road construction and 21 miles of road reconstruction. This sale includes 356 acres of regeneration harvest (clearcutting) in stands that are 110-170 years old. The sale is also within the known range several at-risk "survey and manage" species, including mollusks and vascular plants. The decision was signed September 3, 1998 and published September 17, 1998. ONRC has appealed this sale and the appeal will not be decided until at least December. According to the Forest Service, "The timber harvest would occur over a five year period with a total of approximately thirteen timber sales."

"Christy Basin is the biggest timber sale decision in recent memory on the Willamette National Forest. This decision sweeps five years worth of timber harvest under the rug in order to avoid scrutiny." Says Doug Heiken of ONRC. "The Northwest Forest Plan promised environmentally sensitive timber sales, but the Willamette is rushing to get the cut out so they don't have to do the surveys that might make these sales more environmentally sensitive."

***Changing the rules to cut ancient forests***

In addition to rushing timber sales through, the federal government is attempting to change President Clinton's Northwest Forest Plan to delay implementation of the forest protection rules and allow another year of cutting ancient forests without the wildlife protection rules in place.

At issue are scores of "at risk" plants and animals that depend on ancient forests for their survival. The Northwest Forest Plan requires that these species be surveyed for and protected before stands of ancient forest are cut. The Forest Plan set forth a timeline for implementing surveys for these plants and animals. Under the governments interpretation, the "survey and manage" requirements for timber sales kicked in on October 1, 1998, at the end of the 1998 federal fiscal year.

The federal government has thwarted these ancient forest protection rules in two ways: 1) by rushing through timber sales before the new protection rules kicked in, and 2) by rewriting the Northwest Forest Plan's rules to allow continued logging of ancient forests without surveying for "at risk" species.



11/12/98 12:17PM; Jetfax #391; Page 3/5 1541 883 7831; Sent by: REGISTER GUARD



Released Pursuant to
Court of Federal Claims
Order of 3/29/07

We have a process in place to agree at level one teams that documentation of consistency with NW Plan is adequate. The letter dated June 5,1998 to Umpqua with copies to all forests in NW Plan area outlines that process. When you complete agreement at level one team that documentation is complete for consistency with NW Plan aquatic strategy, as outlined in letter, you may sign Descision Notices for those projects.We do not expect any additional conditions in the BO's when we recieve them if level one teams are in agreement with consistency documentation.
There is always a risk that something may come up that causes you to redo a descision notice but I believe that is a safe risk to take. By signing DN's before 9-30-98, we avoid having to put these projects under the S&M timeline that kicks in on 10-1-98. If all you have waiting on the projects is final BO, I would recommend that you sign DN's after level one team agreement.
if you have other work to do for NEPA besides final BO, then this doesn't apply.
We are working with NMFS on getting them to reprioritize their work to get BO'S out but to be honest with you, the workload has them overwhelmed.
If we recognize that workload as fact then it is more important to get DN's signed when level one teams have completed the consistency documentation and agreed.
I know this will make some folks in Strategic Planning nervous but it is a reasonable risk. We will have the documentation of agreement at level one teams to fall back on. I guess if we find out that this strategy will not work we will have to rethink what we are up to.

BOB DEVLIN-DIRECTOR NATURAL RESOURCES
R-6, PACIFIC NORTHWEST REGION
503-808-2955, FAX 503-808-2469
email: rdevlin/r6pnw@fs.fed.us





Released Pursuant to
Court of Federal Claims
Order of 3/29/07

# Sales Rushed Through in Fiscal Year 1998
# To Avoid Doing Surveys For Ancient Forest Species

**WASHINGTON**

**Forest Service (decisions signed in the last eight weeks of FY 98)**

| | |
|---|---|
| Wenatchee NF | 22.2 mmbf |
| MBS NF | 1.1 mmbf |
| Olympic NF | 9.6 mmbf |
| Gifford-Pinchot NF | 29.6 mmbf |

**WASHINGTON TOTAL 62.5 mmbf (16 Sales and 1 Ski Area Development)**

**OREGON**

**Forest Service (decisions signed in the last eight weeks of FY 98)**

| | |
|---|---|
| Mt Hood NF | 36.05 mmbf (Actual volume higher due to unavailable volumes for some sales) |
| Willamette NF | 132.17 mmbf |
| Deschutes NF | 12.4 mmbf |
| Umpqua NF | 71.75 mmbf (Actual volume higher due to unavailable volumes for two sales) |
| Rogue River NF | 29.3 mmbf |
| Siskiyou NF | 42.3 mmbf |
| Winema NF | 19.9 mmbf |

**Bureau of Land Management (sale notices advertised in final eight weeks of FY 98)**

| | |
|---|---|
| Salem BLM | 25.0 mmbf |
| Coos Bay BLM | 18.5 mmbf |
| Roseburg BLM | 70.43 mmbf |
| Medford BLM | 56.7 mmbf |

**OREGON TOTAL 515.5 mmbf (67 Timber Sales)**

**CALIFORNIA**

**Forest Service (decisions signed in the last eight weeks of FY 98)**

| | |
|---|---|
| Klamath NF | 9.68 mmbf |
| Shasta-T NF | 22.1 mmbf |
| Six Rivers NF | 8.95 mmbf (Actual volume higher due to unavailable volumes for some sales) |

**CALIFORNIA TOTAL 40.73 mmbf (12 Timber Sales)**

**GRAND TOTAL 618.73 MMBF (95 Timber Sales Totaling Over Half a Billion Board Feet)**





Released Pursuant to
Court of Federal Claims
Order of 3/29/07

Survey manage
REC memo
Deviations from
plan

IMPORTANT: This facsimile is intended only for the use of the individual or entity to which it is addressed. It contains information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or it's contents is strictly prohibited. If you have received this transmission in error, please notify us by telephoning and return the original transmission to us at the address given below.

**FROM:** 202-305-0506

**SENT BY:** Ted Boling (202-305-9609)

**TO:** Dinah Bear

**FAX No.** 456-6546

**NUMBER OF PAGES SENT (INCLUDING COVER PAGE):** 5

**SPECIAL INSTRUCTIONS:** I see the following as heavy-hitter issues looming on the Northwest's horizon:

1) Settlement negotiations in ONRC Action v. F.S. & B.L.M. (W.D. Wash.), particularly resolving the impasse over plaintiffs' demand that the survey and manage program for invertebrates be applied to ongoing projects that were authorized before FY 99. Plaintiffs have offered to dismiss this claim in exchange for surveys on projects authorized in the last quarter of FY 98. FS and BLM have no counter-offer because the FY 99 timber program is already going to be reduced by the required surveys (pursuant to an EA that will exclude 32 of 80 species from survey) and plaintiffs' proposal would affect about 20 % of the BLM FY 98 program and about 50 % of the FS FY 98 program for Region 6. Attached is a discussion of the issue.

2) EA for FY 99 Survey and Manage program for 80 invertebrates, related to ONRC Action and becoming more so. This EA is scheduled for completion (and ripe for review) on

EXHIBIT
Plaintiff's Trial Exhibit No. 90



PLAINTIFF'S EXHIBIT
126
8-24-09 JB

December 18, 1998. The public comment period closed a few weeks ago. Aside from the relationship to ONRC Action, this matter presents difficult issues of its own. (E.g., the drafting of a FONSI based on a "substantially increased risk" threshold used by scientists who were not instructed to describe risk in terms of NEPA significance). If we are to settle, we ought to include claims against the decision to delay implementation of the surveys for 32 species.

3) ROD proscription against "new developments" in LSRs. Threshold decision is whether this issue is appropriate for resolution at the regional level or whether it is a site-specific analysis that requires some parameters. The DEIS for Pelican Butte ski area project is out for public comment, closing February 3, 1999. See www.fs.fed.us/r6/winema

4) Siskiyou Regional Education Project (challenge to Siskiyou N.F. plan amendment limiting ROD's MM1 standard for plans of operations to significant surface disturbance). The answer is due December 14, 1998. This raises the larger question of the necessary level of coordination and approval of Forest- or District-level deviations from the ROD.

5) ICBEMP coordination with Northwest Forest Plan. As the "new approach" is developed in December and January for the Reg. Exec. meeting in January, questions about the implications for the five-year old NFP will have to be addressed. One issue pending is whether the "new approach" for ICBEMP will amend the Northwest Forest Plan, where there is overlap, or leave the NFP untouched.

6) Budget for NFP: is the implementation, effectiveness and validation monitoring getting the funding it needs? ONRC Action plaintiffs claim the non-timber aspects of NFP implementation are being short-changed. Larger issue is whether DC will supervise both NFP and ICBEMP regional efforts to ensure that they get the budgetary authority, legal and political support necessary. On this point, I see the need for a regular (monthly or bi-weekly, as necessary) Northwest group staffed by Assistant Secretary-level designees. This group would work with the region to identify issues for ISC-type review and ensure coordination in efforts like the budget process (we don't need another ICBEMP that has no budget support). Reps from EPA CEQ, DOI, DOJ, NMFS OMB & USDA. Maybe DOE & COE if the group would also cover dams, cost cap, etc. BPA

Failure to Survey Projects Authorized in FY 98 for Invertebrates — High Litigation Risk, Major Program Impact

The ROD requires that surveys for 80 invertebrates "must be completed prior to ground disturbing activities that will be implemented in F.Y. 1999 or later." ROD, C-5. The scope and effect of this provision is an issue of potentially significant impact to the timber program authorized in previous fiscal years. If plaintiffs prevail, all authorized timber sales and other ground disturbing activities that were not completed in Fiscal Year 1998 would have to be stopped for invertebrate surveys. If one of these species is found, the action would have to be modified in accordance with the protocol's management prescriptions. Because these surveys must be conducted under seasonal parameters by a limited number of trained biologists, the administrative burden alone could cause a significant reduction in the timber program for several years. Given these high stakes, plaintiffs are unlikely to significantly reduce their demand for surveys on all projects authorized in the final quarter of Fiscal Year 1998 (which constitutes a substantial portion of the annual program).

The agencies' interpretation of the ROD is difficult to square with the common meaning of the term "implemented." As used in Forest Service and BLM regulations, implementation refers to activity that occurs after a timber sale decision. Forest Service project appeal regulations refer to "implementation of decisions" and identify "implementation" as what may occur after the close of the post-decision appeal period or appeal disposition. See, e.g., 36 CFR 215.8(b) ("subsequent implementing actions that result from the initial project decision" are not subject to appeal); 215.10(b) ("implementation may not occur for 15 days following the date of appeal disposition."). BLM forest management decision regulations also identify implementation as post-decision action. See, e.g., 36 CFR 5003.2(a) (decision notice to "specify when a decision governing or relating to forest management shall be implemented"); 5003.3(f) ("Upon denial of a protest . . . the authorized officer may proceed with implementation of the decision."). The interpretation memo addresses this by citing these regulations as referring to a conflated NEPA "decision/implementation" point.

Reading the term in context, the ROD's description of the survey and manage provision could be read as supporting either a pre-decisional or post-decisional approach. In its description of the survey requirement, the ROD distinguishes authorization from implementation and refers to the FY 1999 requirement as encompassing both. ROD at 37 ("In all cases, these surveys must be completed prior to ground disturbing activities that will be authorized or implemented in FY 1999 or later."). The ROD recognized the magnitude of the task and provided "a maximum of four full fiscal years (FYs 1995, 1996, 1997 and 1998) in which to develop and apply survey protocols for these species ." Id. However, the agencies' assessment that the ROD intended for survey information to precede and inform project decisions also finds support in the ROD. ROD C-5 (vole and salamander surveys "must precede design of all ground-disturbing activities that will be implemented in 1997 or later.")

The agencies' interpretation finds its best support in the logic of the NEPA decision process, which requires that a project decision identify its environmental impacts, and the timber sale process that is an irreversible commitment of resources based on that decision. Plaintiffs' reading of the provision would deny the public this information and would have led to a rush to harvest all unsurveyed timber sales at the end of FY 1998. Plaintiffs reading would also have required the Forest Service and BLM to change timber sale procedures to allow for post-sale modifications based on survey information and to require the purchasers to coordinate harvest actions with the agencies's surveys. Finally, the deference ordinarily due to an agency interpretation of its own rules is buttressed by two fiscal years of reliance on this interpretation in the context of salamanders and the red tree vole.

At this point, we have no counter-proposal to plaintiffs' demand that all projects authorized in the last quarter of FY 1998 be surveyed. Plaintiffs' demand would encompass much of the FY 1998 timber program, which plaintiffs contend indicates that the agencies were rushing decisions out the door before the FY 1999 survey deadline. With one exception, this end of the fiscal year activity appears normal, and compounded by delays in ESA consultation. We have maintained that plaintiffs' demand would encompass more projects than is feasible for a program that is currently struggling to address the FY 1999 workload and is going

through an EA process to delay survey requirements for 32 of the 80 species that are technically infeasible to survey for. Finally, any reduction in the number of authorized timber sales available for award would impact timber industry intervenors, who would likely challenge a settlement before Judge Dwyer or, more likely, before Judge Hogan as a violation of our commitment to provide replacement volume timber in the settlement of Northwest Forest Resources Council v. Glickman.

TB: 11/25/98

1. reply to ~~[illegible]~~ ONRC sent – allen/nesbitt fax
2. send TB sale chart → took out "final offer"
3. Shiffer issues: w/ Copperman — edited in case of public

1. ~~[illegible]~~ "implement" defn as nonsense
2. timber market – success rate / impact of program
3. avail. of personnel to do survey – # staff

Forest / MMBF /

Shiffer TB

1. Interp. of "implement" = DN is nonsense →

2. Market – flat
how many sales affected by survey would actually be offered in next year + current expectation (52) ~~50~~
(to explain to industry as no harm – enuf already available)
diff between wait for DN + advertise

3. National office attention
put bios on these folks to do it:
(12 (botanists)
2 lichen
1 [illegible]
[illegible]

417 mmbf

Rle 789.7
owl 417

TB
Brooks

10/14/98

Judy Nelson ... ... Corcoran

TB 1. proposed scheduling
... 10/18/98 ...
π SJ 12/18 / π SJ x X mot 12/18
X SJ 1/99

... for PI

π - filing emerg. TRO/PI : enjoin award any sales violates FY99 $1M insert

TB 2. Info: what's awarded & when
Frampton: what sp. surveyed for, time frame, last Q FY98 DN, awarded & unawarded
GJah: Frampton also wanted: history $1M
history of offer/bid v. no bid
for FY98

1. program effects → what's unawarded + effects

2. ~~last quarter FY98 sales~~ Is it possible to do more scope of 12 spp. surveys than ROD regt?

TAB92340

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

Part 1

TO: Nancy Graybeal / r6pnw
Robert J. Devlin / r6pnw
Robert W. Williams / r6pnw

CC: Margaret Kain / r6pnw
brian stone / r5
Lisa E. Freedman / r6pnw
Arnold G. Holden / r6pnw
Sarah Crim / r6pnw

Part 2

Bob/Nancy: To update you briefly: 1) DOJ agreed to defend our definition of "implement" under the ROD to mean NEPA decision; 2) to make the defense, DOJ wants to tell the court that even tho' "implement" means NEPA decison, the agencies are going to do the FY99 12 spp. surveys on the last quarter sales anyway (or in the alternative, the cost of doing these surveys is so much $ and so much MMBF foregon for FY99/00); and 3) DOJ asked that we review the sales we want to award in the next 30 days for legal exposure to the issues in this lawsuit.

DOJ still believes we have "underawarded" FY98 advertised volume (assuming soft market; thus no harm to timber industry) and there is excess vol to fill the FY99 void created by doing FY99 12 spp surveys on the last quarter FY98 sales this coming field season.

WO Rod Sallee/Nancy asked for another detailed briefing paper by COB 12/8. We're working on 3 fronts: Kain is preparing the history of R6 program of advertised vol and awarded vol from FY93-98 to show the "award" rate and the normal peak of advertisements in 4th quarter; 2) Escano, Madsen, and Cheryl McCafferty are preparing a summary of the 12 spp protocols which will conclude with the costs and impact to FY99/00 programs that I have from the forests; and 3) I'm developing a checksheet to help us determine what sales, if any, we should proceed to award in the next 30 days and their legal exposure.

NOTE: I understand the BLM is deciding this week whether to award Murphy TS (IBLA recently upheld "implement" definition). It seems we need to be talking with BLM about this. We have as much if not more at stake if Murphy TS prompts a Pre. Inj. I've called Owen about this and we'll try to talk to Roger Nesbit about this tomorrow. I think it may fall to RF/State Director to make this decision.

*****
Susan M. Zike
R6 Litigation Coordinator
503-808-2257
503-808-2255 FAX
DG szike/r6pnw:fs
email szike/r6pnw@fs.fed.us
**********

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

Forw: ONRC Action: end of delay period Dec. 3 - DOJ request

From: Susan Zike
To: Susan L Carter /r6pnw.wenatchee
To: Jan Flatten /r6pnw.okanogan
To: Jamie R. HansenMurray /r6pnw.mbs
To: Ward Hoffman /r6pnw.olympic
To: Fred Dorn /r6pnw.pn

Forw: ONRC Action: end of delay period Dec. 3 - DOJ request

I'm hoping my earlier message to you all is attached... this system still baffles me! The bottom line is this: before you award any of the sales listed in the attached chart, please give me, Devlin, Peggy, Owen Schmidt and Ted Boling (ted.boling@usdoj.gov) an e-mail message at least 7 days in advance. RO will be scheduling a conf call with al of you next week re: the award of these sales in general. Any q' call: 503-808-2257

Susan M. Zike
R6 Litigation Coordinator
503-808-2257
503-808-2255 FAX
DG szike/r6pnw.ds
email szike/r6pnw@fs.fed.us

This message
Distribution list (1936 bytes)
Message_Body (570 bytes)
9-17_listall_delayinfo.aw (262580 bytes)
ONRC Action: end of delay period Dec. 3 - DOJ request

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

EXHIBIT
Plaintiff's Trial Exhibit No. 95

0 1745

PLAINTIFF'S EXHIBIT 56

Part 1

TO: DISTRIBUTION (Title: Distribution list)

Part 2

I'm hoping my earlier message to you all is attached... this system still baffles me! The bottom line is this: before you award any of the sales listed in the attached chart, please give me, Devlin, Peggy, Owen Schmidt and Ted Boling (ted.boling@usdoj.gov) an e-mail message at least 7 days in advance. RO will be scheduling a conf call with al of you next week re: the award of these sales in general. Any q' call: 503-808-2257

*****
Susan M. Zike
R6 Litigation Coordinator
503-808-2257
503-808-2255 FAX
DG szike/r6pnw:fs
email szike/r6pnw@fs.fed.us
**********

Part 3

This item is of type Applix Words and cannot be displayed as TEXT

Part 4

Part 4.1

TO: DISTRIBUTION (Title: Distribution list)

Part 4.2

Govt's promise to delay the award of certain timber sales pending settlement ends on Dec 3. Settlement of the case does not appear likely. To be prepared for what legal manueverings ONRC might employ (motion for a broad prel. inj. is likely), DOJ Ted Boling requested today that the Forest Service give him a 5 day notice before awarding any of the sales listed by ONRC in their 9/17/98 letter. (I have attached the infamous sideways chart of these sales for your convenience!).

If you intend to award any of the listed sales, please e-mail the notice to me, Peggy Kain, Bob Devlin, Owen Schmidt (oschmidt@att.net) and Ted (ted.boling@usdoj.gov) at least 7 days before the award letter is to be sent to the purchaser to account for computer down time and other delays.

Please keep in mind (as CO's always do) the liability that may come to the USFS if the sale is awarded and then enjoined. Is there a need for a regional conf call re: the award question? I'm thinking we need to at least air the needs and risks of going forward. Please let me know. As usual, we want Ted up to speed on our plans and you all have been so helpful keeping us posted.

Thanks!

*****
Susan M. Zike
R6 Litigation Coordinator
503-808-2257
503-808-2255 FAX
DG szike/r6pnw:fs
email szike/r6pnw@fs.fed.us
**********

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

Part 4.3

This item is of type Applix Words and cannot be displayed as TEXT

0 1746

Subject: ONRC Action: process to award sales named by plaintiffs
Sender: Susan Zike /r6pnw
Attached Date: 12/04/98 17:25
Priority: normal
Sensitivity: normal
Importance: normal

Part 1

TO: DISTRIBUTION (Title: Distribution list)

Part 2

Alan Wood (BLM case coord) and I rec'd a letter from DOJ Boling explaining the status of the lawsuit and making it clear that USFS and BLM are free to award sales that were the subject of settlement discussions during the past 3 months. However, he requests that DOJ be kept informed (at least 5 days notice) of the agencies' plans to make any such award with the following info: 1) review of issues in Plaintiffs' appeal of sale and lawsuit issues with OGC; 2) tell DOJ OGC's opinion of risk of ONRC using the sale to be awarded as a basis for a TRO or Pre. Inj; 3) compile admin. rec for t.e sale to be awarded; and 4) complete all prerequisites to make the award. He ..equests that this info be made available ASAP for only those sales that any of the plaintiffs appealed and we intend to award in the next 30 days. (Devlin/Kain: I put copy of this letter on your chairs)

This request by DOJ is in anticipation of ONRC seeking a Pre. Inj of either "any" sale or specific sales (already awarded or recently awarded) that would be implemented in FY99 for which FY99 s/m surveys were not done. I think DOJ concern is that we need to on the firmest ground possible before we award a sale that ONRC has expressed an FY99 S/M concern. We don't want any NEPA/NFMA blows in defending a recently awarded sale. While we can't modify the admin. rec. any sale, we can make sure at this juncture that before we make the award all of our procedures are clean.

I know that the WIN wants to award Spencer and Long and the MTH wants to finalize the agreement with purchasers on Bars ATV. So those forests need to put together the info to answer #1 -4 above and get it into Devlin, Kain and me. Along with the forest and OGC, lets figure out the risk we're running and advise DOJ according.

The above process REPLACES my message to you earlier this week about giving DOJ, OGC and me 7 day email notice. Sorry for the confusion!

*****
Susan M. Zike
R6 Litigation Coordinator
503-808-2257
503-808-2255 FAX
DG szike/r6pnw:fs
email szike/r6pnw@fs.fed.us
**********

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

0169

EXHIBIT
Plaintiff's Trial
Exhibit No. 96

A-517

PLAINTIFF'S
EXHIBIT
59
8.20.07 SKK

Subject: Award Of Jack Heli TS
Sender: Edward L. Matthews /r5,klamath
Attached Date: 12/02/98 15:39
Priority: normal
Sensitivity: normal
Importance: normal

Part 1

TO: bstone / r5

CC: bcox
ematthews

Part 2

Brian: I am planning on awarding the above sale on 12/18/98. Ed

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

U.S. Department of Justice

Environment and Natural Resources Division

General Litigation Section
P.O. Box 663
Washington, DC 20044-0663
90-1-4-09179

Telephone (202) 305-0504
Facsimile (202) 305-0506

December 4, 1998

**ATTORNEY-CLIENT COMMUNICATION**

Sue Zike, Esq.
Litigation Coordinator
U.S. Forest Service Region 6
Robert Duncan Plaza
333 SW First Avenue
Portland, OR 97208-3623

Alan Wood
Forester
Oregon/Washington State Office
Bureau of Land Management
P.O. Box 2965
Portland, OR 97208-0039

Re: Oregon Natural Resources Council Action v. U.S. Forest Service and BLM, Civ. No. C98-942 (W.D. Wash.)

Dear Sue and Al:

This is to make clear our request for information regarding timber sale awards that may become the subject of an emergency injuction motion in the above-captioned matter. As of today, we have no agreement with plaintiffs to hold on to the award of any timber sales. Therefore, the Forest Service and BLM are free to award pursuant to applicable law and the exercise of sound discretion.

However, it is essential to the defense of this matter that the Department of Justice be kept informed of the status of pending timber sale awards, particularly the date on which the agency is, in fact, going to award. Forest Service and BLM should tell us that date after 1) having reviewed the issues common to the administrative appeal and the ONRC Action suit with agency counsel (Owen Schmidt and Roger Nesbit), 2) communicated to us its judgment that the award of the sale is worth the risk that the sale will be used by plaintiffs as an example in an emergency motion to enjoin all sales in the area of the Northwest Forest Plan, 3) compiled the essential elements of the administrative record that we will need to defend against such a motion (e.g., have the EA/FONSI and appeal records where they can be copied and sent to DOJ on 1 day notice) and, 4) completed all

contracting prerequisites. This information should be reported as soon as possible (we request 5 business days notice before the award) and updated whenever the status of a timber sale changes. This request only applies to timber sales that have been appealed by plaintiffs and are going to be awarded in the near future (one month at most).

Please let us know if you need any clarification. Thank you for all your help.

Sincerely,

Edward A. Boling
John Watts
Trial Attorneys

cc: Owen Schmidt
Roger Nesbit

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

# MEMORANDUM

ONRC Action Coordinators

From: Sue Zike, R6 Litigation Coordinator

Date: Dec. 11, 1998

**Subject: Assessing ONRC Action named sales for award (ONRC Action v. USFS, BLM, 98-942WD)**

---

DOJ asked the Forest Service on December 4, to assess the sales ready to award (named by the plaintiffs in their Sept. 17 letter, as amended) for litigation risk before giving DOJ 5 day notice that we intend to award. DOJ asked that 4 steps be taken; described below. These sales are in the sideways chart I sent to R6 forests and a spreadsheet that Brian Stone sent to R5 forests.

1. Compare the issues raised by ONRC Action plaintiffs (there were 11, see list below) in their administrative appeal of the sale's decision notice or record of decision WITH the issues in the lawsuit. Confer with the Office of the General Counsel (Owen Schmidt) about the litigation risks and strengths of the sale's analysis and decision. See the attached chart for STEP 1.

2. Communicate to DOJ our determination that the award is worth the risk of ONRC Action using it as a basis of a TRO or Preliminary Injunction which will serve as the 5 days notice as long as STEPS 3 and $ are completed. See STEP 2 described below.

3. Compile the essence of the administrative record for the sale. See STEP 3 described below.

4. Complete all prerequisites to making contract award. See STEP 4 described below.

By my tally, R6 has 25± sales that have been listed by ONRC and are ready to award; R5 may have 3±. BLM has 2 sales it wants to award soon, but is willing to wait a bit more and coordinate with us. If you have Alternative Volume sales listed by ONRC that you've reached agreement on with the purchaser, prepare a brief description of the sale (name, vol, appeal, land allocation, purchaser with some narrative about the sale location and type of harvest). So far, DOJ has supported our completion of ATV contract modifications as long as we have given DOJ good detail and adequate notice.

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

0244



EXHIBIT
Plaintiffs Trial Exhibit No. 101

STEP 1: Complete this chart for each sale and send to Zike and Kain in RO; we'll review and coordinate OC review with you to assess the risks.

COMPARISON OF LAWSUIT ISSUES AND ADMINISTRATIVE APPEAL ISSUES

Forest: ____________ Sale name: ______________ NEPA decision date:______ Sale vol:__________mmbf

| Lawsuit issue | Raised in appeal? | Projects' response to issue: |
|---|---|---|
| 1. Gov't interpretation of "implement" for s/m purposes is in error | y/n | project analysis is not likely to respond to this issue; tell me if you did any FY99 s/m surveys before FY99 on this project. |
| 2. Red tree vole surveys are not to protocol because govt has limited surveys to edges of habitat | y/n | Is RTV habitat in sale area; if no what info supports your conclusion? identify the protocol you used; dispersal habitat only? Summary of results; have RTV survey documents in AR |
| 3. PSQ is dependent upon volume from LSR's and RR' | y/n | Is there proposed harvest in RR or LSR? if so, what does EA say? If LSR, what WA or LSR assessment is the basis? If RR, what ACS objectives attainment? |
| 4. ROD requires unstable and potentially unstable slopes to be included in RR designations; small wetlands <1A must be protected by 100' buffer | y/n | Are there unstable or potentially unstable slopes or small wetlands identified in this sale area? What was the SRI or EUI classifications? What did you about them? Avoid? Mitigate? Put into RR allocation? What does EA say about it? |
| 5. 15% old growth retention rule should be stringently interpreted | y/n | Is sale in intermingled watershed? did you do 15% analysis and what were results? |
| 6. Failure to adopt management standards for all survey/manage species in ROD | y/n | Your sale EA is probably not responsive to this issue. However if your project applied a management recommendation for an S/M species, tell me |
| 7. S/M Survey protocols are late | y/n | Your sale EA is probably not responsive to this issue. |
| 8. S/M annual reports not done | y/n | Your sale EA is probably not responsive to this issue. |
| 9. Strategy 3 and 4 surveys not carried out | y/n | If you analyzed for Strategy 3 or 4 species, tell me. If your EA in anyway addressed a 3 or 4 species, tell me. |
| 10. Implementation monitoring not done | y/n | Your sale EA is probably not responsive to this issue. But if you make any mention of monitoring in the EA tell me |
| 11. Effective monitoring overdue | y/n | Your sale EA is probably not responsive to this issue. But if you make any mention of monitoring in the EA tell me |
| 12. Salamander protocol not being followed on GP | y/n | Altho this issue was directed at the Gifford Pinchot, tell me about any salamander issue (CA?) you may have addressed in the EA. |

Plaintiff groups are:
- ORNC Action
- American Lands Alliance
- California Wilderness Coalition
- Citizens for Better Forestry
- Gifford Pinchot Task Force
- Headwaters
- Klamath Siskiyou Wildlands Center
- Klamath Forest Alliance
- Northcoast Environmental Center
- Pilchuck Audubon Society
- Portland Audubon Society
- Umpqua Watersheds

**Released Pursuant to Court of Federal Claims Order of 3/29/07**

**0245**

Northwest Ecosystem Alliance

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

STEP 2: OGC AND RO WILL CONTACT DOJ ABOUT RISK ASSESSMENT OF AWARDING SALE. If we determine that the sale is worth the TRO/PI risk and is highly defendable on the issues raised in the lawsuit we'll coordinate a call with the Forest, OGC, RO and DOJ. We may need to involve the WO at this point.
STEP 3: COMPILE THE ESSENCE OF THE ADMINISTRATIVE RECORD (AR) FOR THE SALE

The AR needs to included at a minimum:

1. NEPA document and decision
2. Analysis files and specialists' reports on the issues raised, including the protocols you used, the results of the surveys and any analysis of the results
3. Plaintiff's appeal, appeal file and appeal decision

This needs to be done before we give DOJ notice of intent to award because after award the likelihood of TRO/PI request to the court is very high and we must be ready with our facts and answers. For now I would suggest that you simply have these documents assembled in one place and in chronological order. No need to make copies or begin indexing yet..... all of that fun will have to happen before you sign the award letter!

STEP 4: Completed all prerequisites to making contract award

Assemble in one place the documents that show:

1. the legal advertisement
2. anything that documents the high bidder identification or the negotiations made on no bid sales;
3. financial review completed if necessary
4. contract package ready (prospectus)

We need to be absolutely sure that we are on the cusp of awarding the sale which I think is sending the award letter to the purchaser before we tell DOJ we are going to award. These documents are not usually in the AR but keep them close together because we may need them in a hurry after award.

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

# COMPARISON OF LAWSUIT ISSUES AND ADMINISTRATIVE APPEAL ISSUES

Forest: Klamath Sale name: Jack Heli NEPA decision date: 7/14/98 Sale vol: 14.12 mmbf

2 appeals: 1) Klamath Forest Alliance, California Wilderness Coalition, Citizens for Better Forestry, & Oregon Natural Resources Council (KFA)

2) Klamath Siskiyou Wildlands Center (KSWA)

| Lawsuit issue | Raised in appeal? | Projects' response to issue: |
|---|---|---|
| 1. Gov't interpretation of "implement" for s/m purposes is in error | Yes. KSWA | Protocol surveys were conducted for S/M species as was required by NFP for component 2 species and further clarified in Forest Service Memo 1734-PFP, November 1, 1996. |
| 2. Red tree vole surveys are not to protocol because govt has limited surveys to edges of habitat | No. | The project is located outside of the range of the Oregon RTV (Arborimus longicaudis). Protocol surveys are only required in Oregon for the Oregon RTV. |
| 3. PSQ is dependent upon volume from LSR's and RR' | No. | The project does not harvest timber inside RR's or LSR's. |
| 4. ROD requires unstable and potentially unstable slopes to be included in RR designations; small wetlands <1A must be protected by 100' buffer | No. | All unstable or potentially unstable lands are included in RR's. |
| . 15% old growth retention rule should be stringently interpreted | Yes. KFA | The project did analyze the 15% old growth standard for the watersheds included. The 15% OG assessment found that the watersehds exceeded the 15% retention level. The EUI size class 4 and 5 with crown closures >60% and EUI size class 3 with crown closure >40% with predominants were used. |
| 6. Failure to adopt management standards for all survey/manage species in ROD | No. | Project did not respond to this issue. |
| 7. S/M Survey protocols are late | No. | Project did not respond to this issue. |
| 8. S/M annual reports not done | No. | Project did not respond to this issue. |
| 9. Strategy 3 and 4 surveys not carried out | No. | No strategy 3 or 4 surveys were conducted. |
| 10. Implementation monitoring not done | No. | Project did not respond to this issue. |
| 11. Effective monitoring overdue | No. | Project did not respond to this issue. |
| 12. Salamander protocol not being followed on GP | No. | Del Norte Salamanders were surveyed to protocol for this project; no animals were found. |

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

Plaintiff groups are: ORNC Action
American Lands Alliance
California Wilderness Coalition
Citizens for Better Forestry
Gifford Pinchot Task Force
Pilchuck Audubon Society
Portland Audubon Society
Umpqua Watersheds

0248

United States Department of Agriculture | Forest Service | Pacific Northwest Region | P. O. Box 3623 Portland, OR 97208-3623 333 S.W. First Avenue Portland, OR 97204

File Code: *
Route To: 1570 Litigation

Date: April 23, 1999

Subject: Intent to Award Timber Sales in ONRC Action

To: Brenda Woodard, Umpqua NF

I forwarded your April 19, 1999, letter to the Department of Justice in which you relay your intent to award Chapter 4 Salvage, T-Line Salvage, Salty, Jigsaw, Whitebird, and Pigout Timber Sales on or before May 5. You explained that you understood that these sales were not "at risk" sales that ONRC Action had identified on April 12.

While you are correct that the sales are not considered "at risk" by ONRC Action, Ted Boling, Department of Justice, advised me that unless something had changed as to these sales since our earlier representation to not award them until mid-June, we needed to abide by that representation. In other words, the "at risk" list does not replace the April 5 sales identified by ONRC Action as sales they are to receive prior notice of award according to the Stipulation to Establish a Briefing Schedule, filed in this case.

As you know, we have a hearing on June 11 and will hopefully get a ruling shortly thereafter. It will be at that time we can re-assess our position on these sales. Thanks for your patience.

/s/ Susan M. Zike
SUSAN M. ZIKE
Regional Litigation Coordinator

EXHIBIT tabbies Plaintiffs Trial Exhibit No. 119

PLAINTIFF'S EXHIBIT tabbies 41D 1-4-07 Zike

A-758

Subject: ONRC Action/ALA I/ALA II: probable sales to try to award
Sender: Susan Zike /r6pnw
Creation Date: 06/07/99 19:49
Attached Date: 06/07/99 19:47
Priority: normal
Sensitivity: normal
Importance: normal

Part 1

TO: Robert J. Devlin / r6pnw
Margaret Kain / r6pnw
Bill Funk / r6pnw
valblack / Internet (val.black@usda.gov)
owenschmidt / Internet (owen.schmidt@usda.gov)
steve paulson / r5
brian stone / r5
roberta moltzen / r5

Part 2

On the conf. call tomorrow, I would like to suggest that we urge the quiet award of the following sales after June 15 (these are ONRC Action sales that ARE NOT ALA I or ALA II sales):

1. Happy Thin Heli: KLA
2. Lower hayfork: SHA/T
3. Beta: GIP
4. Goose Egg ATV: GIP
5. Bay Resale: MTH
6. Decoy II: MTH
7. Sturgis ATV: ROR (ALA II names Sturgis TS, which is a different sale)
8. Chapter 4 Salv: UMP (20 A. sale from existing road; .4MMBF)
9. Felix ATV: UMP
10. Pigout: UMP
11. TLine Salv: UMP (21 A. from existing road, .09MMBF)
12. Prairie Thin: UMP
13. Jigsaw: UMP
14. Whitebird: UMP
15. Gigawatt: UMP
16. Wildcat: UMP (need to be sure its ready to award)
17. Blazer: UMP (need to be sure its ready to award)
18. Spencer: WIN (may not be able to be quiet with this one; local ONRC member is watching it closely)

DOJ is likely to request that we wait until we have our ONRC Action hearing with J. Dwyer, but there is no date set yet. DOJ expects it to be week of 6/21, so maybe we could nego to award the TLine Salv, Chap 4 Sal, Beta and the lesser of the two evils between Happy Thin and Lower Hayfork. I think R6 will get the go ahead on Goose Egg ATV and Felix ATV.

I'd also like to approach DOJ about the following ALA I sales to award after the 6/28/99 ALA I hearing (R5 you can stop reading!):

1. Barstool: MTH
2. Batwing: MTH
3. Bear: MTH (already awarded, but needs GPO approved for add'l units: pretty hot issue yet)
4. Cub: MTH
5. Straw Devil: WIL
6. Nevergo: WIL
7. Pryor: WIL

Our stipulation to court and ALA in ALA I is to give 10 days notice before approval of GPO. We have some contractual risk to award before the court rules, but it is matter of fact before the court that ALA will not seek a pre. inj. because we agreed to give notice before GPO approved. So the biggest risk is if we lose the lawsuit. Food for thought!

I've attached the monster chart again so the USFS folks can have the same latest edition that I sent DOJ earlier tonight.

18 533

JUN 08 1999

EXHIBIT
Plaintiffs Trial Exhibit No. 121

ENYCC

Released Pursuant to Court of Federal Claims Order of 3/29/07

PLAINTIFF'S EXHIBIT 83

891 9

Part 3

This item is of type Rich Text Format and cannot be displayed as TEXT



Released Pursuant to
Court of Federal Claims
Order of 3/29/07

18

On the conf. call tomorrow, I would like to suggest that we urge the quiet award of the following sales after June 15 (these are ONRC Action sales that ARE NOT ALA I or ALA II sales):

1. Happy Thin Heli: KLA
~~2. Lower hayfork: SHR/T~~
3. Beta: GIP
4. Goose Egg (ATV) GIP
5. Bay Resale: MTH
6. Decoy II: MTH
~~7. Sturgis (ATV) ROR (ALA II names Sturgis TS, which is a different sale)~~
8. Chapter 4 Salv: UMP (20 A. sale from existing road; .4MMBF)
9. Felix (ATV) UMP
10. Pigout: UMP
11. TLine Salv: UMP (21 A. from existing road, .09MMBF)
12. Prairie Thin: UMP
13. Jigsaw: UMP
14. Whitebird: UMP
15. ~~Gigawatt: UMP~~
16. ~~Wildcat: UMP~~ (need to be sure its ready to award)
17. ~~Blazer: UMP~~ (need to be sure its ready to award)
18. Spencer: WIN (may not be able to be quiet with this one; local ONRC member is watching it closely)

DOJ is likely to request that we wait until we have our ONRC Action hearing with J. Dwyer, but there is no date set yet. DOJ expects it to be week of 6/21, so maybe we could nego to award the TLine Salv, Chap 4 Sal, Beta and the lesser of the two evils between Happy Thin and Lower Hayfork. I think R6 will get the go ahead on Goose Egg ATV and Felix ATV.

I'd also like to approach DOJ about the following ALA I sales to award after the 6/28/99 ALA I hearing (R5 you can stop reading!):

1. Barstool: MTH
2. Batwing: MTH
3. Bear: MTH (already awarded, but needs GPO approved for add'l units: pretty hot issue yet) Roundup - annual plan
4. Cub: MTH
5. Straw Devil: WIL
6. ~~Nevergo: WIL~~ FS/L
7. Pryor: WIL

Our stipulation to court and ALA in ALA I is to give 10 days notice before approval of GPO. We have some contractual risk to award before the court rules, ~~but it is matter of fact before the court that ALA will not seek a pre. inj. because we agreed to give notice before GPO approved. So the biggest risk is if we lose the lawsuit.~~ Food for thought!

I've attached the monster chart again so the USFS folks can have the same latest edition that I sent DOJ earlier tonight.

GP Fred Dorn
MTH Mike Redmond
Bo Mong? Clamp Brenda Woodard
WIN Dennis Campbell

Assuming - letter is pulled

TAB90940

Released Pursuant to
Court of Federal Claims
Order of 3/29/07



PLAINTIFF'S EXHIBIT 82b
8-21-07 SKK

# Western Environmental Law Center

DEFENDING THE WEST

Bd fig

Northwest Office
1216 Lincoln Street
Eugene, OR 97401
541/485-2471
541/485-2457 (fax)
westernlaw@igc.org

Executive Director
Michael Axline*

Attorneys
John E. Bonine*
Marianne Dugan*
Elizabeth Mitchell*+
Carrie Stilwell*
Charles Tebbutt*†
* admitted in Oregon
† admitted in New York
+ admitted in Colorado

Scientist
Michael Wach*

Development Director
Deborah Mailander, J.D.

Office Manager
Kathy Cannon

Development Assistant
Kari Kytola

Legal Assistant
Rachel Thiesmeyer

Administrative Assistant
Marilyn Kemp

Southwest Office
P.O. Box 1507
Taos, NM 87571
505/751-0351
505/751-1775 (fax)
taoslaw@laplaza.org

Director SW Office
Grove Burnett‡

Attorneys
David Gomez‡
Vickie L. Minor‡**
‡ admitted in New Mexico
** admitted in Texas

Office Manager
Linda Velarde

Legal Assistant
Linda Gomez

**Privileged and Confidential: Subject to FRE 408**

Via Facsimile 202-305-0274

July 6, 1999

99 JUL 13 AM 9:42

DEPARTMENT OF JUSTICE GENERAL LITIGATION SECTION

Ted Boling
John Watts
U.S. Department of Justice, ENRD
General Litigation Section
601 Pennsylvania Ave., NW, Ste 854
Washington, DC 20004

Re: ONRC Action v. U.S. Forest Service, Civ No. C98-942WD

Dear Ted and John:

Pursuant to our conversation of today's date, we are faxing a revision of our April 12, 1999, list of sales that are "at risk" of being awarded or operated prior to a ruling by Judge Dwyer on pending summary judgment motions. Because our April 12, 1999, list only included sales that were at risk prior to mid-June, most of the revisions consist of sales that your master list of April 8, 1999, indicated would be awarded or granted between mid-June and the end of July.

Sales that have been added due to extensions of the summary judgment decision time are followed with the parenthetical "new," meaning they are new to the list of "at risk" sales. They are not new to the larger list of sales that were administratively appealed by one or more of the plaintiffs on category 2 grounds.

We have also added four sales that have been the subject of specific discussions or agreements, but which have not previously been on the "at risk" list. Theses are the Pigout TS, the Five Mile EA, the Ya Ka Sale, and the Trove Thin (a Christy Basin sale.)

Altogether there are six BLM sales and twenty-five Forest Service sales that have become "at risk" subsequent to our April 12, 1999 letter.

As you know, we have dropped the following sales from our April 12, 1999, list of "at risk" sales: Red Top II, Goose Egg Alt. Vol., Lemiti Resale, Talc, Pigout ATV, and Cast Iron. These sales are indicated on the revised list by a line drawn through the sale name.

PLAINTIFF'S EXHIBIT 44 1-9-07 ZIKE

81 90-1-4-09192

EXHIBIT Plaintiffs Trial Exhibit No 128

Consistent with our prior agreements and stipulations, plaintiffs offer to hold off seeking preliminary injunctive relief with respect to these sales until at least July 31, 1999, if the Forest Service and BLM agree to provide plaintiffs with at least ten (10) days advance notice prior to approving any plan of operations for the sales. Plaintiffs may seek immediate injunctive relief with respect to any sales for which they receive notice of intent to operate.

As discussed, we will expect a response withing the next day or two. Please call if you have any questions.

Sincerely,

Carrie Stilwell

for Michael Axline
Counsel for Plaintiffs

cc: Owen Schmidt
Roger Nesbit

attachment

**SALES AT RISK PRE-JUNE 11**

**BLM**

1. Torched Mill
2. North Murphy
3. B Lost
4. Cenoak
5. Poor Bishop
6. Round Forks
7. Serpents Grave
8. Titanic
9. Deer Mom
10. Isabelle
11. Flying Lost
12. Class of '98
13. Buck Fever
14. Dream Weaver
15. Final Curtin
16. Bell Mountain
17. Emile
18. Diamond Back
19. ~~Red Top II~~
20. Sugar Pine
21. West Botkin
22. Slippery Moose
23. Happy Summit (new)
24. Johnson Creek (new)
25. Sweet Pea (new)
26. Foghorn Cleghorn (new)
27. Buck Creek Thin (new)
28. Ward Creek (new)

**FOREST SERVICE**

29. Bald Elk
30. Happy Thin Heli
31. Jack Hell
32. Upper South Fork
33. Beegum Rock
34. ~~Goose Egg Alt. Vol.~~
35. Bear Cub EA (Bear and Cub TS)
36. ~~Lemiti Resale~~
37. Lightning Flats
38. Mt. Defiance II Resale
39. Roundup
40. ~~Tale~~
41. Bibbits
42. Peak
43. Wagner Gap
44. Devil Quail
45. Dutcher
46. Too Wild
47. Peanuts (other volume)
48. ~~Pigout ATV~~
49. Prairie Thin
50. ~~Cast Iron~~
51. Spencer
52. Beta (new)
53. Kirk (new)
54. Skull Thin (new)
55. Bars ATV (new)
56. Barstool TS (new)
57. Batwing (new)
58. Bay Resale II (Bronco EA) (new)
59. Decoy II (Bonanza EA) (new)
60. Shakett (new)
61. Shelf (new)
62. Chap. 4 (new)
63. Ike (new)
64. Pigout TS (new)
65. Salty (new)
66. T-Line Sale (new)
67. Jig-Saw (new)
68. Whitebird (new)
69. Wildcat (new)
70. Five Mile EA
71. Ya Ka
72. Blaze (new)
73. Thicker (new)
74. Christy Basin (Trove Thin)
75. Pryer (new)
76. Show Devil (new)

: ONRC Action: WO brieling paper

From: Susan Zike
To: rsallee /wo
To: sfitzgerald /wo
To: marcia macnaughton /wo
To: gstem3 /wo
To: owenschmidt (internet [owen.schmidt@usda.gov])

ONRC Action: WO briefing paper

Attached is a briefing paper and a chart of the newly submitted list (7/6/99) of sales from ONRC Action on which ONRC Action requests 10 days notice prior to approval of plan of operations. I have faxed the list to Brian Stone in R5 only.

As the briefing paper explains, the BLM is not amenable to another 10 day notice obligation in this matter. They want to give ONRC one last notice of sales to be awarded and operated in July and no more obligation. DOJ is willing to draft that letter, but needs to know USFS position ASAP.

R5/R6 are ready to award 7 sales and approve plan of operations on 1. The draft Bartuska letter would appear to limit our ability to move forward with these sales until the court rules. However, given the history (shown in the attached chart) of our willingness to delay (nearly a year) and the retiscence of ONRC Action to get serious about naming sales in their lawsuit, we want to consider moving ahead with this sales and future sales, notwithstanding the draft Bartuska letter.

Please note that only 3 of the "at-risk" sales proffered by ONRC Action were truly named in their Second Amended complaint; the rest of the sales have been "trading stock" over the past year but NOT before the court.

This message
- Distribution list (1031 bytes)
- Message_Body (1267 bytes)
- wo_briefing_award_july.rtf (70255 bytes)

0 1368

A-984

EXHIBIT
Plaintiffs Trial Exhibit No. 129

Released Pursuant to Court of Federal Claims Order of 3/29/07

PLAINTIFF'S EXHIBIT
90
8-21-07 SKK

G05-0016-0528

Part 1

TO: rsallee / wo
rfitzgerald / wo
marcia macnaughton / wo
gstem3 / wo
owenschmidt / Internet (owen.schmidt@usda.gov)
kathryntoffenetti / Internet (kathryn.toffenetti@usda.gov)
Robert J. Devlin / r6pnw
Margaret Kain / r6pnw
Bill Funk / r6pnw
Jerry Hofer / r6pnw
brian stone / r5
steve paulson / r5
roberta moltzen / r5
don ostby / r6pnw, umpqua

CC: Susan Zike / r6pnw
brenda woodard / r6pnw, umpqua
ematthews / r5, klamath
jim zander / r5, shastatrinity

Part 2

Attached is a briefing paper and a chart of the newly submitted list (7/6/99) of sales from ONRC Action on which ONRC Action requests 10 days notice prior to approval of plan of operations. I have faxed the list to Brian Stone in R5 only.

As the briefing paper explains, the BLM is not amenable to another 10 day notice obligation in this matter. They want to give ONRC one last notice of sales to be awarded and operated in July and no more obligation. DOJ is willing to draft that letter, but needs to know USFS position ASAP.

R5/R6 are ready to award 7 sales and approve plan of operations on 1. The draft Bartuska letter would appear to limit our ability to move forward with these sales until the court rules. However, given the history (shown in the attached chart) of our willingness to delay (nearly a year) and the retiscence of ONRC Action to get serious about naming sales in their lawsuit, we want to consider moving ahead with this sales and future sales, notwithstanding the draft Bartuska letter.

Please note that only 3 of the "at-risk" sales proffered by ONRC Action were truly named in their Second Amended complaint; the rest of the sales have been "trading stock" over the past year but NOT before the court.

Part 3

This item is of type Rich Text Format and cannot be displayed as TEXT

0 1369

A-985

# MEMORANDUM

To: Bob Devlin, R6 Acting Deputy Regional Forester; WO-TM; Kathryn Toffenetti, OGC-NRD

From: Sue Zike, R6 Litigation Coordinator

Date: July 7, 1999

**Subject: ONRC Action: Status and pending litigation question: can we join in BLM position on awarding sales?**

I. Summary:

A. This lawsuit names 9 projects (4 USFS; 5 BLM) as examples of how the USFS/BLM memoranda regarding survey/manage program violate the terms of the NWFP ROD (Second Amended Complaint)

1. Christy Basin Project (WIL); (up to 17 sales may come from this ROD)
2. Skull Thin TS (MBS);
3. Bear TS (MTH);
4. Beegum Corral Regen TS (Shasta-Trinity)

B. In addition, ONRC Action's asked USFS/BLM to delay "problem sales" not listed in the Second Amended Complaint

1. From September 17, 1998 to June 15, 1999, USFS/BLM delayed auction, award or approval of operations on about 80 of the 160 timber sales identified by ONRC Action as "problem sales"(35-40 out of the 100 USFS sales; about 30 - 40 of 60 BLM sales)

2. These sales were never made a part of the litigation *per se;* neither the Court, nor intervenors, were apprised of the list nor of its contents; the lists were deemed protected under Fed. Rules of Evidence 408: settlement discussions

3. Upon request from ONRC Action, DOJ apprised them of the status of the certain sales

4. Status of these sales ranged from no NEPA completed, appeal period pending, no advertisement, advertised but not auctioned, advertised, auctioned but not awarded, awarded but not operating, awarded and operating. Replacement volume timber sales under the Rescissions Act and one land exchange were also included in this "problem" list

5. During the court briefing period (March - June), DOJ and ONRC Action "negotiated" the award of 10 USFS projects from the "problem list": Bald Elk (KLA); Jack Heli (KLA); Upper South Fork (KLA); Beegum Rock (KLA); Mt. Defiance II (MTH); Roundup TS (MTH); Talc (MTH); Guistina Land Exch (WIL); Cast Iron (WIN)

6. A number of Replacement Volume sales were "awarded" under the terms of the Glickman agreement during this pendency of this lawsuit with notice from DOJ to ONRC Action.

0 1372

ONRC Action ... Brief ... P



Released Pursuant to
Court of Federal Claims
Order of 3/29/07

C. March 26, 1999: Stipulation with all parties and the court to facilitate the briefing period and avoid TRO/PI interruptions (Apr-Jun)

1. 10 days notice before approval of plan of operations for the 9 named projects in the Complaint; DOES NOT EXPIRE and

2. 10 days notice before award of any sales "identified by plaintiff" associated with their claims in the Complaint (this meant the "problem sales" ONRC sent us in early April): EXPIRED JUNE 15, 1999

3. Pursuant to the stipulation, USFS only gave 10 day notice of award on 2 sales: Upper South Fork (KLA) and Happy Thin Heli (KLA)

4. USFS/BLM delayed other awards out of deference to the briefing schedule and not wanting to distract the court's attention on a TRO/PI request until after the July 1 hearing.

II. Current situation

A. **July 1, 1999**: Oral argument held in Seattle, July 1

B. ONRC Action filed for a TRO on North Murphy TS (BLM), one of the 9 named projects in the Second Amended Complaint

1. To avoid TRO, purchaser voluntarily delayed operation for 21 days

C. **July 1, 1999:** ONRC Action approached govt to extend the expired stipulation as to the "problem sales"

1. Govt said no; ONRC Action said TRO would file for on July 2, but instead agreed to talk to DOJ on July 6

2. **July 6, 1999**: DOJ asks USFS/BLM what it is willing to do about the TRO threat

3. July 6, 1999: R6 says we'll do the minimum but since briefing and hearing completed, continued delay seemed unreasonable . DOJ needed to see what ONRC Actions bottom line (Devlin)

4. **July 6, 1999**: ONRC Action submits a new "at-risk" list (replaces the "problem sale" list) with 43 USFS sales with a request for 10 days notice before approval of operations until the court rules

D. **BLM position**: Reject 10 day notice offer; instead give ONRC Action one last notice of sales it intends to award and approve operations of during July (They have 10 sales ready to award)

1. BLM will award the 10 sales with a contract modification re: 14 days notice to BLM before beginning operations to delay operations in the event ONRC Action would request a TRO (thus limiting contract damages to the BLM)

2. A TRO or PI from the court is better than continued voluntary delay

C 1373

E. **USFS Position: Can we join in BLM position? R5/R6 = preferably yes, but the draft Bartuska letter re: timber sale activity in litigation would prevent the award of sales.**

1. R6 has 6 sales on UMP ready to award (Jigsaw, Prairie Thin, Whitebird, Pigout, T-Line Salvage, Chapter 4 Salvage)

a. All 6 are on ONRC Action July 6 "at-risk" list

ONRC Action Briefin P

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

b. All would begin operations in July 1999?

c. Other sales on chart cannot be awarded due to other litigation or consultation needs

2. R5 has 2 sales ready to act upon:

a. Happy Thin Heli (KLA): ready to award; operations in July??

b. Beegum Rock (SH-TR): ready to approve plan of operations; awarded 5/14/99; ONRC Action previously notified that operations would begin after 7/10/99 (DOJ letter in May)

3. General Plan of Operations

a. The USFS has authority to approve the general plan of operations before the sale is operated.

b. The USFS contracts, unlike the BLM contract moditication re: above, have no provision to require the purchaser to delay operations after plan of operations approval for other than resource reasons.

c. OGC/USFS would need to explore the opportunity to make a mutual modification to the contract, upon award, to require such a delay provision.if DOJ thought it necessary

ATTACHMENT:

REGION 6 AND REGION 6 TIMBETR SALES, IDENTIFIED IN AXLINE JULY 6 LETTER AS "AT-RISK"

0 1374



Released Pursuant to
Court of Federal Claims
Order of 3/29/07

# SUMMARY

REGION 5 and 6 TIMBER SALES

**IDENTIFIED IN AXLINE JULY 6 LETTER AS "AT-RISK"**

ONRC ACTION, et al v. USFS, BLM (ONRC Action)

CV 98-942WD (W.D. Wa)

| | |
|---|---|
| NO. OF USFS SALES: | 44 |
| NO. OF AWARDED SALES: | 13 |
| NO. OF SALES DELAYED AWARD DUE TO THIS LITIGATIION | 25 (6 ready to award; others in litigation or agency delay in approving purchaser due to this litigation) |
| NO. SALES NOT ADVERTISED | 5 |
| NO SALES NO-BID | 1 |
| | 44 |

0 1375



Released Pursuant to
Court of Federal Claims
Order of 3/29/07

REGION 5 and 6 TIMBER SALES

# IDENTIFIED IN AXLINE JULY 6 LETTER AS "AT-RISK"

ONRC ACTION, et al v. USFS, BLM (ONRC Action)
CV 98-942WD (W.D. Wa)
prepared 7/7/99
Sue Zike, R6 Litigation Coordinator

| NF | SALE or PROJECT NAME | NEPA Doc/Date | SALE INFO: Ad Date | Auc Date | Award Date | Status | ONRC Action stipulation? |
|---|---|---|---|---|---|---|---|
| KLA | Bald Elk Y6 | 9/11/98 | 1/20/99 | 2/23/99 | 3/2/99 | Sale is operating. | Y; no further notice |
| KLA | Happy Thin Heli | 9/16/98 | 3/31/99 | 5/4/99 | 5/5/99 est | Award delayed until after ONRC hearing 7/1/99 | Y; 10 day notice before award until 6/15/99<br>3/31/99: KLA written notice to Axline to award no sooner than 5/5/99;<br>5/27/99: DOJ written notice to Axline award delayed until after 6/11/99 |
| KLA | Jack Heli | 7/14/98 | 9/25/98 | 11/3/98 | 3/2/99 | road pre-op mtg 4/6/99; started road work 6/14/99; no logging pre-op scheduled; October likely | Y; no notice req't on operations; 3/1/99: DOJ gave written notice of intent toaward after 3/1/99 |
| KLA | Upper South Fork | 5/13/98 | 3/5/99 | 3/30/99 | 4/14/99 | ONRC raised fuss late June 99; threatened TRO; USFS/DOJ/ONRC conferred with purchaser who is proceeding to operate according to his schedule; written agreement between DOJ/ONRC re: units to be operated and MMBF to be removed | Y; no notice req't on operations 3/31/99: KLA written notice to Axline intent to award no sooner than 4/14/99 |
| SHAT | Beegum Rock | 9/25/98 | 1/21/99 | 3/2/99 | 5/14/99 | Contract does not allow operations between 2/1 - 7/10; GPO submitted for approval around 7/1; operations to start 7/11; delayed approval til 7/7/99: NEED TO ADVISE FOREST!! | Y; 10 da notice before GPO approval until 6/15/99<br>5/13/99: DOJ written notice to Axline intent to award no sooner than 5/14/99 |
| GP | Beta | EA/DN 6/16/98 | 9/30/98 | 11/17/98 | mid-June | Award delayed until after ONRC hearing 7/1/99 | Y; 10 day notice before award until 6/15/99 |



Released Pursuant to Court of Federal Claims Order of 3/29/07

| NF | SALE or PROJECT NAME | NEPA Doc/Date | SALE INFO: Ad Date | Auc Date | Award Date | Status | ONRC Action stipulation? |
|---|---|---|---|---|---|---|---|
| GP | Kirk | EA/DN 9/4/98 | 9/30/98 | 12/3/98 | no bids | | Y; 10 day notice before award until 6/15/99 |
| MBS | Skull Thin | EA/DN 9/28/98 | 6/24/99 | 7/27/99 | est. 8/1/99 | | Y; 10 day notice before award until 6/15/99; 10 day notice before GPO aproval until 6/15/99 |
| MTH | Bars EA | EA/DN 3/16/98 | | | | | |
| | Bars ATV TS | | N/A | N/A | 1/5/99 | Contract mod's made; road reconstruction planned for 7/99. | Y; ONRC has previously agreed not to challenged ATV sales |
| | Barstool TS | Bars EA | 2/24/99 | 4/7/99 | mid-June | Award delayed until after ONRC hearing 7/1/99 | 10 day notice before award until 6/15/99 |
| MTH | Batwing | EA/DN 3/16/98 | 3/5/99 | 1 6/2/99 | mid-June | Award delayed until after ONRC hearing 7/1/99 | Y; 10 day notice before award until 6/15/99 |
| MTH | Bay Resale II (Bronco EA) | EA/DN 1/11/93 | 3/12/9 | 6/9/99 | mid-June | Award delayed until after ONRC hearing 7/1/99; Resale of defaulted sale. | Y; 10 day notice before award until 6/15/99 |
| MTH | Bear Cub EA | EA/DN 3/16/98 | | | | | Y |
| | Bear TS | | 9/17/98 | 10/29/98 | 3/8/99 | Awarded; plan of operations received from purchaser but not approved in May 99 pending litigation | 10 da notice before GPO approval; 3/5/99 OGC written notice of intent to award Bear TS |
| | Cub TS | | 2/24/99 | 4/7/99 | mid-June | Award delayed until after ONRC hearing 7/1/99 | 10 day notice before award until 6/15/99 |
| MTH | Decoy II (Bonanza EA) | EA/DN 5/24/93 | 3/26/99 | 6/15/99 | end-June | Award delayed until after ONRC hearing 7/1/99 | Y; 10 day notice before award until 6/15/99 |

0 1377



Released Pursuant to
Court of Federal Claims
Order of 3/29/07

| NF | SALE or PROJECT NAME | NEPA Doc/Date | SALE INFO: Ad Date | Auc Date | Award Date | Status | ONRC Action stipulation? |
|---|---|---|---|---|---|---|---|
| MTH | Five Mile EA<br>E. Five Mile TS<br>W. Five Mile TS<br>LP Salvage TS | EA/DN 4/28/97 | no date<br>no date<br>12/3/98 | no date<br>no date<br>1/7/99 | 1/20/99 | ONRC PLAINTIFFS DID NOT APPEAL; Awarded; currently operating; 65% complete | Y; no notice due to no appeal; 6/9/99: ONRC disagrees; says member appealed |
| MTH | Lightning Flats | EA/DN 1/19/98 | 4/24/98 | 5/27/98 | 6/29/98 | Awarded; Genl Op. Plan approved; 80% removed last season; no current operations due to snow | Y; no notice before operations |
| MTH | Mt. Defiance II Resale | EA/DN 7/20/98 | 12/3/98 | 1/7/99 | 1/20/99 | Awarded; Genl. Op. Plan approved; approx 60% completed | off list 4/29/99 due to no appeal by ONRC;<br>5/27/99: DOJ ltr to Axline Mt Defiance off list;<br>7/6/99: ONRC disagrees; sale on at-risk list |
| MTH | Roundup T.S. (Abbott-Salmon EA) | EA/DN 8/11/97 | 8/26/98 | 10/2/98 | 1/5/99 | Awarded; 45% sale removed; further discussions with ONRC Action in May | Y; were there DOJ verbal promises re: resumption of operations in May/June? |
| MTH | Yaka 22/23 | EA/DN 6/26/97 | 6/17/98 | 7/17/98 | 9/8/98 | Awarded; Genl Op. Plan approved 10/98; no current operations; ONRC PLAINTIFFS DID NOT APPEAL | Y; no notice req't due to no ONRC appeal;<br>6/9/99: ONRC ltr disagrees (says member appealed)<br>7/6/99: on ONRC at-risk list |
| | | | | | | | |
| ROR | Bibbits | EA/DN 9/24/98 | 3/31/99 | 5/4/99 | Planned 5/31/99 | Award delayed until after ONRC hearing 7/1/99 | Y;10 day notice before award until 6/15/99 |
| ROR | Peak - *100% replacement volume.* | EA/DN 9/30/98 | No ad | - | Planned 5/99 | Sample contract modifications sent to purchaser 3/9/99. Currently negotiating values; delay final mod til ALA II atty reviews | Y; THIS IS 100% REPLACEMENT VOLUME; 5/27/99: DOJ ltr to Axline confirming Rep. Vol sales not in this lawsuit |
| ROR | Wagner Gap | EA/DN 9/29/99 | 3/31/99 | 5/4/99 | Est 5/31/99 | Award delayed until after ONRC hearing 7/1/99; | Y;10 day notice before award until 6/15/99 |
| | | | | | | | |
| SIS | Devil Quail | EA/DN 9/30/98 | 3/27/99 | 4/29/99 | - | award delayed due to ONRC litigation | Y;10 day notice before award until 6/15/99 |
| SIS | Dutcher | EA/DN 8/15/98 | 8/28/98 | 9/29/98 | - | Award delayed due to ONRC litigation | Y;10 day notice before award until 6/15/99 |
| SIS | Shakett | EA/DN 5/8/98 | planned 7/99 | - | - | | Y;10 day notice before award until 6/15/99 |

| NF | SALE or PROJECT NAME | NEPA Doc/Date | SALE INFO: Ad Date | Auc Date | Award Date | Status | ONRC Action stipulation? |
|---|---|---|---|---|---|---|---|
| SIS | Shelf | EA/DN 9/30/98 | planned 7/99 | - | - | | Y;10 day notice before award until 6/15/99 |
| SIS | Too Wild | EA/DN 6/15/98 | 8/17/98 | 9/17/98 | 5/14/99 | Awarded; only road survey work this season | Y; no further notice req't 5/15/99: DOJ written notice to Axline intent to award no sooner than 5/14/99 |
| UMP | Chap. 4 Salv | CE/DM 9/15/98 | 10/30/98 | 12/2/98 | mid-June | delayed award til after ONRC hearing 7/1; 20 A. project | Y;10 day notice before award until 6/15/99 |
| UMP | Ike TS | EA/DN 9-29-98 | - | 7/99 | - | scheduled to sell in 7/99 | Y;10 day notice before award until 6/15/99 |
| UMP | Peanuts TS | EA/DN 6/23/97 | | 9/12/97 | 10/20/97 | Awarded 10/20/97; no GPO submitted; purchaser met with Forest to discuss operations around June 30. | No written promise of operations notice; ck DOJ? |
| UMP | Pigout TS | EA/DN 2-24-98 | 9/18/98 | 10/21/98 N/A | mid-June | award delayed until after ONRC hearing 7/1/99 | Y |
| UMP | Salty | EA/DN 2/24/98 | 9/26/98 | 10/29/98 | mid-June | Award delayed until after ONRC hearing 7/1/99 | Y;10 day notice before award until 6/15/99 |
| UMP | T-Line Sal | CE/DM 9/17/98 | 11/13/98 | 12/16/98 | mid-June | Award delayed until after ONRC hearing 7/1/99; 20 A. project | Y;10 day notice before award until 6/15/99 |
| UMP | Upper North TS includes six sales listed below: | EA/DN 9-24-98 | - | - | - | | Y; |
| | Prairie Thin | | 9/25/98 | 10/28/98 | mid-June | Award delayed until after ONRC hearing 7/1/99 | 10 day notice before award until 6/15/99 |
| UMP | Warm Springs TS: project consists of four sales listed below: | EA/DN 9-21-98 | - | - | - | | Y |
| | Jigsaw | | 9/25/98 | 10/28/98 | mid-June | Award delayed until after ONRC hearing 7/1/99 | Y;10 day notice before award until 6/15/99 |

0 1379



Released Pursuant to
Court of Federal Claims
Order of 3/29/07

| NF | SALE or PROJECT NAME | NEPA Doc/Date | SALE INFO: Ad Date | Auc Date | Award Date | Status | ONRC Action stipulation? |
|---|---|---|---|---|---|---|---|
| | Whitebird | | 9/25/98 | 10/28/98 | mid-June | Award delayed until after ONRC hearing 7/1/99 | Y;10 day notice before award until 6/15/99 |
| UMP | Wildcat | EA/DN 9/30/98 | | 7/99 | | Award delayed until after ONRC hearing 7/1/99 | Y;10 day notice before award until 6/15/99 |
| UMP | Withrow TS: project consists of two sales listed below not named by ONRC Action: | EA/DN 9-25-98 | - | - | - | | Y |
| | Blaze | | | | mid-June | Award delayed until after ONRC hearing 7/1/99 | Y;10 day notice before award until 6/15/99 |
| | Flicker (ONRC named "Thicker TS" | | | planned 7/99 | | | Y;10 day notice before award until 6/15/99 |
| WIL | Christy Basin: includes Trove Thin | EIS/ROD 9/3/98 | 3/28/99 | 4/28/99 | pending | Note this EIS will have multiple sales in it. This is the first one.Award delayed until after ONRC hearing 7/1/99 | Y; 10 day notice before award until 6/15/99; 10 da notice before GPO approval until 6/15/99 |
| WIL | Pryor | EA/DN 5/1/98 | 9/25/99 | 11/16/98 | mid-June | Award delayed until after ONRC hearing 7/1/99 | Y; 10 day notice before award until 6/15/99 |
| WIL | Straw Devil (ONRC names "Show Devil" TS) | EA/DN 6/16/98 | 9/29/98 | 11/23/98 | mid-June | Award delayed until after ONRC hearing 7/1/99 | Y; 10 day notice before award until 6/15/99 |
| WIN | Spencer | EA/DN 8/10/98 | 3/22/99 | 4/5/99 | early May | Award delayed until after ONRC hearing 7/1/99 | Y; 10 day notice before award until 6/15/99;<br>2/25/99 ONRC fax indicated Spencer not a concern of client (3/1/99 DOJ letter);<br>4/5/99: ONRC ltr lists Spencer<br>5/27/99: Cast Iron sale off list |

0 1380



Released Pursuant to
Court of Federal Claims
Order of 3/29/07

| NF | SALE or PROJECT NAME | NEPA Doc/Date | SALE INFO: Ad Date | Auc Date | Award Date | Status | **ONRC Action** stipulation? |
|---|---|---|---|---|---|---|---|
| | | | | | | | in exchange for Spencer not going forward (WIN); not express in ltr |



0 1381

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

**ONRC Action: DOJ reply to ONRC's 7/6/99 At-Risk list and 10day notice**

From: Susan Zike
To: Susan L Carter /r6pnw,wenatchee
To: Jan Flatten /r6pnw,okanogan
To: Jamia R. HansenMurray /r6pnw,mbs
To: Ward Hoffman /r6pnw,olympic
To: Fred Dorn /r6pnw,nn

ONRC Action: DOJ reply to ONRC's 7/6/99 At-Risk list and 10day notice

I will be faxing to R5 RO and R6 forests, ONRC's 7/6/99 "at-risk" list of 76 BLM/FS sales which requests 10 day notice before approving a plan of operations and DOJ's 7/8/99 reply, which does NOT agree to a 10 day notice regime. Instead, the DOJ's reply informs ONRC of the BLM/FS approval's expected during the month of July.

The upshot:

-- Beegum Rock TS (SH-TR) plan of operation will be approved on July 12 and road construction will begin July 19

-- T-Line Salvage and Chap. 4 Salvage (UMP) will be awarded on July 19; no plan of operations is required so operations may begin immediately.

-- Peanuts (UMP), previously awarded, GPO was approved and road work w/o timber harvest will begin in July.

-- Upper South Fork TS (KLA) and Bald Elk (KLA) will continue operations

-- Too Wild TS (SIS) will continue road survey work

-- Yaka 22/23 (MTH), LP Salvage (MTH) and Roundup (MTH) have approved plans of operations; resumption of Roundup requires a notice in ALA I case.

-- Mt Defiance Resale (MTH): ONRC previously agreed to not list

-- Peak ATV (ROR) and Bars ATV (MTH): ONRC previously agreed to not list ATV sales

What the letter doesn't say is that the UMP can proceed with awarding Jigsaw, Prairie Thin, Whitebird, and Pigout, but if plans of operations are submitted that indicate operations in July, RO/DOJ/OGC need to know ASAP!

The same is true for Jack Heli; if the KLA gets a plan of operations for July operations, notify RO (Zike or Stone)/DOJ/OGC (Schmidt) ASAP.

For the record and in the spirit of the revised draft Bartuska letter re: sales in litigation, on 7/8/99 I spoke with Dick Fitzgerald, Rod Sallee and Kathryn Toffenetti, along with Owen Schmidt and Ted Boling about the WO concurrence with R5 and R6 position on awarding the UMP sales and approving Beegum Rock plan of operations. After reviewing the briefing paper and sale info, Dick F. said he agreed with the Regional position and he concurred with us moving forward. Based on this discussion, DOJ finalized its letter to Axline (ONRC).

WHAT NEXT? We don't know if ONRC will run to the court for a TRO/PI on these July sales, but DOJ believes it is likely. The govt will have to respond to such an action with facts and rationale about these sales. I

This message
- Distribution list (2488 bytes)
- Message_Body (2656 bytes)

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

0 1364

EXHIBIT
Plaintiffs Trial
Exhibit No. 141

A-1098

PLAINTIFF'S EXHIBIT
91
8-21-07 SKK

Part 1

TO: DISTRIBUTION (Title: Distribution list)

Part 2

I will be faxing to R5 RO and R6 forests, ONRC's 7/6/99 "at-risk" list of 76 BLM/FS sales which requests 10 day notice before approving a plan of operations and DOJ's 7/8/99 reply, which does NOT agree to a 10 day notice regime. Instead, the DOJ's reply informs ONRC of the BLM/FS approval's expected during the month of July.

The upshot:

** Beegum Rock TS (SH-TR) plan of operation will be approved on July 12 and road construction will begin July 19

** T-Line Salvage and Chap. 4 Salvage (UMP) will be awarded on July 19; no plan of operations is required so operations may begin immediately.

** Peanuts (UMP), previously awarded, GPO was approved and road work w/o timber harvest will begin in July.

** Upper South Fork TS (KLA) and Bald Elk (KLA) will continue operations

** Too Wild TS (SIS) will continue road survey work

** Yaka 22/23 (MTH), LP Salvage (MTH) and Roundup (MTH) have approved plans of operations; resumption of Roundup requires a notice in ALA I case.

** Mt Defiance Resale (MTH): ONRC previously agreed to not list

** Peak ATV (ROR) and Bars ATV (MTH): ONRC previously agreed to not list ATV sales

What the letter doesn't say is that the UMP can proceed with awarding Jigsaw, Prairie Thin, Whitebird, and Pigout, but if plans of operations are submitted that indicate operations in July, RO/DOJ/OGC need to know ASAP!

The same is true for Jack Heli: if the KLA gets a plan of operations for July operations, notify RO (Zike or Stone)/DOJ/OGC (Schmidt) ASAP.

For the record and in the spirit of the revised draft Bartuska letter re: sales in litigation, on 7/8/99 I spoke with Dick Fitzgerald, Rod Sallee and Kathryn Toffenetti, along with Owen Schmidt and Ted Boling about the WO concurrence with R5 and R6 position on awarding the UMP sales and approving Beegum Rock plan of operations. After reviewing the briefing paper and sale info, Dick F. said he agreed with the Regional position and he concurred with us moving forward. Based on this discussion, DOJ finalized its letter to Axline (ONRC).

WHAT NEXT? We don't know if ONRC will run to the court for a TRO/PI on these July sales, but DOJ believes it is likely. The govt will have to respond to such an action with facts and rationale about these sales. I expect the forests with July operating sales should be "on call" next week.

In addition, ONRC filed their supplemental brief on standing yesterday, to which the govt needs to reply also. ONRC already asked the court for a TRO on North Murphy and the court will consider that on 7/23...... when will this end?

Sorry this is so long!

Released Pursuant to
Court of Federal Claims
Order of 3/29/07

Subject: ONRC Action: Injunctions requested against "all" sales
Sender: Susan Zike /r6pnw
Attached Date: 07/20/99 10:55
Priority: normal
Sensitivity: normal
Importance: normal

Part 1

TO: DISTRIBUTION (Title: Distribution list)

Part 2

ONRC Action had earlier in July requested an injunction against the North Murphy sale (BLM) and on July 15, requested an injunction against the remaining 8 sales named in the lawsuit (Christy Basin, Beegum Corral, Skull Thin, Gold Wind, North Murphy, Bear, Class of 98, Sugar Pine, and Sweet Pea AND any "other timber sales in which the claims presented in the complaint have been raised by plaintiffs through the administration appeal process".

Today I cannot tell you how many sales in R5/R6 might be included in such an injunction. It would seem like that should be ONRC Action's job! Nonetheless, by tomorrow with the appeals group help I ought to be have some clue as to how many sales could possibly be included. Tonight my guess is well over 200, including sales from any FY in various stages: in advertisement, advertised ongong, auctioned but not awarded, awarded not operating, or awarded and operating that have been appealed by any of the 13 plaintiffs in this lawsuit.

DOJ will be constructing our defense to the injunction over the next few days. In the meantime, USFS and BLM have proceeded with awarding certain timber sales for which we have no reason to continue to delay. We have not been advised to deviate from our normal course of action regarding the timber sale program in R5 and R6 based on this new request for an injunction.

Stay tuned!

0446

EXHIBIT
Plaintiff's Trial Exhibit No. 142

Released Pursuant to Court of Federal Claims Order of 3/29/07

PLAINTIFF'S EXHIBIT
91a
8-21-07 SKK

194

GRAYBEAL BRIEFING PAPER
Prepared by Sue Zike, August 30, 1999
USFS Region 6 Litigation Coordinator

**I. BACKGROUND**

A. Survey/manage program is MITIGATION for little known o/g species

B. Survey/manage program was phased in between 1994 - 1998 (by FY 99)

1. Strategy 1 species: protection of known sites
2. Strategy 2 species: pre-project surveys (some by FY96, rest by FY99)
3. Strategy 3/4 species: extensive habitat surveys across the landscape

C. "Implement" memo, 11/6/96: defined FY96 and FY99 s/m obligations at NEPA decision

D. Red Tree Vole, 11/4/96: defined RTV surveys as extensive, not site-specific

E. FY99 species obligation: would have shut down all-decision making due to infeasibility of 32 species surveys

*Agency action:* Deferral EA/DN 3/3/99: 32 species obligation deferred til FY00; (since then, high likelihood of resolving 19 infeasible species)

**II. DWYER RULING** (Aug. 2, 1999)

A. Found "Implement" and RTV memo's: *CONTRARY TO PLAIN LANGUAGE OF THE ROD*

1. Shuts down 4 USFS projects (17 sales; 1 awarded)
2. Subsequent ruling (Aug. 26) shuts down 16 USFS awarded sales based on criteria:
   a. Awarded after 7/8/98 (lawsuit filed);
   b. Appealed by plaintiffs on S/M issues; and
   c. Relied on memo's
3. 33 enjoined sales = 142.8 mmbf
   (17 awarded = 77.2 mmbf/70.6 remaining)

B. No supplemental NEPA necessary for "new info"; adaptive management OK

EXHIBIT
Plaintiff's Trial Exhibit No. 146



Released Pursuant to
Court of Federal Claims
Order of 3/29/07

PLAINTIFF'S EXHIBIT
98C
8-21-07 SKK

TAB91446

## III. AUGUST 27: COURT'S MINUTE ORDER

A. All parties to resume settlement for short-term solutions ... [to] reduce impact of injunctive relief on logging contractors and their employees while complying with the Northwest Forest Plan."

B. Agency has discretion on how to conduct wildlife surveys

C. Joint report due Sept. 3 on:

1. Lawful method to expedite surveys
2. What method would that be;
3. How quickly can work be done
4. How to prioritize timber sales Rescissions Act sales

*Agency Action*: Agencies working with DOJ/OGC/OS to formulate agency response this week

What are we doing to manage direction? no adv, no award sales relying on implement volume

(Sue)



Released Pursuant to
Court of Federal Claims
Order of 3/29/07

TAB91447

**IV. Rescissions Act**

A. None currently enjoined directly by Dwyer

B. If court injunction criteria applied, 12 "awarded/modified" replacement volume sales

1. 20.195 MMBF
2. 8 operating; 4 not operating

**V. Scope of ruling on timber sales**

| | |
|---|---|
| **R5/R6 Sales relying on Implement memo:** | **441** |
| **R5/R6 Sales appealed by plaintiffs:** | **187** |
| **R5/R6 Sales appealed by plaintiffs on S/M issues:** | **152** |
| **R5/R6 Sales meeting court injunction criteris:** | **30 (15 already enjoined by this court; 12 are ATV sales not enjoined; 3 are green sales not enjoined)** |



Released Pursuant to
Court of Federal Claims
Order of 3/29/07

TAB91448