No. 05-708C (Judge Lettow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SCOTT TIMBER COMPANY,
Plaintiff,
v.
THE UNITED STATES,
Defendant.

# DEFENDANT'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Deputy Director

JOAN M. STENTIFORD
ELLEN M. LYNCH
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 353-7994
Attorneys for Defendant

OF COUNSEL:

Marcus R. Wah
Rebecca Harrison
Ben Hartman
Office of the General Counsel
United States Department of Agriculture

May 30, 2008

**TABLE OF CONTENTS**

THE FACTS DEFENDANT EXPECTS TO PROVE AT TRIAL . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Facts Relating To The Forest Service's Mission And The Timber Industry's Role In Developing The Standard Timber Sale Contract . . . . . . . . . . . . . . . . . . . 2

IV. Facts Relating To The Timber Sale Contracts . . . . . . . . . . . . . . . . . . . . . . . . . . 4

DEFENDANT'S CONTENTIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. The Contracts Explicitly Permit Suspension . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. The Forest Service Properly Suspended Plaintiff's Timber Sale Contracts Pursuant To A Contract Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. The Forest Service Cannot Be Liable To Plaintiff For Actions Taken Prior To Contract Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV. Plaintiff Assertion that Timber Sale Contracts Are Contracts Of Adhesion Is Immaterial To The Interpretation Of C6.01 - An Unambiguous Contract Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A. Contra Proferentum Only Applies In Cases Where The Contract Is Ambiguous, And C6.01 Unambiguously Provides For Suspension In Response To A Court Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

B. The Timber Industry Assisted In Drafting These Timber Sale Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V. These Contracts Do Not Contain An Implied Warranty Of Specifications . . . . . 20

A. The *Spearin* Doctrine Does Not Apply To Timber Sale Contracts . . . . . 21

B. The *Spearin* Doctrine Is Inapplicable In This Case . . . . . . . . . . . . . . . . . 22

C. Contract Specifications Did Not Proximately Cause Plaintiffs' Alleged Harms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VI. Plaintiffs' Cannot Maintain a "Superior Knowledge" Claim . . . . . . . . . . . . . . . 25

A. Plaintiffs Cannot Demonstrate That The Forest Service Violated The First Two Prongs Of The Superior Knowledge Test . . . . . . . . . . . . 26

B. Plaintiffs' Reliance Upon The Forest Service Is Unfounded . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## TABLE OF AUTHORITIES

### CASES

Alaska Lumber & Pulp Company v. United States,
2 F.23d 389 (Fed. Cir. 1993) . . . . . . . . . . 6

Al Johnson Constr. Co. v. United States,
854 F.2d 467 (Fed. Cir. 1988) . . . . . . . . . . 21

Aragona Constr. Co. v. United States,
165 Ct. Cl. 382 (1964) . . . . . . . . . . 10

Baker v. United States,
50 Fed. Cl. 483 (2001) . . . . . . . . . . 11

Bishop Engineering Co. v. United States,
180 Ct. Cl. 411 (1967) . . . . . . . . . . 7

Boyer v. United States,
__ Fed. Cl. __,
2008 WL 857452 (March 27, 2008) . . . . . . . . . . 18

Bradley v. Chiron Corp.,
136 F.3d 1317 (Fed. Cir. 1998) . . . . . . . . . . 11

Broome Constr., Inc. v. United States,
492 F.2d 829,
203 Ct. Cl. 521 (1974) . . . . . . . . . . 10

C. Sanches and Son, Inc. v. United States,
6 F.3d 1539 (Fed. Cir. 1993) . . . . . . . . . . 17

Castle Constr. Co., ASBCA No. 28509,
84-1 BCA ¶ 17,045 (1984) . . . . . . . . . . 22

Centex Corp. v. United States,
395 F.3d 1283 (Fed. Cir. 2007) . . . . . . . . . . 10, 11

Cherry Hill Sand & Gravel Co. v. United States,
8 Cl. Ct. 757 (1985) . . . . . . . . . . 6

Dana Corp. v. United States,

470 F.2d 1032 (Ct. Cl. 1972) . . . . . . . . . . 6

David Nassif Assocs. v. United States,
664 F.2d 4 (Ct. Cl. 1981) . . . . . . . . . . 11, 13

Do-Well Mach. Shop Inc. v. United States,
870 F.2d 637 (Fed. Cir. 1989) . . . . . . . . . . 10

Environmental Prot. Info. Ctr. v. United States Forest Service,
451 F.3d 1005 (9th Cir. 2006) . . . . . . . . . . 12

Essex Electro Engineers, Inc. v. Danzig,
224 F.3d 1283 (Fed. Cir. 2000) . . . . . . . . . . 22, 24

Everett Plywood Corp. v. United States,
651 F.2d 723 (Ct. Cl. 1981) . . . . . . . . . . 22

Fortec Constructors v. United States,
760 F.2d 1288 (Fed. Cir. 1985) . . . . . . . . . . 7

GAF Corp. v. United States,
932 F.2d 947 (Fed. Cir. 1991), cert. denied,
502 U.S. 1071 (1992) . . . . . . . . . . 25, 26

Gardner, Kamya & Assoc. v. United States,
467 F.3d 1348 (Fed. Cir. 2006) . . . . . . . . . . 14, 16, 17

Gaston & Assoc., Inc. v. United States,
27 Fed. Cl. 243 (1992) . . . . . . . . . . 7

General Bronze v. United States,
338 F.2d 117 (Ct. Cl. 1964) . . . . . . . . . . 9

Gould Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991) . . . . . . . . . . 6

Gresham, Smith & Partners v. United States,
24 Cl. Ct. 796 (1991) . . . . . . . . . . 6

H.N. Wood Products, Inc. v. United States,
59 Fed. Cl. 479 (2003) . . . . . . . . . . 18, 24, 25

Hegeman-Harris & Co. v. United States,
440 F.2d 1009 (Ct. Cl. 1971) . . . . . . . . . . 6

Helene Curtis Industries, Inc. v. United States,
160 Ct. Cl. 437,
312 F.2d 774 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Hercules Inc. v. United States,
24 F.3d 188 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25

Hercules, Inc. v. United States,
516 U.S. 417 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Huber, Hunt & Nichols, Inc., GSBCA No. GS-09B-C-7004-SF,
75-2 BCA ¶11,457 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

J.L. Simmons Co. v. United States,
412 F.2d 1360 (Ct. Cl. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Laburnum Constr. Co. v. United States,
325 F.2d 451 (Ct. Cl. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Lockheed Martin IR Imaging Systems, Inc. v. United States,
108 F.3d 319 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Luria Bros. & Co. v. United States,
369 F.2d 701 (Ct. Cl. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

M.A. Mortenson Co. v. Brownlee,
363 F.3d 1203 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Madigan v. Hobin Lumber Co.,
986 F.2d 1401 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

McCall v. United States Postal Serv.,
839 F.2d 664 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Norton v. Southern Utah Wilderness Alliance,
542 U.S. 55 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Opalack v. United States,
5 Cl. Ct. 349 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Ordnance Research, Inc. v. United States,
609 F.2d 462 (Ct. Cl. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Oregon Natural Resource Council Action, et al. v. United States Forest Service and Bureau of Land Management,
No. C98-942WD (W.D. Wash.) . . . . . . . . . . 4

Oregon Natural Resources Council Action v. United States Forest Service.,
59 Supp. 1085 (W.D. Wash. 1999) . . . . . . . . . . 2

Precision Pine & Timber, Inc. v. United States,
50 Fed. Cl. 35 (2001) . . . . . . . . . . 14, 15, 19, 25

Precision Pine & Timber, Inc. v. United States,
62 Fed. Cl. 635 (2004) . . . . . . . . . . 21

Precision Pine & Timber, Inc. v. United States,
__ Fed. Cl. __,
2007 WL 5030766 (Sept. 14, 2007) . . . . . . . . . . 15, 19

R.E.D.M. Corp. v. United States,
428 F.2d 1304 (Ct. Cl. 1970) . . . . . . . . . . 22

Record Club of Am. v. United Artists Records,
890 F.2d 1264 (2d Cir. 1989) . . . . . . . . . . 17

Residential Mktg. Group v. Granite Inv. Group,
933 F.2d 546 (7th Cir. 1991) . . . . . . . . . . 17

Rick's Mushroom Service, Inc. v. United States,
2008 WL 861974 (Fed. Cir. Apr. 2, 2008) . . . . . . . . . . 23

Rick's Mushroom Service, Inc. v. United States,
2008 WL 861975 (Fed. Cir. Apr. 2, 2008) . . . . . . . . . . 21

Scott Timber Co. v. United States,
40 Fed. Cl. 492 (1998) , aff'd in part, rev'd in part,
333 F.3d 1358 (Fed. Cir. 2003) . . . . . . . . . . 8, 15, 16, 27

Seaboard Lumber Co. v. United States,
903 F.2d 1560 (Fed. Cir. 1990) . . . . . . . . . . 9, 19

Seaboard Lumber v. United States,
19 Cl. Ct. 310 (1990) . . . . . . . . . . 7

Spearin v. United States,
248 U.S. 132 (1918) . . . . . . . . . . passim

State of Arizona v. United States,
216 Ct. Cl. 221 (1978) . . . . . . . . . . 6, 7

Stout Road Assoc., Inc. v. United States,
80 Fed. Cl. 754 (2008) . . . . . . . . . . 12

Stuyvesant Dredging Co. v. United States,
834 F.2d 1576 (Fed. Cir. 1987) . . . . . . . . . . 23

Sun Shipbuilding & Dry Dock Co. v. United States,
393 F.2d 807 (Ct. Cl. 1968) . . . . . . . . . . 6

Tamarack Mills, LLC,
04-1 BCA ¶ 32,591 . . . . . . . . . . 26

Trinity River Lumber Co. v. United States,
66 Fed. Cl. 98 (2005) . . . . . . . . . . 18, 26

Union Management Corp. v. United States,
179 Ct. Cl. 534 (1967) . . . . . . . . . . 7

Wetsel-Oviatt Lumber Co., Inc. v. United States,
38 Fed. Cl. 563 (1997) . . . . . . . . . . 18

Winstar Corp. v. United States,
64 F.3d 1531 (Fed. Cir. 1995), aff'd
518 U.S. 839,
116 S.Ct. 2432 (1996) . . . . . . . . . . 6

Wunderlich v. United States,
342 U.S. 98 (1951) . . . . . . . . . . 9

## STATUTES

Fed. R. Civ. P. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 U.S.C. § 706(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. § 1491(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SCOTT TIMBER COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-708C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S TRIAL BRIEF

The plaintiff, Scott Timber Company ("Scott"), is a perennial bidder on federal timber contracts. Scott bid on the Jigsaw, Pigout, and Whitebird timber contracts, and renewed its bids after being informed by the United States Forest Service ("Forest Service" or "agency") that award of the contract would be delayed because of the threat of environmental litigation. The contracts contained a provision that provided the Government with the authority to suspend the contracts in the event of a judicial injunction. The Forest Service administered the contracts according to their usual procedures; after the contracts were suspended, the Forest Service lowered the down payment required, reduced the bond amounts, and extended the contract termination date, all with Scott's knowledge and agreement.

In general, this case concerns whether Scott Timber can establish liability against the Forest Service for an alleged breach of contracts based on actions that the Forest Service took before the contracts were awarded.

We will prove that when the contracts were suspended it was in accordance with an explicit term of the contract. We will prove that the Forest Service administered the contracts properly, from the time they were awarded, through the suspension period, and through the post-

suspension period. We will also prove that the timber industry has had ongoing input into the specific language contained in the Forest Service's form contracts.

Scott wanted these three timber contracts. Scott signed a contract containing a provision specifically providing the Forest Service with the authority to suspend the contracts in the event of a court-ordered injunction. Accordingly, Scott cannot now claim that the Forest Service committed a breach of the contracts by suspending them in response to the injunction order issued by the court in Oregon Natural Resources Council Action v. United States Forest Service., 59 Supp. 1085 (W.D. Wash. 1999).

In these proceedings, Scott offers four reasons why the Forest Service's actions constitute a breach of the contracts at issue here. First, Scott claims that the Forest Service's standard timber contracts are contracts of adhesion, being drafted exclusively by the Forest Service, and do not contain an explicit exculpatory provision. Second, Scott claims that the Forest Service breached its implied warranty of specifications in awarding a timber sale. Third, Scott claims that the Forest Service failed to disclose its superior knowledge that the contracts at issue here would have to be suspended based on environmental litigation. Fourth, Scott claims that the Forest Service breached the implied duties to cooperate and not to hinder by suspending. None of these allegations is correct.

## THE FACTS DEFENDANT EXPECTS TO PROVE AT TRIAL

### I. Facts Relating To The Forest Service's Mission And The Timber Industry's Role In Developing The Standard Timber Sale Contract

The Forest Service has two missions with respect to the United States' national forests. It must manage the forests in an environmentally responsible manner, and it must conduct the federal timber program. In doing so, it must consider the competing interests of the environment

and the timber industry, a fact that President Clinton recognized during the Forest Conference on April 2, 1993: "How can we achieve a balanced and comprehensive policy that recognizes the importance of the forest and timber to the economy and jobs in the region, and how can we preserve our precious old-growth forests, which are part of our national heritage and that, once destroyed, can never be replaced?" Further, the Forest Service must meet congressionally-mandated timber-harvest levels.

In conducting the federal timber program, the Forest Service has obtained input from the timber industry in developing the Forest Service's standard timber sale contract. The National Forest Products Association ("NFPA") acknowledged that the 2400-6 standard timber sale contract was developed in 1970 based, in part, on input and discussions with representatives from timber companies.

Over the past thirty years, the Forest Service has continued to meet with and seek comment from the timber industry concerning revisions to the timber sale contract. When the contracts were revised in September 1973, the revised timber sale contracts included terms that were favorable to the timber industry, including allowing purchasers to operate their sale with little Forest Service oversight. In the late 1980s and early 1990s, the Forest Service revised the standard timber sale contract to reflect changes in environmental laws, court decisions interpreting those environmental laws, and to protect the Forest Service's financial interests. Once again, the Forest Service sought, and received, input from the timber industry. In particular, NFPA provided numerous comments on C/CT6.01.

## II. Facts Relating To The Timber Sale Contracts

This case deals with three timber sale contracts, Jigsaw, Whitebird, and Pigout, all located on the Umpqua National Forest in Oregon. Each timber sale contract was advertised, bids sought, and auctions held in the fall of 1998. Prior to each auction, Brenda Woodard, the Forest Service Contracting Officer read a notice informing all bidders that the Forest Service was involved in litigation that could potentially affect these contracts. Scott was the apparent high bidder for all three sales.

The Forest Service awarded all three contracts on July 8, 1999. Each of these contracts included contract provision CT6.01, which specifically provides for the interruption or delay of operations to comply with a court order. Further, all three contracts included contract provision B8.21, which allows for a Contract Term Adjustment ("CTA" or "extension") if the Forest Service requests an interruption or delay of operations of more then ten days.

On August 2, 1999, the United States District Court for the Western District of Washington issued an order in Oregon Natural Resource Council Action, et al. v. United States Forest Service and Bureau of Land Management, No. C98-942WD (W.D. Wash.), finding that the Forest Service and BLM did not comply with the Category 2 survey requirements outlined in the Northwest Forest Plan ("NFP"). The ONRC Action court issued a supplemental order on August 26, 1999, enjoining operations on twenty-five timber sales, including the three sales at issue in this case.

The Forest Service, in accordance with the ONRC Action court order, suspended operations on the three timber sales, and sent a letter to Scott on August 31, 1999, informing it

that work on the timber sales must be suspended due to a court order. The letters all made reference to the injunction issued by Judge Dwyer.

All three of plaintiff's timber sale contracts include a clause that requires purchasers to submit a plan of operations prior to commencing work each season. Other clauses in the contracts contain "objectives" or "methods" for harvesting timber.

Following the suspension, the Forest Service continued to administer each of the three contracts, agreeing to amend the contracts to extend the termination date, and lower the performance bond. The Forest Service also agreed to lower Scott's down payment for each of the sales. Scott signed each contract modification for each of the three contracts, indicating Scott's ongoing involvement in the administration of the contracts.

Prior to awarding these timber sale contracts, the plaintiff had knowledge of the ONRC Action lawsuit. The Northwest Forestry Association, a timber industry group, issued a newsletter, Forestry Forum, that tracked the ONRC Action litigation in detail – including making mention of alleged "secret agreements" between the ONRC Action plaintiffs and the Government – and discussed the litigation's possible impact on timber sales in the region. The award of all three sales was delayed, and for each sale the Forest Service requested and received written permission to extend Scott's bids.

The Contracting Officer for the Jigsaw, Pigout, and Whitebird timber sales, Brenda Woodard, communicated regularly with representatives from the timber industry, including Douglas Timber Operators, an organization designed to promote the well-being of the timber industry in the Douglas County, where a portion of the Umpqua National Forest is located.

Additionally, the Contracting Officer discussed the ONRC Action litigation and its potential impact on these three sales with employees of Scott Timber.

Scott filed the instant case in this Court on June 30, 2005, alleging that the Forest Service breached these timber sale contracts by wrongfully suspending operations.

**DEFENDANT'S CONTENTIONS OF LAW**

I. The Contracts Explicitly Permit Suspension

Contract interpretation is a question of law for the Court to decide. Alaska Lumber & Pulp Company v. United States, 2 F.23d 389, 392 (Fed. Cir. 1993). Provisions of a contract must be construed so as to effectuate the spirit and purpose of the contract. State of Arizona v. United States, 216 Ct. Cl. 221, 235 (1978). The purpose of contract interpretation is to carry out the intent of the parties. Hegeman-Harris & Co. v. United States, 440 F.2d 1009, 1014 (Ct. Cl. 1971); accord Winstar Corp. v. United States, 64 F.3d 1531, 1540 (Fed. Cir. 1995) (en banc), aff'd 518 U.S. 839, 116 S.Ct. 2432 (1996).

The Court's first responsibility when construing a disputed contractual provision is to ascertain whether the meaning of the disputed contract provision is plain from the language or whether an ambiguity exists. Gresham, Smith & Partners v. United States, 24 Cl. Ct. 796, 802 (1991). A contract is ambiguous only if it is susceptible to differing reasonable interpretations, each consistent with the language of the contract as a whole. Sun Shipbuilding & Dry Dock Co. v. United States, 393 F.2d 807, 815-16 (Ct. Cl. 1968); see Gould Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). Contract terms are not ambiguous merely because the parties disagree as to their meaning. E.g., Cherry Hill Sand & Gravel Co. v. United States, 8 Cl. Ct. 757, 764 (1985). The Court should not strain to create an ambiguity where none exists. Dana

Corp. v. United States, 470 F.2d 1032, 1043 (Ct. Cl. 1972); Bishop Engineering Co. v. United States, 180 Ct. Cl. 411, 416 (1967); Opalack v. United States, 5 Cl. Ct. 349, 259 (1984).

Further, a contract must be construed "as a whole" to harmonize all its provisions. Lockheed Martin IR Imaging Systems, Inc. v. United States, 108 F.3d 319, 323 (Fed. Cir. 1997); State of Arizona v. United States, 216 Ct. Cl. at 235. An interpretation of a contract that "gives reasonable meaning to all parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result." State of Arizona, 216 Ct. Cl. at 235; Fortec Constructors v. United States, 760 F.2d 1288, 1292 (Fed. Cir. 1985). Conversely, contract clauses cannot be interpreted in isolation. Gaston & Assoc., Inc. v. United States, 27 Fed. Cl. 243, 249 n.7 (1992) (citing Union Management Corp. v. United States, 179 Ct. Cl. 534 (1967)); see Seaboard Lumber v. United States, 19 Cl. Ct. 310, 316 (1990).

## II. The Forest Service Properly Suspended Plaintiff's Timber Sale Contracts Pursuant To A Contract Provision

Whether the Forest Service properly suspended these contracts is a question of pure contract interpretation. The Forest Service suspended plaintiff's timber sale contracts pursuant to a clause in all three contracts that permits the Forest Service to suspend the contract to comply with a court order. The three contracts contain contract provision CT6.01. CT6.01 provides:

> INTERRUPTION OR DELAY OF OPERATIONS. (10/96) Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of the Contracting Officer: . . . (b) To comply with a court order, issued by a court of competent jurisdiction.

The plain and unambiguous language of this contract clause authorizes the Forest Service to suspend timber sale contracts pursuant to court order. Plaintiff asks this Court to ignore a clear

and unambiguous contract provision, to which it agreed, and find that the Forest Service wrongfully suspended these timber sale contracts.

The United States Court of Appeals for the Federal Circuit has recognized that the "Forest Service had authority to unilaterally suspend operations under any contracts with the CT6.01 clause." Scott Timber Co. v. United States, 333 F.3d 1358, 1366 (Fed. Cir. 2003). In the Scott case, which involves the same Scott Timber Co. currently before this Court, the Forest Service suspended timber sale contracts on September 17, 1992, after the United States District Court for the Western District of Washington issued a temporary restraining order on September 16, 1992, while it considered a lawsuit filed by the Audubon Society that sought to compel the Fish and Wildlife Service ("FWS") to list the marbled murrelet as threatened or endangered and the Forest Service to protect the marbled murrelet under the National Forest Management Act ("NFMA"). Scott Timber Co. v. United States, 333 F.3d at 1361. The Federal Circuit determined that, "suspension was clearly authorized by contract clause CT6.01(b), which vests the Forest Service with the power to suspend the contracts if necessary '[t]o comply with a court order.'" Scott Timber Co. v. United States, 40 Fed. Cl. 492, 500-501 (1998) , aff'd in part, rev'd in part, 333 F.3d 1358 (Fed. Cir. 2003). Similarly, in this case, the Forest Service, in accordance with the plain language of CT6.01, suspended the contracts after the United States District Court for the Western District of Washington issued an order on August 26, 1999 enjoining a number of timber sales in the Pacific Northwest, including the three sales at issue here. The contracting officer for the three sales wrote letters to the plaintiff informing it of the suspension, and each letter referred to the district court's order as the cause of the suspension. Undeniably, the Forest

Service suspended these contracts "to comply with a court order" and did so in accordance with its contract rights.[1]

Furthermore, in the contract, the parties expressly agreed upon what remedies would be available to the plaintiff in the event a court-ordered suspension was initiated. Clause CT6.01 contains a liability provision that defines the available remedies as a contract term adjustment – that is, a term extension – and out-of-pocket expenses. At trial, the Government will show that the plaintiff fully availed itself of the remedies to which it agreed in CT6.01, including seeking contract term adjustments, reductions in down-payments, and reductions in bonds. In essence then, the pending suit is an attempt by the plaintiff to obtain additional remedies, over and above that to which they agreed to be bound in the contract. The "out-of-pocket expenses" contemplated by the contract in CT6.01 specifically do not include "lost profits, attorney's fees, replacement cost of timber, or any other anticipatory losses suffered by Purchaser."

Plaintiff is bound by that to which it agreed. As the United States Court of Appeals for the Federal Circuit has recognized; "[a] long line of our precedent has established that agreed upon terms must be enforced." Madigan v. Hobin Lumber Co., 986 F.2d 1401, 1403 (Fed. Cir. 1993) (citing Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1564-65 (Fed. Cir. 1990). This principle is equally correct even when the Government is a party to the contract. General Bronze v. United States, 338 F.2d 117, 124 (Ct. Cl. 1964) ("If the Government is to be held

[1] The fact the parties did not engage in detailed discussions or specific negotiations concerning the language of the clause, does not render the clause any less binding or, somehow, unenforceable. As the court of appeals has recognized, even when a contract is a "'take it or leave it' offer[] by the government . . . ," the contractor was not "compelled or coerced into making the contract [with the government]. It was a voluntary undertaking on their part." Seaboard Lumber Co. v. United States, 903 F.2d at 1564-65, citing Wunderlich v. United States, 342 U.S. 98, 100 (1951) (upholding contract terms that denied judicial review of contracting officers' decisions).

strictly to its contractual obligations as though it were a private obligor, then, of course it s entitled to insist that those who contract with it shall be held to the same accountability.”). Indeed, this principle is not merely “well-established,” it is bedrock law in our jurisprudence See generally, Do-Well Mach. Shop Inc. v. United States, 870 F.2d 637, 640-41 (Fed. Cir. 1989); McCall v. United States Postal Serv., 839 F.2d 664, 667 (Fed. Cir. 1988); Broome Constr., Inc. v. United States, 492 F.2d 829, 834, 203 Ct. Cl. 521 (1974); Aragona Constr. Co. v. United States, 165 Ct. Cl. 382, 390 (1964).

In the suit pending before this Court, the plain language of the contracts gave the Forest Service the authority to suspend the timber sale contracts to comply with a court order and limited the purchaser’s remedies in the event of such a suspension. To hold, as the plaintiff here requests, that the Forest Service’s action in invoking its suspension rights under the contract (pursuant to a court order) amounts to a breach of the contract would vitiate the plain language of the contract and would conflict with controlling precedent.

III. The Forest Service Cannot Be Liable To Plaintiff For Actions Taken Prior To Contract Award

As explained above, the Forest Service has the authority to suspend timber sale contracts to comply with court orders pursuant to CT6.01. This authority, however, remains subject to the implied covenant of good faith and fair dealing. “The covenant of good faith and fair dealing is an implied duty that each party to a contract owes to its contracting partner.” Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2007). It imposes obligations upon both contracting parties that include the duty not to interfere with the other party’s performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract. Id. However, the covenant is limited to assuring compliance with the express

terms of the contract and thus does not create obligations not contemplated in the contract itself. Bradley v. Chiron Corp., 136 F.3d 1317, 1326 (Fed. Cir. 1998). Consequently, "the assertion of a legitimate contract right cannot be considered violative of a duty of good faith and fair dealing." David Nassif Assocs. v. United States, 664 F.2d 4, 12 (Ct. Cl. 1981).

Here, plaintiff's contention that the Forest Service breached the implied covenant of good faith and fair dealing is based upon conduct occurring before contracts were awarded. The covenant of good faith and fair dealing is an implied contract term. Because no duty of good faith and fair dealing exists in the absence of a contract, it necessarily follows that pre-contract conduct cannot constitute a breach.[2] Simply put, when no duty exists, there can be no breach of duty.[3]

The only context in which this Court possesses jurisdiction to entertain a pre-award claim from a private party is in the context of a bid protest, which does not allow the Court to award contract damages. 28 U.S.C. § 1491(b). Here, Scott's claims can be analyzed as a kind of "bid protest in reverse." Typically, in a bid protest case the contractor alleges that it has been prejudiced by being denied award of a contract based on an arbitrary and capricious, decision by the Government, or a procurement action taken in violation of a statute or regulation.

---

[2] Another judge of this Court has found that an agency did not owe plaintiffs a fiduciary duty in accordance with the duty of good faith and fair dealing when "any conduct in violation of statutes and rules . . . occurred prior to the formation of a contract . . . ." Baker v. United States, 50 Fed. Cl. 483, 499 (2001).

[3] Where a contract contains an express warranty, actions taken before the execution of the contract might conceivably breach the warranty. For instance, a seller who warrants clear title breaches the warranty if a pre-sale loan has not been paid off. Here, however, plaintiffs allege no breach of warranty.

Here, Scott makes essentially the same claim, that it was damaged by a procurement decision made contrary to law, except that Scott asserts a claim for damages because the contract was awarded to it. Scott contends that the awards of the Jigsaw, Pigout, and Whitebird contracts were made before the Forest Service had met its legal obligation to perform surveys for Category 2 species, and were therefore contrary to law. If the Court were to agree, Scott, at best might be entitled to injunctive relief potentially available under this Court's bid protest jurisdiction. Id.[4]

Furthermore, allegations that an agency's environmental decisions allegedly violate the NEPA and the NFMA are reviewable only in District Courts under the Administrative Procedure Act ("APA") and may be set aside only if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Environmental Prot. Info. Ctr. v. United States Forest Service, 451 F.3d 1005, 1008-09 (9th Cir. 2006) (quoting 5 U.S.C. § 706(2)(A)). In cases where the agency's environmental decisions are challenged, the only appropriate remedy is available under the APA, which "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'take action upon a matter, without directing how it shall act.'" Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (quoting Attorney General's Manual on the Administrative Procedure Act 1080 (1947)).

In this case, plaintiff asks this Court to undertake an APA-based review of the Forest Serivce's pre-contract award actions, and somehow derive a remedy of monetary contract damages therefrom. The environmental statutes and regulations that obligate the Forest Service to meet prescribed environmental standards do not address contractual obligations, and do not

[4] If the three contracts at issue here were, in fact, awarded contrary to law, the Court should determine that they were void ab initio because no Government employee has the authority to award an illegal contract. Stout Road Assoc., Inc. v. United States, 80 Fed. Cl. 754 (2008).

provide any contract-related remedy for monetary damages. Scott's attempt to conflate the Forest Service's obligations under environmental laws and regulations with the Forest Service's contractual obligations under the timber contracts at issue here finds no support in the law. Therefore, Scott's claim for monetary damages founded on the Forest Service's alleged shortcomings in meeting environmental obligations, must fail. This Court's review is properly limited to consideration only of the Forest Service's actions from the moment a contractual relationship was established between the parties. Allegations that the Forest Service failed to meet the appropriate standard in awarding a contract, are, as established above, redressable only in the context of a bid protest. Otherwise, until a contract has been formed, there is no basis for finding a contractual duty, or for alleged breach thereof, or for making an award of damages.

In addition, because the timber sale contracts give the Forest Service the right to suspend performance to comply with the order of a court of competent jurisdiction, the suspension of plaintiff's contracts cannot constitute a breach of the implied covenant of good faith and fair dealing. David Nassif Assocs. v. United States, 664 F.2d at 12. It is undisputed that a Federal district court entered an injunction in ONRC Action. The Forest Service was, therefore, entitled to suspend these contracts pursuant to CT6.01.

Plaintiff insists that the Forest Service cannot invoke CT6.01 because the ONRC Action injunction was caused by the Forest Service's allegedly unreasonable or illegal pre-award interpretation of its environmental responsibilities under the NFP. Such a limitation on the ability to suspend would render clause CT6.01 nugatory and, thus, violate a basic canon of statutory construction. See Gardner, Kamya & Assoc. v. United States, 467 F.3d 1348, 1352 (Fed. Cir. 2006) ("We must interpret a contract as a whole and in a manner which gives

reasonable meaning to all its parts and avoids conflict or surplusage of its provisions.") (brackets and internal quotes omitted).

CT6.01 authorizes a suspension to comply with an order from a court of competent jurisdiction. However, a district court will enter a preliminary injunction that prevents timber harvesting only if an environmental plaintiff has shown a "likelihood of success on the merits." Fed. R. Civ. P. 65. Consequently, the most probable situation in which the Forest Service would seek to invoke CT6.01 is after a court has concluded that the Forest Service may have erred in some material respect. It would therefore effectively void CT6.01 to hold that the clause cannot be invoked where some Forest Service action "caused" the court order upon which the suspension is based.

Throughout their brief, plaintiff relies upon the Court of Federal Claims' decision in Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001). Precision Pine, which was decided before the United States Court of Appeals for the Federal Circuit issued Scott Timber Co. v. United States, 333 F.3d 1358 (Fed. Cir. 2003), addressed the Forest Service's suspensions of 14 timber sale contracts pursuant to contract clause C[]6.01. The court found two distinct breaches: (1) the breach of a purported express warranty in clause C[]6.25; and (2) a breach occurring when otherwise valid contract suspensions continued for too long.[5] Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. at 58. The claim that C[]6.25 contains an express warranty was rejected by Scott Timber, and, therefore, this aspect of the Precision Pine decision is no longer viable. Scott Timber v. United States, 333 F.3d at 1371. Moreover, the

[5] The Court sometimes described the breach of warranty as a breach of the "implied duty to cooperate" and discussed the other breach as the breach of the "implied duty not to hinder." These implied duties are characterized as subspecies of the well-known duty of good faith and fair dealing. See Precision Pine, 50 Fed. Cl. at 58-59.

Precision Pine court - like the Federal Circuit in Scott Timber - found that C[]6.01 expressly authorizes the Forest Service to suspend contracts to comply with a district court injunction:

> C[]6.01 gives the Forest Service the contractual right to suspend the contracts. It is only after the statutory time frame [for consultation with the Fish and Wildlife Service] expires that the Forest Service can be found to have breached the implied duty not to hinder, and even then only after additional findings with respect to unreasonableness are made. Thus, defendant was not in breach of the implied duty not to hinder until, at the earliest, the time at which the 135-day statutory consultation period had elapsed.

Precision Pine & Timber, Inc. v. United States, __ Fed. Cl. __, 2007 WL 5030766 at *30 (Sept. 14, 2007) (emphasis added). Thus, Precision Pine stands only for the unremarkable proposition that the duty of good faith and fair dealing might place an outer limit on the length of the suspension authorized by CT6.01. See id.

Furthermore, in Scott Timber, the Federal Circuit recognized that any reasonableness inquiry is only appropriate as it relates to the duration of the suspensions, not the mere fact that the contracts were suspended. Scott Timber Co. v. United States, 333 F.3d at 1368 (noting that CT6.01 does not authorize the indefinite or permanent suspension of the contracts, and that the court looks to the reasonableness of the suspension only to determine whether a prolonged suspension constitutes a breach). Therefore, for contracts that include clause CT6.01, Scott Timber establishes that the only possible breach the plaintiff could prove is a breach resulting from the duration of the suspension.

Binding precedent establishes that the duty of good faith and fair dealing – and its subspecies, the duties to cooperate and not to hinder – does not apply to the Forest Service's pre-contract actions. Because the plaintiff focuses solely on the Forest Service's pre-contract

actions, and does not challenge the duration of the suspensions, this Court cannot find that the Forest Service breached these timber sale contracts.

IV. Plaintiff's Assertion that Timber Sale Contracts Are Contracts Of Adhesion Is Immaterial To The Interpretation Of CT6.01 - An Unambiguous Contract Provision

Plaintiff argues that timber sale contracts are "adhesion contracts" and must therefore be construed against the Government. Pl. Memo at 10-17. Plaintiff's argument is both legally and factually flawed.

A. Contra Proferentum Only Applies In Cases Where The Contract Is Ambiguous, And CT6.01 Unambiguously Provides For Suspension In Response To A Court Order

Plaintiffs would have the Court assume that these contracts are ambiguous, and move straight into an analysis of parol evidence. However, clause CT6.01 unambiguously and expressly authorizes the Forest Service to suspend timber sale contracts to comply with a court order. Parol evidence, much less the doctrine of contra proferentum, plays no role in construing an unambiguous contract term.

The starting point for construing a contract is its plain language. Gardiner, Kamya & Assoc., P.C. v. Jackson, 467 F.3d at 1353; M.A. Mortenson Co. v. Brownlee, 363 F.3d 1203, 1206 (Fed. Cir. 2004). By contrast, the doctrine of contra proferentum is a "'rule of last resort' that 'is applied only where there is a genuine ambiguity and where, after examining the entire contract, the relation of the parties and the circumstances under which they executed the contract, the ambiguity remains unresolved.'" Gardiner, Kamya & Assoc., P.C. v. Jackson, 467 F.3d at 1352 (citations omitted); see also Residential Mktg. Group v. Granite Inv. Group, 933 F.2d 546, 549 (7th Cir. 1991); Record Club of Am. v. United Artists Records, 890 F.2d 1264, 1271 (2d Cir. 1989); see also 5 Margaret N. Kniffin, Corbin on Contracts § 24.27 at 297 (contra

proferentum is "a tie-breaker when there is no other sound basis for choosing one contract interpretation over another") (internal quotations omitted); 2 E. Allan Farnsworth, Farnsworth on Contracts § 7.11 at 304 (contra proferentum "is often denigrated as a rule of last resort") (internal quotations omitted).

Here, there is no need to employ this rule of last resort because the contracts at issue include a clause – CT6.01 – that gives the Forest Service authority to suspend the timber sale contracts to comply with a court order. CT6.01 states:

> INTERRUPTION OR DELAY OF OPERATIONS. (10/96) Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of the Contracting Officer: . . . (b) To comply with a court order, issued by a court of competent jurisdiction.

App. 16, 41, 74. Plaintiff does not argue that CT6.01's authority to suspend is ambiguous. See, e.g., Gardener, Kamya & Assoc., P.C. v. Jackson, 467 F.3d at 1352 (citing C. Sanches and Son, Inc. v. United States, 6 F.3d 1539, 1543 (Fed. Cir. 1993) ("A contract is read in accordance with its express terms and the plain meaning thereof.")).

In addition, CT6.01 specifically establishes the remedy available to purchasers in the event of a court-ordered suspension – an adjustment of the contract term and out-of-pocket expenses. App. 16, 41, 74. Plaintiff asserts that the contracts lack language that would protect the Forest Service against liability in the event of suspensions. The plaintiff is plainly wrong; it is difficult to imagine a clearer statement limiting liability than CT6.01. And while plaintiff points to other cases from this Court and the Agriculture Board of Contract Appeals ("AGBCA")[6] for the proposition that the language of CT6.01 does not limit liability, they ignore

[6] Plaintiffs cite to other Court of Federal Claims decisions and two AGBCA cases, which are not binding upon this Court. See Boyer v. United States, __ Fed. Cl. __, 2008 WL 857452 at *21,

the United States Court of Appeals for the Federal Circuit's pronouncement that the "Forest Service had the authority to unilaterally suspend operations under any contracts with the CT6.01 clause." Scott Timber Co. v. United States, 333 F.3d 1358, 1366 (Fed. Cir. 2003).

Plaintiff attempts to invalidate CT6.01 by misrepresenting it as an exculpatory clause. However, CT6.01 does not, and need not, seek to exculpate the Forest Service from liability for the breach of an express warranty in the contract, it merely serves to define the rights and responsibilities of the parties after, for example, a court of competent jurisdiction enjoins work on the sales. Therefore, the cases invalidating exculpatory clauses are inapposite here.

Furthermore, Precision Pine did not, as plaintiff intimates, establish that CT6.01 is invalid as a limited liability clause. In that case, another judge of this Court reviewed CT6.01 in terms of whether CT6.01 was an exculpatory provision. Precision Pine & Timber Co. v. United States, 50 Fed. Cl. at 58. Precision Pine clearly did not invalidate CT6.01 as a limited liability provision, however, because the Court determined that CT6.01 provided the only damages available to plaintiffs for the timber sales where the Forest Service acted reasonably. Precision Pine & Timber Co. v. United States, __ Fed. Cl. __, 2007 WL 5030766 at *53 (Sept. 14, 2007).

The clear language in CT6.01 provides the Forest Service clear authority suspend, and establishes the extent of Forest Service liability in the event of a suspension. Therefore, there is no need to consider whether these contracts are contracts of adhesion, entertain extrinsic

n.3 (March 27, 2008) (noting that another Court of Federal Claims decision is not binding precedent in this Court); Wetsel-Oviatt Lumber Co., Inc. v. United States, 38 Fed. Cl. 563, 569 (1997) (noting that AGBCA cases are not binding upon this Court). Plaintiffs cite Trinity River and H.N. Wood Products as evidence that CT6.01 is not a valid exculpatory provision; however, because CT6.01 simply defines the scope of the Forest Service's liability in the event of a suspension, these cases do not support plaintiff's position. Trinity River Lumber Co. v. United States, 66 Fed. Cl. 98, 108 (2005); H.N. Wood Products, Inc. v. United States, 59 Fed. Cl. 479, 487 (2003).

evidence, or apply the rule of contra proferentum. The plaintiff's companion argument that the Forest Service assumed the risk of liability when it did not include any language limiting liability is belied by the express terms of plaintiff's contracts.

B. The Timber Industry Assisted In Drafting These Timber Sale Contracts

Alternatively, should this Court find that an ambiguity exists in these timber sale contracts, the Court will necessarily reach the issue of whether these contracts are contracts of adhesion, and whether, as plaintiff alleges, they should be construed against the Forest Service as the sole drafter. Contracts offered on a take-it-or-leave-it basis are not automatically adhesion contracts. See Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1565-66 (Fed. Cir. 1990) (noting that private parties are not compelled to enter into contracts with the Government). Here, plaintiff fails to take into account the integral role played by the timber industry in drafting these timber sale contracts, including CT6.01. At trial, the Government will introduce evidence demonstrating the vital role played by the timber industry in drafting these contracts.

Over the last 30 years, the Forest Service has met with and sought comment from members of the timber industry concerning the standard timber sale contract and proposed revisions. Specifically, we will introduce evidence that demonstrates the Forest Service sought and received comments from the timber industry on an earlier version of CT6.01 that is similar to the clause in plaintiff's three timber sale contracts. The Forest Service used industry comments to modify the contract terms, and essentially engaged in negotiations with the timber industry regarding the standard timber sale contract.

Within the bounds of laws governing the formulation of regulation and policy, the Forest Service has engaged in discussions with members of the timber industry about the standard

timber sale contracts and issues affecting the timber industry. The standard timber sale contracts, including the contracts at issue in this litigation, were not drafted entirely by the Forest Service, and industry received ample opportunity for negotiating the terms of the contracts.

## V. These Contracts Do Not Contain An Implied Warranty Of Specifications

Plaintiff next argues that the Forest Service breached an implied warranty of specifications, following the doctrine established by the Supreme Court of the United States in Spearin v. United States,[7] 248 U.S. 132 (1918). Plaintiff argues that the Forest Service is liable for damages incurred as a result of the Forest Service's allegedly defective specifications. Plaintiff's argument is inapposite because the United States Court of Appeals for the Federal Circuit has construed the Spearin doctrine narrowly, the timber sale contracts at issue do not contain design specifications, and any specifications were not the proximate cause of plaintiff's alleged harms.

### A. The *Spearin* Doctrine Does Not Apply To Timber Sale Contracts

Plaintiff's attempt to extend the Spearin doctrine to timber sale contracts must fail. While plaintiff contends that the United States Court of Appeals for the Federal Circuit has expanded the Spearin doctrine, a recent decision by that Court demonstrates that the doctrine applies only to cases involving construction contracts or contracts for the procurement, by the government, of goods and services. Rick's Mushroom Service, Inc. v. United States, 2008 WL 861975, *5 (Fed. Cir. Apr. 2, 2008) (declining to find that the Spearin doctrine applies outside of the procurement contract context). By definition, timber sale contracts are not contracts for the

[7] In Spearin, the Supreme Court of the United States found the government responsible for delay caused by defective design specifications in a construction contract. Spearin v. United States, 248 U.S. at 137.

procurement, by the government, of goods and services. See Precision Pine & Timber, Inc. v. United States, 62 Fed. Cl. 635, 639 (2004) (noting that the Federal Acquisition Regulation ("FAR") does not apply to timber sale contracts). The Spearin doctrine cannot be extended to timber sale contracts.

Plaintiff cites numerous cases that ostensibly demonstrate that the Spearin doctrine is expansive, and should, therefore, be applied to these timber sale contracts. A review of the cited cases shows otherwise. In Hercules, Inc. v. United States, the Supreme Court of the United States declined to apply the Spearin doctrine against the government to allow Agent Orange manufacturers to claim indemnification from the United States for costs incurred settling tort claims. Hercules, Inc. v. United States, 516 U.S. 417, 425 (1996). Other cases cited by plaintiffs have one commonality – they all relate to construction contracts. Al Johnson Constr. Co. v. United States, 854 F.2d 467, 468 (Fed. Cir. 1988) (constructing a spillway for the government); J.L. Simmons Co. v. United States, 412 F.2d 1360, 1383 (Ct. Cl. 1969) (building a hospital for the government); Huber, Hunt & Nichols, Inc., GSBCA No. GS-09B-C-7004-SF, 75-2 BCA ¶ 11,457 (1975), at 54572 (constructing a federal office building and post office); Castle Constr. Co., ASBCA No. 28509, 84-1 BCA ¶ 17,045 (1984), at 84,859 (constructing barracks at a military base); Laburnum Constr. Co. v. United States, 325 F.2d 451, 452 (Ct. Cl. 1963) (installing a high pressure steam line at a naval base); Luria Bros. & Co. v. United States, 369 F.2d 701, 703 (Ct. Cl. 1966) (constructing aircraft facilities). In the one timber case that references the Spearin doctrine, Everett Plywood Corp. v. United States, 651 F.2d 723 (Ct. Cl. 1981), the Court of Claims declined to decide whether the Spearin doctrine applied. Id. at 731. Here, plaintiff cannot point to a single specification that it attempted to follow and suffered

damages as a result.[8]

Plaintiff's own brief demonstrates that courts have not extensively applied the Spearin doctrine outside the context of construction contracts, and the doctrine certainly should not be expanded to apply to timber sale contracts.

B. The Spearin Doctrine Is Inapplicable In This Case

Even if this Court were to determine that the Spearin doctrine could apply to contracts other than those for the procurement, by the Government, of goods and services, the doctrine could not apply in this case. As the Federal Circuit found in Rick's Mushroom Service, Inc. v. United States, the Spearin doctrine applies only where the Government has provided design, not performance, specifications, and, therefore, guaranteed that "if the specifications are followed, an acceptable result will be produced." Rick's Mushroom Service, Inc. v. United States, 2008 WL 861974, *4 (Fed. Cir. Apr. 2, 2008). As a threshold issue, the key to the Spearin doctrine is that the contractor's performance was in some way rendered more expensive due to the contractor's compliance with the defective design specifications. Plaintiff never identifies, nor can they identify, which"specifications" of these timber sale contracts were defective or how such defects materially impeded contract performance.

Furthermore, while plaintiff refers to the many "specifications" outlined in the timber sale contracts, mere use of the word "specification" does not trigger the Spearin doctrine, which,

---

[8] Aside from construction cases, the application of the Spearin doctrine has been limited to procurement contracts. See Essex Electro Engineers, Inc. v. Danzig, 224 F.3d 1283, 1286 (Fed. Cir. 2000) (applying the Spearin doctrine to a case involving a contract to "manufacture, test, and deliver a number of skid-mounted floodlights"); Ordnance Research, Inc. v. United States, 609 F.2d 462, 481 (Ct. Cl. 1979) (involving a procurement for the production of igniters used in fire bombs); R.E.D.M. Corp. v. United States, 428 F.2d 1304, 1308-10 (Ct. Cl. 1970) (involving a contract for the manufacture of artillery fuzes).

aside from its limited application in the context of construction and procurement contracts, applies only to design specifications, not performance specifications. "Design specifications explicitly state how the contract is to be performed and permit no deviation . . . . Design specifications contain an implied warranty that if they are followed, an acceptable result will be produced." Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1582 (Fed. Cir. 1987) (emphasis added). At trial, the Government will introduce evidence to show that these timber sale contracts expressly permit deviation by requiring purchasers to submit their own plan of operations prior to commencing work each season. Therefore, while certain aspects of contract performance are outlined by the Forest Service (clauses in the contracts define, as plaintiff's appropriately point out, the normal operating season and contract termination date), the Government will demonstrate that each purchaser may harvest the timber located on its timber sale area in accordance with its own plan of operations. The Government will also introduce evidence to show that the specifications in these timber sale contracts are not sufficiently specific nor detailed, and they provide sufficient discretion to the purchasers, such that these specifications cannot reasonably be considered "design" specifications.

C. Contract Specifications Did Not Proximately Cause Plaintiffs' Alleged Harms

If the Spearin doctrine could be extended to timber sale contracts, and if the contract specifications could reasonably be read as "design" specification, the plaintiff would still have to establish that the Forest Service's allegedly faulty design specifications must necessarily be the proximate cause of the delay resulting from the suspension. Essex Electro Engineers, Inc. v. Danzig, 224 F.3d 1283, 1289 (Fed. Cir. 2000) (permitting recovery for costs proximately flowing from a breach). This plaintiff cannot do; indeed, plaintiff has not identified a single

contractual specification with which they could not comply that resulted in harm. Plaintiff fails to recognize that, but for the court order suspending work on the timber sales, contract performance would have proceeded in accordance with their contracts and in plaintiff's own plans of operation. Therefore, the proximate cause of the suspensions and any resulting delay was the court order, not any specifications outlined in the contracts.

Furthermore, plaintiff's reasoning requires this Court to establish a per se link between the ONRC Action court order and a finding that the Forest Service breached an implied warranty of specifications. In H.N. Wood Products, Inc. v. United States, this Court declined to establish a link between a post-award court order and the Forest Service's implied duties because "it is unclear whether the Forest Service knew or should have known that its environmental assessment was inadequate when it awarded the Contract . . . ." H.N. Wood Products, Inc. v. United States, 59 Fed. Cl. 479, 491 (2003). The Court's decision denying plaintiff's motion for summary judgment noted that "[u]nlike the contracts at issue in Precision Pine and Superior Timber, the Forest Service awarded H.N. Wood's contract before it received a decision from the district court . . . ." Id. Similarly, in these cases, the Forest Service had no reason to believe that the timber sale contracts were inadequate until the ONRC Action court invalidated the Forest Service's policies. The Forest Service followed Forest Service policy when it drafted and awarded these timber sale contracts, and plaintiff's attempt to establish a per se link between the district court's post-contract award order and a breach of an implied warranty must fail.

VI. Plaintiffs' Cannot Maintain a "Superior Knowledge" Claim

As a threshold issue, superior knowledge is a performance doctrine, where the "withholding of superior knowledge that makes it more difficult to perform under the terms of

the contract at issue." Hercules Inc. v. United States, 24 F.3d 188, 197 (Fed. Cir. 1994) (emphasis added). Plaintiff asks the Court to transform the doctrine of superior knowledge from a doctrine that relates to contract performance into a doctrine that applies to the contractor's decision whether, and upon what terms, to enter into a contract with the government.

To prove a breach of the duty under the superior knowledge doctrine, a contractor must produce specific evidence that: (1) it began performance without knowledge of a fact that affects performance; (2) the government was aware the contractor had no knowledge and no reason to obtain that knowledge; (3) contract specifications misled the contractor; and (4) the government failed to provide relevant information. GAF Corp. v. United States, 932 F.2d 947, 949 (Fed. Cir. 1991), cert. denied, 502 U.S. 1071 (1992) (internal citations omitted). Moreover, the missing information must be absolutely critical information, without which the contractor was doomed to failure. See Helene Curtis Industries, Inc. v. United States, 160 Ct. Cl. 437, 312 F.2d 774, 778 (1963). Plaintiff, here, cannot prove that the Forest Service breached any duty relating to the superior knowledge doctrine.

A. Plaintiffs Cannot Demonstrate That The Forest Service Violated The First Two Prongs Of The Superior Knowledge Test

Plaintiff cannot establish either that it began performance of these three timber sale contracts without vital information, or that the Forest Service knew they lacked this allegedly vital information. GAF Corp. v. United States, 932 F.2d at 949. Plaintiff's arguments with regard to both of these prongs of the superior knowledge doctrine are insupportable.

Scott had notice, both formal and informal, that the three sales at issue here were involved in litigation. These timber sales were awarded in the Pacific Northwest at a time when environmental litigation was a fact of life. Trinity River Lumber Co. v. United States, 66 Fed.

Cl. 98, 111 (2005) (citing Tamarack Mills, LLC, 04-1 BCA ¶ 32,591 at 161,230). At trial, the Government will introduce evidence to establish that the Northwest Forestry Association, a timber industry group, issued a newsletter that, among other things, tracked environmental litigation in the area, and followed the ONRC Action litigation in detail.

At trial, the Government will also introduce evidence to establish that the Forest Service made the plaintiff aware of the ONRC Action litigation prior to bid opening and that the Forest Service communicated to the plaintiff that the delayed award was attributable to the ONRC Action litigation.

At trial, the Government will introduce evidence that establishes, at a minimum, that plaintiff did not begin contract performance without vital information, and that the Government did not have any reason to know that they lacked this allegedly "vital" information.

B. Plaintiffs' Reliance Upon The Forest Service Is Unfounded

Plaintiff's claim that they "relied upon the [Forest Service's] silence and letters and suffered injury as a result of the [Forest Service's] failure to disclose." Pl's Memo at 27. Plaintiff's attempt to portray itself as a naive victim, rather than as a savvy business that has been involved in its share of timber litigation over the years, is unavailing, if not disingenuous. See

Plaintiff's claim that they "relied upon the [Forest Service's] silence and letters and suffered injury as a result of the [Forest Service's] failure to disclose." Pl's Memo at 27. Plaintiff's attempt to portray itself as a naive victim, rather than as a savvy business that has been involved in its share of timber litigation over the years, is unavailing, if not disingenuous. See Scott Timber Co. v. United States, 333 F.3d 1358 (Fed. Cir. 2003); Scott Timber Co. v. United States, +40 Fed. C. 492, 496 (1998) (alleging breach of contract after the Forest Service suspended

contract performance in response to a temporary restraining order issued to protect the marbled murrelet); In re Scott Timber Co., Inc., 00-1 BCA ¶ 30,760 (Feb. 4, 2000) (challenging a deemed denial of Scotts claim for damages after the Bureau of Land Management ("BLM") suspended performance in accordance with a temporary restraining order after a district court found the BLM did not comply with environmental law). Plaintiff's supposed surprise, if true, that the contracts could be suspended is neither supported nor relevant.

At trial, we will demonstrate that plaintiff knew about the ONRC Action lawsuit. See Section VI(A), supra. All three contracts all contained CT6.01, the provision that expressly allows the Forest Service to suspend contracts to comply with a court order. The Forest Service had no duty to inform plaintiff about internal assessments or negotiations related to the ONRC Action litigation.

CONCLUSION

At trial, plaintiff will be unable to prove that the Forest Service committed any breach of any contractual duty owed to plaintiff, and consequently, plaintiff will be unable to establish any entitlement to monetary damages.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Deputy Director

OF COUNSEL:

/s/ Joan M. Stentiford
JOAN M. STENTIFORD
ELLEN M. LYNCH
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 353-7994
Attorneys for Defendant

Marcus R. Wah
Rebecca Harrison
Ben Hartman
Office of the General Counsel
United States Department of Agriculture

May 30, 2008

Certificate of Filing

I hereby certify that on this 2nd day of May, 2008, a copy of "Defendant's Response to Plaintiffs' Cross-Motion For Summary Judgment" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Joan M Stentiford
JOAN M. STENTIFORD