**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| SCOTT TIMBER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-708C<br>(Judge Lettow) |

**PLAINTIFF'S MOTION *IN LIMINE***

In accordance with the Court's Order of May 28, 2008, plaintiff Scott Timber Company ("Scott Timber") respectfully submits this motion in limine and asks the Court to issue an order precluding defendant from offering at trial (1) any expert witness testimony, (2) any evidence in support of any affirmative defense, and (3) any evidence of claimed involvement by the "timber industry" in drafting Forest Service timber sale contract language.

A motion in limine "'enables a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.'" INSLAW, Inc. v. United States, 35 Fed. Cl. 295, 302-03 (1996) (quoting Baskett v. United States, 2 Cl. Ct. 356, 367-68 (1983)). Here, plaintiff seeks to ensure that the upcoming trial is not encumbered by defendant's attempts to introduce expert testimony unallowable under the Court's rules, evidence of affirmative defenses which defendant has abandoned and patently irrelevant evidence. Granting plaintiff's motion will "filter[] out irrelevant evidence and . . .

'simplify[ the] issues for trial,'" id., thereby promoting an "expeditious, just, fair and inexpensive trial on the issue in dispute." Baskett, 2 Cl. Ct. at 367.

## I. Defendant Cannot Introduce Expert Testimony At Trial Because It Has Not Complied With RCFC 26(a)(2)

Defendant's trial witness list identifies several witnesses who have biological or other scientific or technical degrees. Those witnesses include John R. Hickenbottom (a practicing biologist with a B.S. in wildlife ecology, previously the Threatened, Endangered, and Sensitive Species Manager for the Forest Service and now a District Ranger); Tom Hussey (currently the Policy Planner on the Resource Planning and Monitoring staff for Forest Service Region 6 who holds a B.S. and M.S. in forestry); Cheryl McCaffrey (former BLM botanist with both a B.S. and M.S. in botany); Larry Larsen (a former BLM state silviculturalist with a B.S. in forestry and a M.S. in silviculture); Steven R. Nelson (currently the Forest Service's contracting officer for the Umpqua National Forest and former Forest Service biological scientist with a B.S. in forest management); Jeff Bohler (identified on defendant's witness list as "a Wildlife Biologist working on the Diamond Lake Ranger District of the Umpqua") and Richard Helliwell (identified on defendant's witness list as "a Forest Botanist working in the Diamond Lake Ranger District of the Umpqua National Forest").

Although defendant's descriptions of the proposed testimony of these witnesses do not state that they will offer expert opinions, defendant's descriptions of the proposed testimony indicate that these witnesses will be discussing various activities that took place regarding surveys for wildlife and plants under the Northwest Forest Plan ("NFP"), protocols for such

surveys, and facts and circumstances concerning the Forest Service's interpretation and implementation of the Category 2 surveys requirements of the NFP. To the extent that this testimony is based upon personal knowledge of relevant facts and is not otherwise objectionable, plaintiff does not seek to preclude the witness' testimony at this time.

However, neither these witnesses nor any other witnesses called by defendant should be allowed to offer expert testimony because defendant has not complied with Rule 26(a)(2)(A) of the Rules of the Court of Federal Claims ("RCFC") which requires the party intending to offer expert testimony at trial to "disclose to other parties the identity of any person who may be used at trial to present evidence under Rule 702, 703 or 705 of the Federal Rules of Evidence." In addition, for each expert "retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony," the party must provide an expert report as part of its disclosure. RCFC 26(a)(2)(B). Absent a stipulation or court order, these disclosures must occur 70 days prior to the close of discovery. RCFC 26(a)(2)(C). There is no applicable stipulation or court order in this case. Defendant was therefore required to disclose to plaintiff its expert witnesses by November 30, 2007, but defendant has not identified any expert witnesses or provided plaintiff with copies of any expert witness reports. In light of the substantial number of witnesses that defendant has identified who have scientific degrees, plaintiff is concerned that defendant may attempt to elicit expert witness testimony despite its non-compliance with RCFC 26(a)(2). Accordingly, plaintiff requests an order directing defendant and its witnesses not to offer any expert testimony at trial.

## II. Defendant Has Waived Its Right To Assert Any Affirmative Defenses

Defendant may not offer at trial evidence in support of any affirmative defenses because defendant did not disclose any affirmative defense contentions as required by Appendix A, paragraph 13 of the Court's Rules, which requires a party to "[d]isclose to opposing counsel all contentions as to applicable facts and law" "no later than 63 days before the pretrial conference." During the telephonic conference between counsel for the parties required by Appendix A, paragraph 13(c) held on April 21, 2008, counsel for plaintiff reminded counsel for defendant that she had yet to submit defendant's contentions as to applicable facts and law. In response, counsel for defendant expressly stated that defendant would not argue the affirmative defenses of assumption of the risk or accord and satisfaction. Counsel for defendant further stated that she would provide plaintiff with a written statement of defendant's contentions of fact and law by April 28, 2008. See Joint Certification, Docket No. 43 ¶ 6.

Defendant's written confirmation of its contentions of fact and law do not identify any affirmative defenses as part of defendant's contentions. Exhibit A. Moreover, defendant's Memorandum of Contentions of Fact and Law, filed with the Court, does not include any discussion of any affirmative defense. Defendant has clearly manifested its intent not to argue any affirmative defenses, including any affirmative defense that Scott Timber assumed the risk that its sales would be suspended because of the ONRC Action litigation and the Forest Service need to conduct Category 2 species surveys. Accordingly, to avoid prejudicing Scott Timber should defendant later attempt to assert that any affirmative defense was actually tried, plaintiff requests an order prohibiting defendant from offering any evidence regarding the affirmative defense of assumption of the risk, or any other affirmative defense.

## III. Evidence Of Claimed "Timber Industry" Involvement In The Drafting Of Forest Service Timber Sale Contract Language Is Not Relevant

Defendant has given notice that it intends to offer the testimony of Richard Fitzgerald and to introduce documents purporting to show "the integral role played by the timber industry in drafting these [plaintiff's] timber sale contracts, including CT6.01."[1] Defendant's Memorandum of Contentions of Law and Fact ("Def. Mem.") at 19; Defendant's Witness List at 3 (¶ 3). This evidence is irrelevant to the issues in this case and has no bearing on the proper interpretation of the provisions in clause CT6.01 contained in plaintiffs' Pigout, Whitebird and Jigsaw timber sale contracts which purport to limit the government's liability in the circumstances of this case.

Although defendant references involvement by the "timber industry" including alleged "negotiations with the timber industry" regarding the drafting of Forest Service timber sale contract language, Def. Mem. at 19, defendant offers no evidence that Scott Timber, or its parent company Roseburg Forest Products, authorized any "timber industry" groups to represent it in submitting comments on Forest Service proposed contract language, much less engage in any so-called negotiations. Without proof of any such agency relationship, there is absolutely no connection between the plaintiff in this case and a generalized and undefined "timber industry."

[1]Defendant has proposed 20 trial exhibits whose sole purpose is purportedly to show the timber industry's "negotiation" of the Pigout, Whitebird, and Jigsaw contracts on behalf of Scott. Def. Exs. 4-23. These documents cover a span of 30 years, from March 19, 1971 to March 29, 2001.

In addition, even if defendant had offered to introduce evidence that Scott Timber during a relevant time period was a member of a timber industry association or group which submitted comments on Forest Service proposed standard contract language, including clause CT6.01, such activities would not constitute contract negotiations. A timber industry group's submitting comments and engaging in discussions with agency personnel regarding Forest Service proposals for standard contract language is no different from various industry groups or individual companies submitting comments to the FAR Council about proposed changes in standard federal procurement contract language. In such instances there is no offer and acceptance or consideration, and obviously no contract being negotiated.

Defendant does not and cannot deny that the three Forest Service timber sale contracts which are the subject of this action were presented to Scott Timber by the Forest Service on a take-it-or-leave-it basis. In particular, clause CT6.01 together with all of the other standard clauses in these timber sale contracts were unilaterally selected by the Forest Service for inclusion in plaintiff's contracts without any consultation with plaintiff. Prior case law involving Forest Service timber sale contracts has uniformly recognized that such contracts are offered to the public for bidding on a take-it-or-leave-it basis. Everett Plywood Corp. v. United States, 651 F.3d 723, 730 (Ct. Cl. 1981) ("bidders had to accept the contract terms the government wrote into the invitation [for bids], only the price being open for the bidder to specify"); Seaboard Lumber Co. v. United States, 48 Fed. Cl. 814, 816 (2001) ("Interested parties are invited to bid based on the information provided in the prospectus and the bidder's own examination of the site. The terms laid out in the prospectus are not open to negotiations"); Seaboard Lumber Co. v. United States, 41 Fed. Cl. 401, 408 (1998) ("contract terms laid out in the prospectus and those

in the final contract are not open to negotiation"); Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35, 66 (2001).[2] Plaintiff's Forest Service timber sale contracts are not negotiated contracts, and defendant cannot transform them into negotiated contracts by offering discursive evidence or comments submitted by "timber industry" groups on various Forest Service proposals regarding its standard contract language over the years. Such evidence is simply not relevant to the issues in this case.

Plaintiff also objects to the proposed breadth and generality of defendant's purported evidence that the "timber industry" assisted in "drafting these [plaintiff's] timber sale contracts." Def. Mem. at 19. Defendant has indicated that it plans to offer evidence of activities "[o]ver the last 30 years" involving timber industry comments on various aspects of the Forest Service timber sale contract other than those directed to clause CT6.01. Id. Defendant relies on specific language in clause CT6.01 to attempt to severely limit its liability to plaintiff for alleged breach of contract. Assuming arguendo that comments offered by "timber industry" groups have any relevance, any comments and interactions between the "timber industry" and the Forest Service involving matters other than clause CT6.01 are clearly irrelevant and should be excluded. Defendant's intention to offer evidence over a 30-year period is also irrelevant. Clause CT6.01

[2]Defendant cites Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1565-66 (Fed. Cir. 1990), for the proposition that contracts offered on a take-it-or-leave-it basis are not automatically adhesion contracts. Def. Mem. at 19. Seaboard had argued that its waiver of the right to have the government establish its breach claim in an Article III court before a jury was not voluntary because government contracts are inherently adhesion contracts. The Federal Circuit rejected Seaboard's argument: "The bare fact that the contracts in question are 'take it or leave it' offers by the government is not controlling on the dispute resolution provisions' validity, as we read the precedent." Seaboard Lumber did not reject or even discuss the proposition that a Forest Service timber sale contract should be construed narrowly against the government as the drafter of the contract. Seaboard Lumber held only that the contractual waiver of a trial before an Article III court was fully enforceable.

in each of plaintiff's contracts was promulgated in October 1996 (as indicated in the formal title of the clause – CT6.01 (Oct. 1996)) and therefore any purported "timber industry" comments, alleged negotiations or interaction regarding clause CT6.01 after October 1996 are irrelevant. In the alternative, at a minimum, any evidence of such activities occurring after July 8, 1999, the award date of plaintiff's three contracts, is irrelevant to the issues in this case.[3]

## IV. Conclusion

For the foregoing reasons plaintiff respectfully requests that the Court grant this motion in limine and issue an order that prohibits defendant from offering at trial any expert testimony and any evidence in support of any affirmative defenses. Regarding any attempt by defendant to introduce evidence of so-called "timber industry" assistance in drafting plaintiff's timber sale contracts, plaintiff requests that the Court issue an order excluding any such evidence because defendant has not indicated that it will offer any proof that such activities were authorized to be conducted on behalf of plaintiff Scott Timber and because comments or discussions with trade associations regarding the development of standard contract language do not constitute negotiation of a contract or in any way establish that the Forest Service offered the contracts to plaintiff on other than a take-it-or-leave-it basis. In the alternative, plaintiff requests that the Court issue an order which directs defendant to limit any offer of evidence about so-called "timber industry" group involvement regarding the development of any timber sale contract language to clause CT6.01. Plaintiff further requests that the order preclude defendant from offering evidence of any kind regarding alleged "timber industry" involvement in the

[3]Plaintiff expressly reserves the right to raise additional objections to defendant's proffered testimony and evidence regarding clause CT6.01 at trial.

development of Forest Service timber sale contract language after the issue date of clause CT6.01 included in plaintiff's contracts, i.e. October 1996, or, at a minimum, after the award of plaintiff's contracts, July 8, 1999.

Respectfully submitted,

s/Gary G. Stevens
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Ruth G. Tiger
Eric J. Pohlner
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: June 10, 2008