IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SCOTT TIMBER CO., Plaintiff, v. THE UNITED STATES, Defendant. | ) ) ) ) ) ) ) ) ) ) | No. 05-708C (Judge Lettow) |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER ADMITTING CERTAIN DEPOSITION TRANSCRIPTS, ACCOMPANYING DEPOSITION EXHIBITS AND ANSWERS TO INTERROGATORIES AS PARTY ADMISSIONS**

I. Plaintiff Has Satisfied The Requirements Of FRE 801(d)(2) For The Admission Of The Designated Portions Of The Testimony Of Susan Zike And Edward (Ted) Boling As Admissions Of Party-Opponent

Although defendant's position is not entirely clear, it appears that defendant acknowledges that some unspecified portion of the deposition testimony designated by Scott Timber Company ("Scott") is admissible under Federal Rule of Evidence ("FRE") 801(d)(2)(D). See Def. Opp. at 4 ("some of Scott's designations provide information concerning the designees' respective positions and the scope of their employment at the time"). Defendant claims, however, that Scott has failed to make the showing necessary for admission of all of the designated deposition testimony as substantive evidence at trial. Id. Defendant is wrong. Scott has made the necessary showing.

A. Scott Has Satisfied The Requirements Of FRE 801(d)(2) With Respect To The Designated Deposition Testimony Of Susan Zike

It is undisputed that Susan Zike is and was employed at the time of her deposition as the Litigation Coordinator for Forest Service Region 6. Ms. Zike has served in this position since 1991. Docket 51-5 at 4[1] (Zike 1/4/07 Tr. at 6:23-25). In her capacity as the Litigation Coordinator, Ms. Zike was responsible for and had significant involvement in gathering and communicating information regarding particular timber sales on ONRC Action's "at-risk" lists, preparing analyses of the "at-risk" sales, working with other Forest Service personnel and Department of Justice personnel to formulate the government's position regarding whether or not to award particular "at-risk" timber sales, and providing information to and receiving information from the Department of Justice regarding the "at-risk" timber sales and the ONRC Action litigation. See Motion at 4-5; Docket 51-3 at 48; Docket 51-4 at 14, 16-18, 26-29; Docket 51-5 at 4 (Zike 1/4/07 Tr. 6:23-25); Def. Opp. Ex. B at 9 (Zike 8/20/07 Tr. 6:1-7); Exhibit A (October 14, 2005 Declaration of Susan M. Zike submitted to the Court as part of Docket No. 127 in Blue Lake Forest Products, Inc. v. United States (CoFC No. 01-570C)); see also Blue Lake Forest Products, Inc. v. United States, 75 Fed. Cl. 779, 795-96 n.30 & accompanying text (2007) (Ms. Zike's duties as Litigation Coordinator included regularly conferring with agency and trial counsel, disseminating and gathering information, explaining information to non-attorney Forest Service personnel, and preparing evaluations of legal challenges resulting from lawsuits against the Forest Service). Plainly, the subjects about which

[1]All docket 51 references are to the attachments to plaintiff's motion. Attachment 1 is Docket 51-5; Attachment 2 is Docket 51-2 and 51-6; Attachment 3 is Docket 51-3 and 51-4; Attachment 4 is Docket 51-7.

Ms. Zike testified were within the scope of her duties as the Forest Service Region 6 Litigation Coordinator.

Yet, without any support whatsoever, defendant contends that Ms. Zike's admissions regarding the subjects discussed in her designated deposition testimony are inadmissible under FRE 801(d)(2) because somehow some unspecified portions of the designated deposition testimony were not about subjects within the scope of her employment as the Litigation Coordinator for Forest Service Region 6. According to defendant, because Ms. Zike does not decide the agency's litigation position, decide when the Forest Service will offer a particular timber sale, or make legal decisions for the agency, unspecified portions of her designated testimony concerning these subjects is not admissible under FRE 801(d)(2). Def. Opp. at 4.[2] As part of her duties, Ms. Zike gathered and provided input and analysis that was used by Forest Service and Department of Justice decision makers to formulate the government's legal decisions and litigation position and to decide when the Forest Service would offer and award particular "at-risk" timber sale contracts including the three sales at issue in this case. Without the information and analysis provided by Ms. Zike, the formal decision makers would have had no basis on which to make any decisions. That the government bureaucracy reserves formal decisionmaking authority to only certain individuals does not render Ms. Zike's admissions about subjects clearly within her duties and responsibilities as Litigation Coordinator outside the scope of non-hearsay admissions of party-opponent admissible under FRE 801(d)(2)(D).

---

[2]Defendant appears to conflate the authorized admissions requirements for admissibility under FRE 801(d)(2)(C) with the agent's admissions standards of FRE 801(d)(20(D). Plaintiff seeks the admission of Ms. Zike's statements under FRE 801(d)(2)(D). See Def. Motion at 3-4.

Scott has demonstrated that all of Ms. Zike's designated deposition testimony was made by a party-opponent, that the subject matter of the designated testimony was plainly within the scope of Ms. Zike's employment as the Litigation Coordinator for Forest Service Region 6, and that Ms. Zike was employed by the government at all relevant times. The Court should admit the designated portions of Ms. Zike's deposition testimony under FRE 801(d)(2)(D).

B. Scott Has Satisfied The Requirements Of FRE 801(d)(2) With Respect To The Designated Deposition Testimony Of Edward (Ted) Boling

It is undisputed that Edward (Ted) Boling was lead counsel for the government in the ONRC Action litigation and that he was still employed by the United States at the time of his deposition. Defendant does not contend that Mr. Boling's admissions were beyond the scope of his employment but contends only that his admissions regarding the legal sufficiency of the Forest Service's interpretation of the Northwest Forest Plan ("NFP") should not be admissible as admissions by party-opponent because "the sufficiency of the Forest Service's interpretation of the Northwest Forest Plan is the ultimate legal issue in this case. . . ." Def. Opp. at 5.[3] Defendant cites no authority for its contention in this regard and there is no legitimate basis for defendant's objection.

The ultimate legal issue in this case is whether the government breached Scott's contracts. To establish breach, plaintiff will demonstrate, among other things, that the government knew or should have known that its interpretation of the Category 2 survey requirements of the NFP was unreasonable when it decided to award the contracts to Scott. Scott

[3]Defendant does not otherwise object to the admission of the designated portions of Mr. Boling's deposition testimony as admissions of party-opponent under FRE 801(d)(2).

will establish the unreasonableness of the government's conduct based in part on information the Forest Service received from Mr. Boling and opinions he expressed to the agency. Because defendant waived the attorney-client privilege and work product protection with respect to the government's interpretation of the NFP and decision to award the timber sale contracts despite developments in ONRC Action, Blue Lake, 75 Fed. Cl. at 798-99, Mr. Boling's testimony and writings regarding these subjects are properly admissible as government admissions under FRE 801(d)(2).

Scott has demonstrated that Mr. Boling's statements were made by a party-opponent, that the subject matter of the designated testimony was within the scope of Mr. Boling's employment, and that Mr. Boling was employed by the government at all relevant times. The Court should admit the designated portions of Mr. Boling's deposition testimony as admissions of party-opponent under FRE 801(d)(2)(D).

C. Deposition Exhibits About Which Ms. Zike And Mr. Boling Testified

Much of the designated deposition testimony of Ms. Zike and Mr. Boling consists of testimony about documents. In order for the testimony to make any sense, the documents about which Ms. Zike and Mr. Boling were testifying need to be admitted along with the designated testimony. Some of the documents discussed during the depositions were sent by ONRC Action counsel to the government and the government was responding or considering how to respond to those documents. Obviously, Scott does not seek to admit the documents prepared by ONRC Action counsel as admissions by the government for the truth of the substance of those documents, defendant's contention to the contrary notwithstanding. As to such third-party

correspondence, plaintiff only seeks admissions as to what Ms. Zike or Mr. Boling said about that correspondence; for example, admissions that the Forest Service had knowledge of ONRC Action's "at-risk" sales lists and specific concerns or that the Forest Service took certain actions in response to ONRC Action's correspondence.[4]

With respect to the documents authored by Ms. Zike or Mr. Boling and some of the documents prepared by other government employees that were attached to those documents, however, plaintiff does seek the admission of these documents as non-hearsay admissions for all of the same reasons Scott seeks the admission of the associated designated deposition testimony. As discussed above, these documents are admissible as non-hearsay under FRE 801(d)(2)(D) because they were prepared by a party-opponent, the subject matter of the documents was plainly

[4]Defendant's briefly stated suggestion that the government's internal assessments of the matters raised by ONRC Action are inadmissible under FRE 408 (Def. Opp. at 5) is without merit. First, FRE 408 calls for exclusion only of "furnishing or offering or promising to furnish– or accepting or offering or promising to accept–a valuable consideration in compromising or attempting to compromise the claim" and "conduct or statements made in compromise negotiations regarding the claim." FRE 408(a). Internal government discussions of settlement or settlement strategy, internal advice or recommendations regarding settlement or evaluations of the government's or ONRC Action's positions regarding settlement are not prohibited from use at trial under FRE 408(a). Normally, of course, such evidence would be subject to the attorney-client privilege or work product but these protections have been waived and the documents themselves and associated testimony have been fully disclosed to plaintiff. See Blue Lake, 75 Fed. Cl. at 798-99. Second, FRE 408(a) excludes only evidence offered to prove liability for the claim which is the subject of settlement negotiations. Scott offers its evidence not to prove ONRC Action's claims but to prove that the Forest Service breached Scott's contracts, a different claim. Third, FRE 408(a) does not bar evidence when it is used to prove notice. In the instant action, in addition to proof of liability for breach of contract, Scott also offers the documents and associated deposition testimony as admissions of what the Forest Service knew and when it knew it with regard to the risk it assumed in awarding the timber sale contracts to Scott and thereby authorizing ground-disturbing activities without having conducted the Category 2 surveys required by the NFP. The use of this evidence is permitted under FRE 408(b). Plaintiff's Opposition to Defendant's Second Motion In Limine due to be filed June 16, 2008 will contain a more detailed response to defendant's FRE 408 arguments.

within the scope of the author's employment with the government, and both Ms. Zike and Mr. Boling were employed by the government at all relevant times.[5]

To the extent that the exhibits incorporate or attach correspondence from ONRC Action counsel or other third parties, plaintiff seeks their admission only as an aid to understanding the related deposition testimony and writings by the government. On the other hand, to the extent that the documents incorporate government correspondence but were not authored by Ms. Zike or Mr. Boling, plaintiff seeks their admission as adoptive admissions under FRE 801(d)(2)(B). To be clear, Scott seeks to have only the following documents admitted as non-hearsay admissions under FRE 801(d)(2):

Authored or adopted by Mr. Boling:

Tr. Ex. 51 (Dep. Ex. 24A) (Docket 51-3 at 4-6)
Tr. Ex. 53 (Dep. Ex. 35A) (attachment 1) (Docket 51-3 at 8-9)
Tr. Ex. 65 (Dep. Ex. 30) (page A-372) (Docket 51-3 at 22)
Tr. Ex. 90 (Dep. Ex. 126) (Docket 51-4 at 7-11)
Tr. Ex. 96 (Dep. Ex. 59) (Docket 51-4 at 19-20)

Authored or adopted by Ms. Zike:

Tr. Ex. 53 (Dep. Ex. 35A) (cover note and attachment 2) (Docket 51-3 at 7, 10-13)
Tr. Ex. 59 (1/4/07 Dep. Ex. 35) (Docket 51-3 at 21)
Tr. Ex. 75 (8/30/07 Dep. Ex. 35) (Docket 51-3 at 47-48); (Dep. Ex. 38) (Docket 51-3 at 49-51)
Tr. Ex. 82 (Dep. Ex. 42) (Docket 51-3 at 52-53)
Tr. Ex. 86 (Dep. Ex. 45) (page TAB92212) (Docket 51-4 at 1)
Tr. Ex. 91 (Dep. Ex. 52) (Docket 51-4 at 12-14)
Tr. Ex. 95 (Dep. Ex. 56) (Docket 51-4 at 15-16)
Tr. Ex. 96 (Dep. Ex. 59) (Docket 51-4 at 17-18)
Tr. Ex. 101 (Dep. Ex. 75) (Docket 51-4 at 21-25)

---

[5]Defendant asserts in passing that the documents prepared by Mr. Boling were beyond the scope of his employment but does not articulate any basis for this contention. See Def. Opp. at 7. The documents were plainly within the scope of Mr. Boling's employment as lead counsel for the government in ONRC Action.

Tr. Ex. 119 (Dep. Ex. 41D) (Docket 51-4 at 26)
Tr. Ex. 121 (Dep. Ex. 83) (Docket 51-4 at 27-28); (Dep. Ex. 82B) (Docket 51-4 at 29)
Tr. Ex. 129 (Dep. Ex. 90) (Docket 51-4 at 33-44)
Tr. Ex. 141 (Dep. Ex. 91) (Docket 51-4 at 45-46)
Tr. Ex. 142 (Dep. Ex. 91A) (Docket 51-4 at 47)
Tr. Ex. 146 (Dep. Ex. 98C) (Docket 51-4 at 48-50)

## II. Defendant Does Not Dispute That The Government's Answers To Interrogatories Are Admissions By A Party-Opponent That May Be Used As Substantive Evidence At Trial

Defendant does not object to the portion of plaintiff's motion which seeks to admit several of the government's answers to Scott's interrogatories as substantive evidence for use at trial because they are admissions of party-opponent. Accordingly, we respectfully request that the Court grant this portion of plaintiff's motion and admit the government's answers to Scott's interrogatory nos. 2, 3, 4, 6, 7, 8, 11, 12, 13, 15, 19, 20 and 21 as admissions by party-opponent under FRE 801(d)(2). These interrogatory answers are included in Plaintiff's Trial Exhibit No. 172.

## III. The Government's Index Of Documents Produced In Response To Plaintiff's Discovery Also Constitutes An Admission By Party-Opponent That May Be Used As Substantive Evidence At Trial

With respect to the index of documents included by defendant as part of its reply to Scott's request for production of documents, defendant objects on the grounds that it provided the index as a "courtesy," the index is not a summary within the meaning of FRE 1006, there are over 13,000 pages of documents identified on the index, and Scott has not attempted to establish the admissibility of each document. Def. Motion at 7-8.

Scott seeks admission of the index only insofar as it contains defendant's descriptions of the documents that have now been designated as plaintiff's trial exhibits, including defendant's representation of the author and recipient and the interrogatory to which the document is responsive, and the government folder from which the document originated. In this sense, the document index is no different than defendant's answers to Scott's interrogatories. Indeed, the index was included by defendant with its response to Scott's interrogatories and submitted to Scott under the signature of defendant's counsel of record in this action. Docket 51-7 at 22 ("Responsive, non-privileged documents, which are organized by interrogatory response number in the attached EXCEL spreadsheet, have been produced along with these responses.") Scott seeks to have the index admitted for what it is – defendant's description of the documents, the files from which the documents originated, and the interrogatory to which the document is responsive – not as some sort of representation of the truth of the matters asserted in each of the documents identified on the index.

We recognize that the index describes many more documents than may be necessary for the trial in this matter. Consequently, plaintiff has now excerpted from defendant's index only those entries which relate to the documents that plaintiff has designated as trial exhibits. Plaintiff offers only these entries as party admissions. This significantly reduces the need for the Court and the parties to have to wade through the portions of the index that do not relate to documents being used at trial. Attached to this Reply as Exhibit B is a document which excerpts the information contained in defendant's index to include only the documents which plaintiff has

designated as trial exhibits and to indicate the corresponding plaintiff's trial exhibit number.[6] If the Court grants plaintiff's motion for party-opponent admissions with respect to defendant's index, then, as an alternative to the admission of defendant's complete index, plaintiff offers this excerpt in lieu of the original to be included in Plaintiff's Trial Exhibit No. 172.

CONCLUSION

Plaintiff respectfully requests that the Court grant its motion and admit the designated deposition transcripts and accompanying deposition exhibits, the designated answers to interrogatories, and the index to defendant's response to Scott's document requests either in its original form or in the attached excerpted form under FRE 801(d)(2).

Respectfully submitted,

s/Gary G. Stevens
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:
Ruth G. Tiger:
Eric J. Pohlner
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: June 13, 2008

[6]Plaintiff utilized the EXCEL spreadsheet provided by defendant to reformat the document. Plaintiff incorporated its trial exhibit numbers and reformatted the portion of the document which shows the interrogatory/interrogatories to which each document is responsive. The latter was done in order to enlarge the font size and make the document more easily readable.

# EXHIBIT A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLUE LAKE FOREST PRODUCTS, INC.,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | ) | No. 01-570C<br>Judge Williams |
| TIMBER PRODUCTS COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | ) | No. 01-627C<br>Judge Williams |
| CLR TIMBER HOLDINGS, INC.,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | ) | No. 04B501C<br>Judge Williams |

**DECLARATION OF SUSAN M. ZIKE**

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1. My name is Susan M. Zike. I am currently employed as the Litigation Coordinator for the Pacific Northwest Region (Region 6) of the United States Forest

Service, stationed in Portland, Oregon. I have held this position since 1991. I worked for the Forest Service between 1975 and 1989, when I resigned to accept other employment. I returned to the Forest Service in 1991 in my present position. My official position title is "Regional Litigation and Freedom of Information Act Coordinator." My official position description was reclassified from a General Schedule (GS) grade 12 to GS grade 13 in February 2000 due to knowledge required to perform the duties and is attached hereto.

2. I have reviewed the Court's October 11, 2005 order in the above-captioned case. I am submitting this declaration to provide information to the Court about my work as a Litigation Coordinator for Region 6 on the lawsuit captioned Oregon Natural Resources Council v. United States (the "ONRC Action").

3. In general, my primary duties as a Litigation Coordinator consist of acting as a liaison between the United States Department of Justice, the United States Attorney's Offices for Oregon and Washington, the United States Department of Agriculture ("USDA") Office of the General Counsel (Portland, San Francisco and Washington, D.C.), and multiple Forest Service offices, in connection with lawsuits filed against the Forest Service in Region 6. I also support and assist the foregoing agencies in the conduct of litigation in the Region. For some lawsuits, I have coordinated case management with the Pacific Southwest Region (Region 5) of the Forest Service, United States Department of Interior ("USDI") Bureau of Land Management ("BLM"), USDI Fish and Wildlife Service and the Department of Commerce National Marine Fisheries Service and their respective agency counsel.

4. In my capacity as Litigation Coordinator, I regularly confer with agency and trial counsel upon litigation matters and then disseminate their advice and recommendations to Forest Service personnel. I also work with Forest Service staff to respond to requests for information from such counsel, including preparation of litigation reports, responses to discovery, and responses to other inquiries that arise in litigation. On some occasions, I transmit the foregoing information to counsel under a cover document containing my explanation of the information and/or my recommendations for its use. As a Litigation Coordinator, I also perform case management activities, which primarily involve providing information to Forest Service officials, such as forest supervisors, directors, and regional foresters, about potential or current litigation, legal strategies, and case assessments.

5. I recall that I began working on the ONRC Action shortly after the lawsuit was filed. During an early case assessment telephone call for the ONRC Action, held approximately mid-July 1998, the Region 5 and Region 6 Regional Foresters designated me as the primary Forest Service contact in the field for the Department of Justice. The Oregon State Director for the BLM also requested that I work with BLM to facilitate and coordinate communications between that agency, the Forest Service, and the Department of Justice. Additionally, I was responsible for informing the Office of the Chief of the Forest Service about the ongoing status of the ONRC Action.

6. In the initial phase of the ONRC Action, I participated in the development of Forest Service and BLM responses to the legal issues raised in the complaint, which included having discussions with various Forest Service, BLM and Regional Ecosystem

Office ("REO") personnel regarding the Government's response and preparing the litigation report for the Department of Justice. As the litigation proceeded, I regularly developed briefing papers for case management meetings, which generally were attended by the Regional Foresters and their staff, the Chief's Office and staff, the BLM Oregon State Director and her staff, the REO and staff, and agency and trial counsel. In these briefing papers, I sometimes assessed Department of Justice and agency counsel thinking regarding the implications and risks of taking certain legal positions and made recommendations for a course of action.

9. During the course of the litigation, both Regional Foresters and members of their staff consulted with me on the status of the case and related policy direction for purposes of making sale offerings and awards.

10. In later stages of the litigation, my paralegal assistant and I collected vast amounts of information concerning timber sales in Regions 5 and 6, including dates of environmental analysis, the identity of persons who filed administrative appeals of the sale decisions and the issues raised in those appeals, the identity of purchasers, and the status of harvesting operations. I compiled, processed, and transmitted this information to the Department of Justice and agency counsel in response to their requests for information. I also assisted and participated in agency preparations for settlement discussions.

11. I received a Juris Doctorate degree from Northwestern School of Law, Lewis and Clark College, Portland, Oregon, in 1990. The Supreme Court of Oregon

admitted me to the Oregon State Bar ("OSB") on July 25, 1991. I remained an active member of OSB until 2004, when I converted my membership to "Inactive."

I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Dated this 14th day of October 2005

Susan M. Zike

FS-6100-13 (7/79)

| U.S. Department of Agriculture<br>Forest Service<br><br>POSITION DESCRIPTION CORRECTION NOTICE<br>(Instructions enclosed and reference FSH 6109.15) | (1) Unit (Region/Station/Area/Nat'l Forest/WO & Specify Staff Area<br>R6-SP<br>(2) Position Number<br>~~61092~~ 63310 |
|---|---|

(3) Position Title, Series, and Grade
Paralegal Specialist GS-950-13

(4) Name of Incumbent (Last, First, & Middle Initial)
Zike, Susan M.

(5) Organizational Structure Codes

| | 1st | 2nd | 3rd | 4th | 5th | 6th | 7th | 8th | |
|---|---|---|---|---|---|---|---|---|---|
| Present | | | | | | | | | |
| Change To | ////////////// | ////////////// | | | | | | | |

(6) Duty Station

| | City Name | State Name | State Code | City Code | County Code |
|---|---|---|---|---|---|
| Present | | | | | |
| Change To | | | | | |

(7) Organizational Structure Names

| Level | Present | Change To |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

| (8) Supervisor CHANGE -----> | Position Title and Number | Position Title and Number |
|---|---|---|
| | Jim Schuler, Forester, x 61/20500 | Lisa Freedman, Director, |

(9) Narrative (Enter changes in narrative portion of the description or where narrative is to be amended). Use this block to amend an AD-332 item not listed above.

| Supervisor's Name | Supervisor's Title | Supervisor's Signature | Date |
|---|---|---|---|
| Lisa E Freedman | Director, Strategic Plng | Lisa E Freedman | 1/12/00 |

| Classifier's Name | Classifier's Signature | Date |
|---|---|---|
| Dorothy J. Richard | | 2/4/00 |

UNIT CLASSIFICATION FILES (ATTACH TO AD-332)

# POSITION DESCRIPTION COVER SHEET

REASON FOR THIS POSITION

| 1. NEW | 2. IDENTICAL ADDITION TO THE ESTABLISHED PD NUMBER | REPLACES PD NUMBER |
|---|---|---|
| | | X 61092 2355 |

RECOMMENDED

| TITLE | 5. PAY PLAN | 6. SERIES | 7. GRADE |
|---|---|---|---|
| Paralegal Specialist | GS | 950 | 13 |

WORKING TITLE (Optional)

9. INCUMBENT (Optional): Zike Koch, Susan M

OFFICIAL

10. TITLE: Paralegal Specialist

| 11. PP | 12. SERIES | 13. FUNC | 14. GRADE | 15. DATE MONTH | DAY | YEAR | 16. I/A | 17. CLASSIFIER |
|---|---|---|---|---|---|---|---|---|
| GS | 950 | | 13 | 7 | 16 | 96 | Yes [ ] No [✓] | A |

18. ORGANIZATIONAL STRUCTURE (Agency/Bureau)

| | |
|---|---|
| 1st FS | 5th |
| 2nd R6 | 6th |
| 3rd DRF, Res. | 7th |
| 4th SP | 8th |

SUPERVISOR'S CERTIFICATION

I certify that this is an accurate statement of the major duties and responsibilities of the position and its organizational relationships and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds and that false or misleading statements may constitute violations of such statute or their implementing regulations.

| 19. SUPERVISOR'S SIGNATURE | 20. DATE | 22. SECOND LEVEL SUPERVISOR'S SIGNATURE | 23. DATE |
|---|---|---|---|
| [signature] | 7/16/96 | [signature] | 7-16-96 |

| 21. SUPERVISOR'S NAME AND TITLE | 24. SECOND LEVEL SUPERVISOR'S NAME AND TITLE |
|---|---|
| James L. Scholer (Forester) Reg. Appeals Coord. | Arnold G. Holden Deputy Director, SP |

FACTOR EVALUATION SYSTEM

| FACTOR | 25. FLD/BMK | 26. POINTS | FACTOR | 25. FLD/BMK | 26. POINTS |
|---|---|---|---|---|---|
| 1. Knowledge Required | FL 1-8 * | 1550 | 6. Personal Contacts | FL 6-3 | 60 |
| 2. Supervisory Controls | FL 2-4 | 450 | 7. Purpose of Contacts | FL 7-3 | 120 |
| 3. Guidelines | FL 3-4 | 450 | 8. Physical Demands | FL 8-1 | 5 |
| 4. Complexity | FL 4-5 | 325 | 9. Work Environment | FL 9-1 | 5 |
| 5. Scope and Effect | FL 5-4 | 225 | 27. TOTAL POINTS ▸ | | 3190 |
| | | | 28. GRADE ▸ | | 13 |

CLASSIFICATION CERTIFICATION

CLASSIFICATION FILE COPY

I certify that this position has been classified as required by Title 5, U.S. Code, in conformance with standards published by the OPM or if no published standard applies directly, consistently with the most applicable published standards.

| 29. SIGNATURE | 30. DATE |
|---|---|
| Al Anderson | 7/16/96 |

31. NAME AND TITLE: AL ANDERSON, Classification Delegate

| 32. REMARKS | 33. OPM CERTIFICATION NUMBER |
|---|---|
| * GS-950 std used for grading purposes. Factor 1 extended to level 1-8 thru cross-comparison to GS-460 std. POSITION Limited to Incumbent Only. | |

1986– 623-500/00351

FORM AD - 332 (Reverse) (4/86)

**Paralegal Specialist**
**GS-0950-13**

**Introduction.**

This position is located in the Pacific Northwest Region, Region 6, Regional Office, Planning and Environmental Staff Unit. Incumbent serves as the Regional Litigation and FOIA Coordinator responsible for preparing Regional evaluations to legal challenges resulting from lawsuits against the Agency; and managing the Regional FOIA program.

**Major Duties.**

**Litigation: 70%**

Prepares Regional positions on legal challenges to agency decisions related to lawsuits in land management planning activities. This involves obtaining and correlating input from program specialists in timber, recreation, lands, and minerals, range, etc., reconciling conflicting viewpoints in program areas and administrative concerns of the Regional Forester, developing coherent and integrated positions, and analyzing support material to effectively respond to challenges.

Serves as the Regional Litigation Coordinator in working with the legal staffs of the Department of Justice (DOJ), Office of General Counsel (OGC), and the U.S. Attorneys Office in structuring defense strategies in environmental lawsuits by providing advisory opinions for review and approval of Attorneys regarding litigation of land management planning activities. Develops recommendations and justifications for the Attorneys who will take the matter to court and continues to work with Attorneys during the progress of the case. Advises the legal staff of agency policies, prepares information needed to support litigation, and prepares litigation reports which involves summarizing factual information, the basis for the complaint, legal issues presented, and relevant case law. Initiates additional fact-finding by subject matter specialists as needed and prepares various pleadings.

Provides expert advice and consultation to the Director, Regional Forester, and Forest Supervisors on litigation matters, federal land management laws, FOLA information management, case status, settlement options, assessing the risk of further actions, and of the impact of agency decisions on present policies and of precedent setting decisions and ramifications of those decisions.

Evaluates the impacts of judicial opinions on Regional policies, procedures, and programs; develops recommendations based on consideration of decisions, background information, and the impacts on resource programs; advises the Region on the meaning of rulings in terms of new program proposals or directions with the objective of avoiding further legal action.

Maintains an ongoing process of networking with DOJ, OGC, U.S. Attorney's Office, and Regional Staff to assure continual communication that Regional positions are recognized,

positions remain consistent among various lawsuits, and to anticipate landmark decisions with regional and national significance.

**FOIA Specialist 15%**

Provides legal guidance on the most difficult and complicated FOIA requests received. Interprets law and policy regarding particular requests for records to assure compliance with procedural and substantive requirements. Reviews letters denying requests for information and fee waivers. Also provides assistance in understanding the Privacy Act and the Federal Advisory Committee Act.

**Supervision 10%**

Plans work to be accomplished by subordinates, sets and adjusts short-term priorities, and prepares schedules for completion of work. Assigns work to subordinates based on priorities, selective consideration of the difficulty and requirements of assignments, and the capabilities of employees. Develops performance standards and evaluates work performance of subordinates. Gives advice, counsel, or instruction to employees on both work and administrative matters. Hears and resolves minor complaints from employees. Refers group grievances and more serious unresolved complaint to a higher level supervisor or manager. Effects minor disciplinary measures such as letters of warning, caution, or admonishment, and recommends other official disciplinary actions. Interviews candidates for positions in the unit; recommends appointments, promotions, and reassignments to such positions. Identifies and provides training needs. Finds ways to improve production or increase the quality of work directed.

Provides leadership, allocates resources, and implements activities to accomplish Forest Service multi-cultural organization, direction, and Equal Opportunity and Civil Rights requirements, goals, policies, and objectives. Supports and participates in the Work Environment Continuous Improvement Process. Ensures all communication – written, oral, visual, signed – is nondiscriminatory and sensitive to all employees and publics. Creates a work environment which respects, appreciates, and accepts the contributions and perspectives of all employees.

**Training 5%**

Trains personnel on the various aspects of litigation; fact-gathering, litigation report preparation, information management, and witness reassurance.

**Factor 1. Knowledge Required by the Position.**

Comprehensive knowledge of agency policies, programs, procedures, and applicable statutes governing the use of Forest resources sufficient to prepare Regional positions to legal challenges.

Extensive knowledge of federal land management laws such as the National Environmental Policy Act, National Forest Management Act, Endangered Species Act, Administrative Procedures Act, Freedom of Information Act, Federal Advisory Committee Act, and the Privacy

Act in order to advise the Region on court interpretation of these acts and the impacts affecting programs.

Comprehensive knowledge and understanding of the principles and practices of interrelated disciplines such as forestry, wildlife, soils, hydrology, range, ecology, biology, etc., in order reconcile conflicting viewpoints to defend position and to explain natural resource matters.

Ability to perform legal analyses of environmental documents, settlement agreements, court pleadings and declarations for legal aspects, policy compliance, readability, and accuracy.

**Factor 2. Supervisory Controls**

The incumbent receives assignments on the basis of Regional program objectives, National policy and legislation, and budget limitations. Incumbent plans and organizes own program activities independently to meet and anticipate legal and agency objectives, coordinates with program specialists, resolves problems, and interprets policies and legal requirements. Selects approach to the identification and resolution of problems encountered and consults with supervisor on major unexpected or controversial problems. The analyses and recommendations are relied on as technically authoritative; the review of work is usually for agreement of overall policies and accomplishment of objectives.

**Factor 3. Guidelines**

Assignments are undertaken within the broad framework of Forest Service policies, standards, and guidelines; USDA and other applicable regulations and guidelines. The guidelines are broadly stated which requires innovative interpretations to deal with legal issues and formulate factual rationale for Regional defense. The incumbent must use originality and creativity in deviating from traditional approaches, in analyzing and resolving legal issues, and advising on appropriate courses of actions.

**Factor 4. Complexity**

The work involves a wide range of environmental, resource, and management issues that are raised in litigation lawsuits. The incumbent is responsible for analyzing and developing solutions to complex legal issues presented and interprets and applies applicable statutes, regulations, agency policy, and legal precedents to these situations. This task is complicated by the multiple and interrelated nature of the issues and the lack of clear precedent for handling them. Incumbent must identify and assess the implications and risks involved and use different ways of resolving them. Incumbent must work with a wide spectrum of resource and legal areas, must communicate among different specialist, integrate different requirements, and develop positions and agreement among different requirements, and develop positions and agreement among different interests. Efficiently manages a complicated process involving frequent administrative deadlines, the coordination of a large number and variety of people at different locations and levels of the agency, and other organizations. Prepares well written and effective litigation support documents, briefing papers, decision letters, and litigation reports.

# EXHIBIT B

**Scott Pigout #05-708C Excerpt From Defendant's Document Index To Its Response to Scott's Document Request Number 1 Describing Plaintiff's Trial Exhibits**

| Plaintiff's Exhibit # | Page No. | Folder Name | Pages | Date | Author | Recipient | Document Description | Responsive to Interogatory # |
|---|---|---|---|---|---|---|---|---|
| 41 | 00448-00453 | Litigation -D | 6 | 11/01/96 | Ed Hastey, G.Lynn Sprague, Elaine Zielinski, Robert Williams | BLM District Managers and Forest Supervisors within area of NWFP in Oregon | memo, subject: Implementation of Survey and Manage Component 2 "Survey prior to Ground Disturbing Activities" Standards and Guidelines | 10 |
| 44 | 2341-02345 | EA Peanuts Timber Sale | 5 | 06/23/97 | Don Ostby | | Decision Notice & Finding of No significant Impact for the Peanuts Timber | 2, 3, 6 |
| 45 | 07251-07252 | Wildlife, S & M | 2 | undated | | USDA Forest Supervisors | Memo: Implementation of Survey & Management Componet, Survey prior tyo Ground Disturbing Activites | 10 |
| 46 | 02012-02016 | EA Pigout Timber Sale Decision | 5 | 02/24/98 | Bernie Rios for Don Ostby | | Decision Notice & Finding of No Significant Impact for Pigout Timber Sale | 2, 3, 5, 6 |
| 47 | 01994-02003 | EA Pigout Timber Sale | 10 | 03/24/98 | Francis Eatherington | Robert Williams | Appeal of Pigout Timber Sale | 2, 3, 5, 7 |
| 53 | 00025-00038 | Litigation-SO | 14 | 08/03/98 | Sue Zike | Mike Hupp, Brenda Woodard | fax, message: attached is draft DOJ letter to plaintiffs attorney…no reason to delay award of the USFS sales....ps OGC memo is attached that DOJ based its sentence on.. | 11, 12 |
| 54 | 07765-07777 | Decision Notice | 13 | 08/24/98 | Francis Eatherington (for Umpqua Watersheds) | Don Ostby | cover fax and letter, re: Warm Springs timber sale, Diamond Lake Ranger District, consider these comments | 2, 3, 5 |
| 55 (Pages 00039-00049) | 00039-00050 | Litigation-SO | 12 | 08/27/98 | Ted Boling | Sue Zike | fax of 08/26/1998 privileged letter from Micheal Axline, re: a list of sales we believe fail to comply with NWFP | 11, 12 |
| 57 | 07784-07785 | Decision Notice | 2 | 09/01/98 | Doug Heiken, ONRC | Don Ostby | letter, subject: Comments on the Warm Springs and Upper North Timber Sales | 2, 3, 5 |

| Plaintiff's Exhibit # | Page No. | Folder Name | Pages | Date | Author | Recipient | Document Description | Responsive to Interogatory # |
|---|---|---|---|---|---|---|---|---|
| 60 (Pages A366-A370) | 12754-12758 | Wildlife-District | 5 | 09/11/98 | Robert Williams, Elaine Zielinski, G. Lynn Sprague, Ed Hastey | Forest Supervisors and BLM District Managers and Area Managers within the area of the NWFP | memo, subject: Implementation of Survey and Manage Component 2 and Protection Buffer Standards and Guidelines Regarding "Survey Prior to Ground Disturbing Activites" | 10 |
| 61 | 08808-08813 | EA Appendix H: Public Involvement | 6 | 09/14/98 | Dan Schindler | Francis Eatherington | letter, subject: Warm Springs EA - Alternative #2, response to public comment, comments addressed | 2, 3, 5 |
| 62 (Pages 02637-02638) | 02637-02640 | T-Line Salvage CE DN & Appeals | 4 | 09/17/98 | Bernie Rios | | Decision Memo for the T-Line Salvage Timber Sale, with two maps | 2, 3, 5 |
| 63 | 3853 | Prospectus Advertisement | 1 | 09/18/98 | | | procurement request and copy of ad in the Roseburg News Review: National Forest Timber for Sale, Umpqua National Forest, Pigout Sale | 1, 17 |
| 63 | 03834-03852 | Prospectus Advertisement | 19 | 10/21/98 | | | Text for newspaper ad and Timber Sale Prospectus, Umpqua National Forest, Pigout Sale, notes possible delay of award due to period for appeal of the decision not | 1, 16 |
| 64 (Pages 7789-7794) | 07789-07796 | Decision Notice | 8 | 09/21/98 | Bernie Rios for Don Ostby | | Decision Notice and Finding of No Significant Impact for the Warm Springs Timber Sales and Associated Activities | 2, 3, 5, 6 |
| 67 (Pages 11101-11114) | 11101-11116 | Prospectus | 16 | 10/01/98 | | | Timber Sale Prospectus and instructions to bidders | 1, 16 |
| 67 | 11100 | Prospectus | 1 | 10/01/98 | | | Legal Notice write up,, National Forest Timber for Sale, Jigsaw, to send to | 1, 16 |
| 67 (Page 10475) | 10475-10476 | Legal Notice | 2 | 09/25/98 | | | Ad in the News Review: National Forest Timber for Sale , Umpqua National Forest, The Jigsaw Sale | 1, 16 |
| 68 | 11141-11160 | Prospectus & Misc. | 20 | 09/25/98 | | | Timber Sale Prospectus, Umpqua National Forest, Whitebird Sale, notes possible delay of award due to period for appeal of the decision not expired | 1, 16 |
| 68 (Page 9919) | 09919-09920 | Prospectus and Advertisement | 2 | 09/25/98 | | | Notice of National Forest Timber for Sale, Umpqua National Forest, the Whitebird Sale, published in the Roseburg News Review | 1, 16 |

| Plaintiff's Exhibit # | Page No. | Folder Name | Pages | Date | Author | Recipient | Document Description | Responsive to Interogatory # |
|---|---|---|---|---|---|---|---|---|
| 70 (Pages PT2372-2373) | 07802-07803 | Decision Notice | 2 | 10/15/98 | Bernie Rios for Don Ostby | Francis Eatherington, Umpqua Watersheds, Doug Heiken, ONRC | letter, re:thank you for Oct. 5 letter, I see no reason to cancel auctions of sales , including Jigsaw | 2, 3, 15 |
| 81 (Pages 2647-2657) | 02647-02658 | T-Line Salvage CE DN & Appeals | 12 | 11/01/98 | Francis Eatherington | Regional Forester Robert Williams | Appeal of the Decision Memo, [sic] Finding of No Significant Impact, and Categorical Exclusion for the T-Line Timber Sale | 2, 3, 5, 7 |
| 83 (Pages 7805-7838) | 07805-07840 | Appeals | 36 | 11/03/98 | Umpqua Watersheds | Robert Williams, Don Ostby | Notice of Appeal, Statement of Reasons, and Request for Relief for the Warm Springs Timber Sale | 2, 3, 5, 7 |
| 85 | 07853-07859 | Appeals | 7 | 11/12/98 | Doug Heiken, ONRC | Appeal Reviewing Officer | letter, subject: APPEAL of Warm Srings Timber Sale DN | 2, 3, 7, 8 |
| 101 (Pages A598-A602) | 00092-00095 | Litigation-SO | 4 | 12/11/98 | Sue Zike | ONRC Action Coordinators | privileged memo, subject: Assessing ONRC Action named sales for award (ONRC Action v. USFS, BLM, 98- | 7, 11 |
| 115 (Pages 104-105) | 104 | Litigation-SO | 1 | 03/26/99 | Sue Zike | | Email: parties stipulated to briefing schedule that involved 2 promises by gov't: 1 - named sales give 10-day notice before approving plan of operation; 2 - sales appealed by plaintiffs and identified by plaintiffs, 10-day notice prior to award | 7, 11 |
| 115 (Pages 104-105) | 105 | Litigation-SO | 1 | 04/05/99 | Sue Zike | | Email: DOJ request to identify sales that have been awarded or are intended to be awarded by mid-June. | 1, 12 |
| 118 | 110 | Litigation-SO | 1 | 04/19/99 | Brenda L. Woodard | Sue Zike | Letter: intent to award six timber sales, including Jigsaw, Whitebird, and Pigout. Request DOJ give 10 days notice to ONRC Action plaintiffs, if needed. | 1, 11 |
| 119 | 111 | Litigation-SO | 1 | 04/23/99 | Sue Zike | Brenda Woodard | Letter: forwarded Brenda's letter of intent to award six sales to DOJ. Clarified that DOJ advises not to award until mid-June. | 1, 11 |

| Plaintiff's Exhibit # | Page No. | Folder Name | Pages | Date | Author | Recipient | Document Description | Responsive to Interogatory # |
|---|---|---|---|---|---|---|---|---|
| 126 | 114 | Litigation-SO | 1 | 07/02/99 | | | Hand written notes of conference call. Boling: stipulation has expired, no more notice due, plaintiff go for TRO. Devlin: don't lose negotiation power, hold on till Tuesday. | 1, 11 |
| 133 (Pages 10521-10615) | 10521-10661 | Contract | 141 | 07/08/99 | Brenda Woodard, Allyn Ford | | Jigsaw Timber Sale Contract No.087467, Umpqua National Forest, Diamond Lake RD, Scott Timber Co. | 1, 14, 16 |
| 136 | 10876-10878 | Correspondence | 3 | 07/08/99 | Brenda Woodard | Scott Timber Co. | Award letter, re: change of termination date of Jigsaw Timber Sale Contract No. 08467 due to delay awaiting resolution of lawsuit, other instructions | 1, 11, 51, 16, 18 |
| 137 | 11534-11535 | Correspondence | 2 | 07/08/99 | Brenda Woodard | Scott Timber Co. | Award letter, re: change of termination date of Whitebird Timber Sale Contract No. 087475 due to delay awaiting resolution of lawsuit, other instructions | 1, 11, 15, 16, 18 |
| 138 | 06387-06388 | Correspondence | 2 | 07/08/99 | Brenda Woodard | Scott Timber Co. | Award letter, re: change of termination date of Pigout Timber Sale Contract No. 087459 due to delay awaiting resolution of lawsuit, other instructions | 1, 11, 15, 16, 18 |
| 139 | 124 | Litigation-SO | 1 | 07/08/99 | | | Email presumably from Sue Zike: transmitting the ONRC Action briefing | 11 |
| 139 | 125 | Litigation-SO | 1 | 07/08/99 | Brenda Woodard | | Hand written notes of conference call with Ted Boling and Sue Zike. T-Line and Chapter 4 - award on July 19, other 4 sales can be awarded today | 11 |
| 145 | 504 | Litigation -D | 1 | 08/27/99 | Sue Zike | | chart: ONRC Action R5/R6 Timber Sales enjoined 8/2/99 and 8/26/99 | 11, 12, 18 |
| 147 | 4111 | Correspondence | 1 | 08/31/99 | Brenda Woodard | Scott Timber Co. | letter, re: Pigout Timber Sale, Contract No. 087459, notification of Judge Dwyer order 08/26/99 that enjoined the Umpqua NF from approving a plan of operations for Pigout Timber Sale | 1, 11, 51, 16, 18 |

| Plaintiff's Exhibit # | Page No. | Folder Name | Pages | Date | Author | Recipient | Document Description | Responsive to Interogatory # |
|---|---|---|---|---|---|---|---|---|
| 161 | 6276 | Contract Modifications | 1 | 06/11/02 | Brenda Woodard | Scott Timber Co. | letter, re: Pigout Timber Sale, Contract No. 087459, this sale is no longer enjoined under the ONRC Action lawsuit and is available for operation, adjustments made to cover loss of 2 operating seasons plus 61 days | 1, 11, 15, 16 |
| 167 | 09633-09642 | Correspondence | 10 | 04/29/05 | Brenda Woodard | Scott Timber Co. | letter, re: Jigsaw Sale,Contract No.087467, Contracting Officer's Findings and Decision, in response to claim dated 11/09/04 | 1, 15, 16 |
| 168 | 10267-10278 | Correspondence | 12 | 04/29/05 | Brenda Woodard | Scott Timber Co. | letter, re: Whitebird Sale, Contract No. 087475, Contracting Officer's Findings and Decision | 1, 15, 16 |
| 169 | 04189-04198 | Correspondence | 10 | 04/29/05 | Brenda Woodard | Scott Timber Co. | letter, re: Pigout Sale, Contract No. 087459, Contracting Officer's Findings and | 1, 16 |
| 144 (Pages A1100-A1107) | 00214-00222 | Litigation-SO | 9 | 08/26/99 | Hon. William L. Dwyer | | Civ. No. C98-942WD Order on Additional Motions Re Preliminary Injuction | 7, 11, 12, 18 |
| 155 (Pages A1830-A1843) | 00290-00303 | Litigation-SO | 14 | 12/17/99 | William L. Dwyer, US Dist. Court Judge | | Civ. No. C98-942WD Stipulation For Order Dismissing Action; Order Thereon | 11, 17, 18 |
| 162 (Page 9587) | 09587-09588 | Correspondence | 2 | 10/06/03 | Catherine Kleckner | Scott Timber Co. | letter, re: adjust Termination Date in AT16 on Jigsaw to 07/31/09, and notes | 1, 11, 15, 16 |
| 163 (Page 10226) | 10226-10227 | Correspondence | 2 | 10/08/03 | Catherine Kleckner | Scott Timber Co. | letter, re: pursuant to BT8.21, the Termination Date in AT16 on Whitebird is adjusted to August 31, 2008, with 1 page of hand written notes | 1, 11, 15, 16 |