**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SCOTT TIMBER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 05-708C<br>(Judge Lettow) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST MOTION *IN LIMINE***

In accordance with the Court's Order of May 28, 2008, plaintiff Scott Timber Company ("Scott Timber") respectfully submits this and its other responses filed this day in opposition to defendant's four motions in limine. Motions in limine are designed to "filter[] out irrelevant evidence and . . . 'simplify [the] issues for trial,'" INSLAW, Inc. v. United States, 35 Fed. Cl. 295, 302-03 (1996), thereby promoting an "expeditious, just, fair and inexpensive trial on the issue in dispute," Baskett v. United States, 2 Cl. Ct. 356, 367 (1983). Defendant's motions seek to do just the opposite – exclude so much relevant information that plaintiff is prevented from proving its theories of liability at trial.

In defendant's first motion in limine, defendant asks this Court to ignore all of defendant's pre-award conduct, no matter how unreasonable, on the grounds that it can have no relevance to defendant's subsequent breach of plaintiff's contracts. Def. First Mot. In Limine at 1. Contrary to defendant's position, defendant's pre-award actions are relevant because the

courts recognize that evidence of the Forest Service's pre-award conduct may be used to prove that the Forest Service wrongfully provoked a suspension of the contract after award. Accordingly, the Court should deny defendant's first motion in limine.

In Scott Timber Co. v. United States, 333 F.3d 1358, 1369 (Fed. Cir. 2003), the Federal Circuit expressly stated that evidence of unreasonable Forest Service conduct prior to award could support a finding that a suspension imposed under contract clause C(T)6.01 was unreasonable and constituted a breach of contract.[1] For example, the facts supporting the argument that the suspensions were unreasonable in that case included that the Forest Service "knew the murrelet would, in all probability, be listed as threatened and took no steps to survey the known habitat before awarding" the contracts. Id. at 1369 (emphasis added). Pre-award surveys for the murrelet were not required by law because the sales at issue in Scott Timber were deemed to be in compliance with National Forest Management Act ("NFMA") and National Environmental Policy Act ("NEPA") requirements by special statutory authorization. However, the Federal Circuit acknowledged that Scott Timber may be able to prove at trial that the Forest Service "might have greatly reduced the time of the suspensions if it had conducted surveys before awarding the contracts." Id. (emphasis added). The Federal Circuit observed that "[a]lthough NFMA and NEPA did not require the Forest Service to take such measures, the Forest Service's decision to proceed without these preparations remains a factor in weighing unreasonableness." Id.

[1]The three contracts at issue in this case all contain contract clause CT6.01. There is no substantive difference between clauses C6.01 or CT6.01. The slight differences in the clauses are immaterial to the issues in this case. See, e.g., Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35, 40, 67 n.37 (2001).

Simply put, the Federal Circuit made clear in Scott Timber that unreasonable Forest Service pre-award conduct can demonstrate that the Forest Service's post-award suspensions constitute breaches of the contracts, notwithstanding the inclusion of clause C(T)6.01 in those contracts. Defendant does not even acknowledge, much less discuss, this directly on point ruling in Scott Timber. Instead, defendant contends that there is no pre-award covenant of good faith and fair dealing and therefore that the Forest Service's pre-award conduct could not possibly form the basis for a breach of plaintiff's contracts.[2] Scott Timber establishes that defendant's contention is wrong.[3]

Judges of this Court and the former Department of Agriculture Board of Contract Appeals ("AGBCA") have had occasion to apply the teachings of Scott Timber in other timber sale suspension cases since the Federal Circuit issued its decision in 2003. In these cases, the judges uniformly have recognized that unreasonable Forest Service pre-award conduct which provoked a post-award suspension would constitute a breach, notwithstanding the inclusion of

[2]Defendant cites case law in which the government's conduct during contract administration was found not to rise to the level of improper coercion or duress for the proposition that "the assertion of a legitimate contract right cannot be considered as violative of a duty of good faith and fair dealing." Def. First Mot. In Limine at 2 (citing David Nassif Assocs. v. United States, 644 F.2d 4, 12 (Ct. Cl. 1981)). As outlined in plaintiff's memorandum of contentions of fact and law, clause C(T)6.01 cannot be interpreted to limit the Forest Service's liability where the Forest Service's unreasonable conduct caused the suspensions of plaintiff's contracts. David Nassif is inapposite.

[3]Defendant's argument that Scott Timber "recognized that any reasonableness inquiry is only appropriate as it relates to the duration of the suspensions" seriously mischaracterizes the court's decision. Def. First Mot. In Limine at 4-5. Nowhere does Scott Timber say any reasonableness inquiry is only appropriate as it relates to duration. While it is true that the issue before the Federal Circuit in Scott Timber was whether the duration of the suspension was unreasonable, there is no basis in logic or law for concluding that the C6.01 damage limitations do not apply to a suspension of unreasonable length but somehow do apply to an unreasonably provoked suspension.

clause C(T)6.01 in the contract. E.g., Trinity River Lumber Co. v. United States, 66 Fed. Cl. 98, 112 (2005) (if the Forest Service had knowledge that its pre-award environmental documentation "was inadequate before it was issued, it would be unreasonable to award a timber sale contract in light of the risk that environmental groups would challenge" the sale based on that documentation); id. at 111 (The cases considering clause C(T)6.01 since Scott Timber "demonstrate that a breach of the implied duties to cooperate and not to hinder may be found where the government causes delay by unreasonably prolonging timber sale contract suspensions or by unreasonably provoking the suspension of a contract"); H.N. Wood Products, Inc. v. United States, 59 Fed. Cl. 479, 490-91 (2003) (Forest Service could be liable for unreasonably suspending contract which includes clause CT6.01 if Forest Service "knew or should have known that its [pre-award environmental documentation] was inadequate when it awarded the Contract"); Shawn Montee, Inc., dba Shawn Montee Timber Company, AGBCA Nos. 2003-132-1 through 2003-136-1, 04-1 BCA ¶ 32,564 (2004), at 161,073 ("Scott Timber makes it clear that under certain circumstances CT6.01 will not shield the Government" from breach liability); Tamarack Mills, LLC, AGBCA Nos. 2003-115-1 and 2003-116-1, 04-1 BCA ¶ 32,591 (2004), at 161,228 ("[i]n Scott, the court determined that clause C6.01 will not serve to protect the Government from breach, where it is found that the suspension or the length of the suspension was not reasonable"); see also Mountain Valley Lumber, Inc., AGBCA No. 2003-171-1, 06-2 BCA ¶ 33,339, at 165,316 (if the Forest Service's pre-award actions were found to be sufficiently unreasonable, then contract clause C(T)6.01 "could be defeated on the basis that the FS unduly hindered and failed to cooperate").

Also contrary to defendant's contention, clause C(T)6.01 is not rendered void or meaningless by interpreting it as inapplicable to limit the Forest Service's liability where conduct within the government's control caused the court order to issue which required the Forest Service to suspend the contracts or render the clause "nugatory." See Def. First Mot. In Limine at 3. Precision Pine, 50 Fed. Cl. at 61, expressly rejected this argument. Similarly, in Scott Timber and the subsequent timber sale suspension cases before this Court and the former AGBCA, this argument was rejected at least implicitly when the matters were remanded for trial. Moreover, even if ruling that the loss limitation language of C(T)6.01 was ineffective where Forest Service fault caused the suspension of plaintiffs' contracts would render C(T)6.01 nugatory, that is the correct result under established law. The Forest Service as the drafter of the contract assumes the risk that it has failed to draft an effective exculpatory clause. See, e.g., George A. Fuller Co. v. United States, 69 F. Supp. 409, 412 (Ct. Cl. 1947); Precision Pine, 50 Fed. Cl. at 58; C.J. Betters Corp. v. United States, 25 Cl. Ct. 674, 677 (1992) (citing Ozark Dam Constructors v. United States, 127 F. Supp. 187, 191 (Ct. Cl. 1955)); Dep't of Natural Res. and Conservation of Montana v. United States, 1 Cl. Ct. 727, 734 (1983); Cedar Lumber, Inc. v. United States, 5 Cl. Ct. 539, 552 (1984).

Although the liability limiting provisions of clause C(T)6.01 are inapplicable where, as here, the Forest Service has caused timber sales to be suspended, this does not mean these provisions are meaningless, because they apply in situations where the Forest Service is not the cause of the suspension. For example, the discovery after award of an unknown threatened, endangered or sensitive species on the sale area which the Forest Service could not reasonably have known about prior to award could result in a suspension under clause C(T)6.01 with limited

liability to the Forest Service. Of course, the length of any such suspension and whether the Forest Service was responsible for unduly prolonging the duration of the suspension would separately raise questions as to the applicability of the liability limitation provisions of clause C(T)6.01. Thus, clause C(T)6.01 is not rendered void or meaningless by interpreting the clause as inapplicable to limit the Forest Service s liability to plaintiff in this case where the Forest Service caused the suspensions.

Defendant's contention that the Forest Service cannot be held liable for provoking the suspensions of plaintiff's contracts based on the Forest Service's pre-award conduct is wrong as a matter of law. Accordingly, Scott Timber's testimonial and documentary evidence regarding the Forest Service's pre-award conduct which provoked the suspensions of Scott Timber's contracts is relevant, and the Court should not prohibit Scott Timber from introducing such evidence at trial. For the foregoing reasons, the court should deny defendant's first motion in limine.

Respectfully submitted,

s/Gary G. Stevens

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Ruth G. Tiger
Eric J. Pohlner
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: June 16, 2008