**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| SCOTT TIMBER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-708C<br>(Judge Lettow) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SECOND MOTION *IN LIMINE***

Gary G. Stevens
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Ruth G. Tiger
Eric J. Pohlner
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: June 16, 2008

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ..... ii

I. Scott Timber's Exhibits Are Admissible Under FRE 408(b) To Prove Defendant's Knowledge Of Facts ..... 2

II. FRE 408 Does Not Apply To Documents Prepared Between December 4, 1998 And August 2, 1999 Because There Were No Settlement Negotiations During This Time ..... 3

III. FRE 408 Only Bars Evidence Of Settlement Negotiations Of The Same Claim And Scott Timber's Breach Of Contract Claims Are Not The Same As ONRC Action's Statutory Claims ..... 5

IV. FRE 408 Does Not Apply To Nearly All Of The Exhibits Because They Are The Government's Internal Documents Not Disclosed To ONRC Action And Were Not Used In Settlement Negotiations With The Other Side ..... 9

V. Conclusion ..... 12

# TABLE OF AUTHORITIES

**CASES** **PAGE**

Affiliated Mfrs., Inc. v. Aluminum Co. of America,
56 F.3d 521 (3rd Cir. 1995) ....................9

Armstrong v. H.R.B. Royalty, Inc.,
392 F. Supp. 2d 1302 (S.D. Ala. 2005)....................5, 6, 7, 8, 9

Blue Circle Atlantic, Inc. v. Falcon Materials, Inc.,
760 F. Supp. 615 (D. Md. 1991), aff'd mem., 960 F.2d 145 (4th Cir. 1992) ....................9

Blue Lake Forest Products, Inc. v. United States,
75 Fed. Cl. 779 (2007) ....................1

Broadcort Capital Corp. v. Summa Med. Corp.,
972 F.2d 1183 (10th Cir. 1992) ....................5

Fiberglass Insulators, Inc. v. Dupuy,
856 F.2d 652 (4th Cir. 1988) ....................7

Jamesbury Corp. v. United States,
1980 WL 20818 (Ct. Cl. 1980) ....................5, 6, 7

Oregon Natural Resources Council Action v. United States Forest Service,
59 F. Supp. 2d 1085 (W.D. Wash. 1999).................... *passim*

Perri v. Daggy,
776 F. Supp. 1345 (N.D. Ind. 1991) ....................2, 3

Power Authority of New York v. United States,
62 Fed. Cl. 376 (2004) ....................11

Ramada Development Co. v. Rauch,
644 F.2d 1097 (5th Cir. Unit B May 1981) ....................9

Spell v. McDaniel,
824 F.2d 1380 (4th Cir. 1987) ....................2

Towerridge, Inc. v. T.A.O., Inc.,
111 F.3d 758 (10th Cir. 1997) ....................8

Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.,
111 F.3d 1284 (6th Cir. 1997) ....................5

Vulcan Hart Corp. (St. Louis Div.) v. N.L.R.B.,
718 F.2d 269 (8th Cir. 1983) ....................................................................................5

Zurich American Ins. Co. v. Watts Indus., Inc.,
417 F.3d 682 (7th Cir. 2005) ....................................................................................5

**STATUTES AND REGULATIONS**

Federal Rule of Evidence 408.................................................................................... *passim*

Plaintiff Scott Timber Company's ("Scott Timber") use of the documentary evidence[1] and testimony[2] challenged by defendant is not barred by Federal Rule of Evidence ("FRE") 408 on several grounds. First, FRE 408(b) allows evidence of settlement negotiations when used for a purpose other than to prove liability. These authorized uses include proving facts contained in documents and testimony which may be related to or a part of settlement negotiations and a party's knowledge of those facts. Second, the majority of the documents and testimony challenged in defendant's motion involves statements and events that occurred during a period in which there were no settlement negotiations. Third, FRE 408 only bars the use of documents and testimony involved in settlement negotiations to prove liability for the claim being negotiated, it does not bar use of such evidence to prove liability of a different claim. Fourth,

---

[1]Defendant identifies a score of Scott Timber's proposed trial exhibits that it believes should be excluded because they allegedly are part of the settlement negotiations in Oregon Natural Resources Council Action v. United States Forest Service ("ONRC Action"), 59 F. Supp. 2d 1085 (W.D. Wash. 1999). Def. Second Mot. In Limine at 2. Defendant has apparently listed every exhibit that contains the word "settlement" or mentions one of the sales identified as "at-risk" by the ONRC Action plaintiffs, even if the document was not prepared for use in the negotiations. As the attached Exhibit A shows, each exhibit is admissible under FRE 408 for one or more of the reasons discussed infra.

[2]Defendant also requests that the Court prohibit one of Scott Timber's witnesses, Mr. Edward Boling, a former Department of Justice attorney, from testifying on the "evaluation of ONRC Action and the weakness of the government's position; the lack of merit of the Forest Service's interpretation . . . communications with others regarding the ONRC Action litigation . . . and authentication and explanation of documents concerning Mr. Boling." Def. Second Mot. In Limine at 2 (ellipses in original). Defendant's request goes too far. None of the subjects listed by defendant specifically refer to the ONRC Action settlement negotiations. While evidence regarding those negotiations may fall within some of those broad categories, defendant offers no factual or legal explanation for why that entitles defendant to exclude all evidence regarding those subjects, including evidence unrelated to the settlement negotiations. In accordance with the discussion infra, Mr. Boling should be allowed to testify on settlement negotiations for claims different than the one at bar and on defendant's internal legal assessment of its litigation position which was not produced to ONRC Action. Defendant has waived any applicable attorney-client privilege or work product protection. Blue Lake Forest Products, Inc. v. United States, 75 Fed. Cl. 779 , 798-99 (2007).

FRE 408 does not apply to internal memoranda or information not communicated to the opposing party during the settlement negotiations. All but three of the exhibits identified in defendant's motion were internal Forest Service or Department of Justice memoranda or e-mails not communicated to the ONRC Action plaintiffs. For all of these reasons, the Court should deny defendant's second motion in limine.

## I. Scott Timber's Exhibits Are Admissible Under FRE 408(b) To Prove Defendant's Knowledge Of Facts

Much of the evidence identified in defendant's motion is admissible because "Rule 408 is inapplicable when evidence of the compromise is offered to prove notice." FRE 408 advisory committee's notes to 2006 amendments. One of the permissible uses allowed under FRE 408(b) is to prove a party's knowledge of the facts contained in settlement negotiations. Perri v. Daggy, 776 F. Supp. 1345, 1349 (N.D. Ind. 1991); accord Spell v. McDaniel, 824 F.2d 1380, 1400 (4th Cir. 1987) (cited in FRE 408 advisory committee's notes to 2006 amendments). For example, in Perri, the plaintiff brought a civil rights action against the police officers who arrested him and the police chief. At trial, the plaintiff sought to introduce the city's settlement of a prior claim against one of the officers. The plaintiff wanted to use the settlement agreement to prove the police chief was liable for violating the plaintiff's civil rights by continuing to employ an officer he knew was dangerous. The court held that the settlement was admissible against the police chief because the plaintiff was not using it to prove the city's liability for the prior excessive force claim but instead to show that the police chief either knew or should have known of the officer's prior misconduct. Id.

Like the plaintiff in Perri, Scott Timber seeks to introduce evidence related to defendant's settlement negotiations with ONRC Action to prove facts presented within those negotiations and defendant's knowledge of those facts, such as the fact that Pigout, Whitebird and Jigsaw were on ONRC Action's "at-risk" lists, that ONRC Action threatened to move for injunctive relief if defendant allowed ground-disturbing operations on Scott Timber's sales, and that defendant kept the fact that Scott Timber's sales were on ONRC Action's "at-risk" lists a secret. Pl. Mem. of Contentions of Fact and Law at 24-27. In short, Scott Timber is using this evidence to prove what the Forest Service knew, when it knew it and the actions it took despite this knowledge. FRE 408 does not bar this evidence.[3]

## II. FRE 408 Does Not Apply To Documents Prepared Between December 4, 1998 And August 2, 1999 Because There Were No Settlement Negotiations During This Time

Settlement negotiations began shortly after the filing of ONRC Action in July 1998 but stopped by December 3, 1998. Beginning December 4, 1998, settlement negotiations had broken down and the government did not believe that settlement was likely. At his deposition, Edward (Ted) Boling, lead counsel for the government in ONRC Action, testified that by December 1998 it became apparent to the government that it was not going to settle the case. Exhibit B (E. Boling Dep. Tr. 65:17-66:5). This fact is further confirmed by the government's internal correspondence. In an e-mail sent on or about December 3, 1998, Sue Zike, Litigation Coordinator for Region 6 of the Forest Service, stated that the government's settlement negotiations with ONRC Action would end on December 3rd and that the Forest Service should

[3]Scott Timber's trial exhibits challenged by defendant that are offered for this purpose are: 65, 75, 87, 88, 95, 96, 100, 101, 110, 116, 118, 119, 120, 129, 132A, 139.

notify the Department of Justice before it awarded any sale because doing so would likely prompt a motion for injunctive relief by the ONRC Action plaintiffs:

> Govt's promise to delay the award of certain timber sales pending settlement ends on Dec 3. Settlement of the case does not appear likely. To be prepared for what legal maneuverings ONRC might employ (motion for a broad prel. inj. is likely), DOJ Ted Boling requested today that the Forest Service give him a 5 day notice before awarding any of the sales listed by ONRC in their 9/17/98 letter.

Pl. Trial Ex. 95 (Exhibit B attached).

The day after the government's promise ended, on December 4, 1998, Mr. Boling wrote Ms. Zike to inform her, "As of today, we have no agreement with plaintiffs to hold on to the award of any timber sales." Pl. Trial Ex. 96 (Exhibit B attached). Mr. Boling went on to request that the Forest Service not award any sale until:

> after 1) having reviewed the issues common to the administrative appeal and the ONRC Action suit with agency counsel (Owen Schmidt and Roger Nesbit), [and] 2) communicated to us its judgment that the award of the sale is worth the risk that the sale will be used by plaintiffs as an example in an emergency motion to enjoin all sales in the area of the Northwest Forest Plan. . . .

Id. Thus, after December 4, 1998, both the Department of Justice and the Forest Service manifested a belief that settlement negotiations with ONRC Action had ended. From December 4, 1998 through the ONRC Action court's order awarding summary judgment to the ONRC Action plaintiffs, there were no settlement discussions and FRE 408 is not a bar to the exhibits and testimony challenged by defendant that were prepared during this time period.[4] In addition, once settlement negotiations between the government and ONRC Action started again after the court granted summary judgment to ONRC Action on August 2, 1999, these discussions focused

[4]Scott Timber's trial exhibits from this time period include the following: 99-101, 110, 116, 118-120, 126, 129, 132A, 139, 141.

only on relief, liability having already been decided by the court. Accordingly, the settlement negotiations did not involve the issue of liability and plaintiff may use documents or testimony relating to the settlement in this time period under FRE 408 to prove liability. Scott Timber's trial exhibits from this time period that are challenged by defendant are also admissible and not barred by FRE 408.[5]

**III. FRE 408 Only Bars Evidence Of Settlement Negotiations Of The Same Claim And Scott Timber's Breach Of Contract Claims Are Not The Same As ONRC Action's Statutory Claims**

By its own terms, Rule 408 excludes evidence related to settlement negotiations only if such evidence is offered to prove liability for the claim which is the subject of the settlement negotiations. Armstrong v. H.R.B. Royalty, Inc., 392 F. Supp. 2d 1302, 1304 (S.D. Ala. 2005); accord Zurich American Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 689-90 (7th Cir. 2005); Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B., 111 F.3d 1284, 1293-94 (6th Cir. 1997); Broadcort Capital Corp. v. Summa Med. Corp., 972 F.2d 1183, 1194 (10th Cir. 1992); Vulcan Hart Corp. (St. Louis Div.) v. N.L.R.B., 718 F.2d 269, 277 (8th Cir. 1983); Jamesbury Corp. v. United States, 1980 WL 20818, at *4 n.1 (Ct. Cl. 1980). Rule 408 does not prohibit Scott Timber from introducing evidence of settlement negotiations between the government and ONRC Action to prove a different claim than the claim being negotiated.

Armstrong offers the most extensive and cogent analysis on this point. 392 F. Supp. 2d 1304-09. After termination of its franchise agreement, a franchisee sued the franchisor to recover the "fair and equitable price" for the business owed under the contract. To prove a "fair

[5]These trial exhibits include: 143A, 154, 157, 158.

and equitable price," the plaintiff franchisee sought to introduce a failed settlement offer made by defendant to plaintiff and other franchisees in an earlier case which provided that upon contract renewal, the franchisor would pay four times the franchisee's gross revenue. The defendant argued that FRE 408 barred the admission of its settlement offer. The Armstrong court disagreed, finding that at the time of the offer, the meaning of "fair and equitable price" was not a disputed claim between the parties and that the settlement offer was not intended to resolve the issue. Id. at 1305. Accordingly, because the settlement offer and the case before the court were for different claims, FRE 408 by its own terms did not apply. Id. at 1304, 1306.

The Armstrong court likewise rejected the franchisor's argument that evidence of the settlement offer was barred by FRE 408 because it involved claims that were related to the one currently before the court. In support of its argument, the franchisor had cited several cases where courts have barred evidence of a settlement because it involved the "same transaction" as the one being litigated. The "same transaction" test arose from the common law and "has often been applied in situations involving one plaintiff, multiple wrongdoers and one event, although it has also been applied in situations involving multiple plaintiffs, one wrongdoer and one event." Id. at 1306. The Armstrong court agreed that "use of a 'same transaction' test in such circumstances is arguably consistent with Rule 408's 'same claim' requirement." Id. at 1306-07. However, the court reasoned that the common law "same transaction" test applied to a broader range of situations than the "same claim" requirement adopted by FRE 408.[6] See id. at 1309.

[6]A Court of Claims case has reasoned that FRE 408's "same claim" requirement, at a minimum, does not bar more evidence than does the common law's "same transaction" test. See Jamesbury, 1980 WL 20818, at *4 n.1. In Jamesbury, the plaintiff brought a patent infringement claim against the government. Contemporaneously, the plaintiff brought suit in Massachusetts

In explaining the distinction between the common law's "same transaction" test and the narrower "same claim" requirement of FRE 408, the Armstrong court pointed to the facts of a contrary Fourth Circuit case. Id. at 1308 (citing Fiberglass Insulators, Inc. v. Dupuy, 856 F.2d 652 (4th Cir. 1988)). That case concerned a series of five lawsuits brought over the course of eight years by shareholders of a closely-held corporation that arose from the corporation's dissolution. Id. at 1307 (citing Dupuy, 856 F.2d at 653). The plaintiff sought to use evidence of settlement negotiations regarding two of the earlier dissolution claims to prove a later-brought antitrust claim. Id. The Armstrong court stated that while the series of lawsuits arguably may have arisen out of the same transaction – the failure of the corporation – "by no known

---

federal district court against another infringer of the same patent. Id. at *1. The plaintiff settled the district court suit, and the infringer promised to pay a certain amount as royalties for continued use of the patent. In the Court of Claims, the government sought to introduce the settlement agreement as evidence of a reasonable amount of royalties the government should pay for its infringing use. Id. at *3-4. Over the plaintiff's Rule 408 objection, the court allowed the settlement agreement to be introduced for this purpose. Id. at *4 n.1.

The Jamesbury court allowed the settlement agreement to be introduced because the claim that was the subject of the agreement was different from the claim before the court. Specifically, the court noted that at common law "a settlement agreement was inadmissible in a subsequent lawsuit if it arose out of the same transaction as the suit in which introduction of the evidence was sought." Id. The court distinguished this rule from the broader one proposed in the National Conference of Commissioners on Uniform State Laws Uniform Rules of Evidence that made "inadmissible a [settlement] to prove the claim or any other claim." Id. (emphases added). Accordingly, the court held that because the "same transaction" limitation would not bar the government from introducing the settlement agreement of an "other claim" by a third-party, the result under FRE 408 must be the same. See id.

Unlike the district court in Armstrong, the Jamesbury court did not need to determine whether there was a distinction between the common law's "same transaction" test and FRE 408's "same claim" requirement. The claim in Jamesbury clearly involved separate transactions – the patent was infringed by two different and unrelated parties and the actual acts of infringement were also different and unrelated. Thus, it was sufficient for the Jamesbury court to hold that FRE 408 retained at least the limitations of the "same transaction" test. Moreover, to the extent Jamesbury can be interpreted as ruling that the "same claim" test under FRE 408 is the same as the common law "same transaction test," the Jamesbury court's interpretation is dicta.

measurement can causes of action regarding dissolution and a cause of action regarding antitrust violations occurring years later be viewed as a single claim." Id. at 1308. After distinguishing the franchisor's cases and surveying the Eleventh Circuit cases involving the issue, the Armstrong court concluded: "Nothing in these decisions [supports defendant's] invitation to re-write Rule 408's 'same claim' requirement as a lower, 'same transaction' threshold." Id. at 1309.

As was the case in Armstrong, Scott Timber's claims and ONRC Action's claims are not the same. Scott Timber is seeking to prove defendant's liability for breach of contract. The claim that the ONRC Action plaintiffs proved was that the Forest Service was arbitrary and capricious and acted contrary to law in adopting and implementing the "NEPA decision equals implemented" interpretation and RTV Directive. The settlement negotiations between the government and the ONRC Action plaintiffs did not concern the breach of contract claims of Scott Timber. Accordingly, FRE 408 does not bar any of Scott Timber's trial exhibits or testimony related to the ONRC Action settlement negotiations because ONRC Action's claim is not the same claim as Scott Timber's.

The public policy behind FRE 408 does not demand a different result than the one advanced by Scott Timber. Scott Timber does not dispute that the purpose behind FRE 408 is to encourage settlements. "Courts, however, enforce rules, not simply the policy promoting their enactment, and Rule 408 cannot be extended beyond the reach its language will allow, regardless of the policy implications." Armstrong, 392 F. Supp. 2d. at 1309 (citing Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 770 (10th Cir. 1997)). FRE 408 is necessarily limited by FRE 402,

which seeks to put all relevant information before the trier of fact. The "same claim" requirement of FRE 408 is a deliberate balancing between the conflicting policies behind the two rules. Id. By adhering to the "same claim" requirement of FRE 408, the Court is enforcing the balance that Congress struck when it enacted the Federal Rules of Evidence. Accordingly, the public policy of encouraging settlement also is not a bar to Scott Timber's authorized use at trial of evidence relating to the ONRC Action settlement negotiations.

## IV. FRE 408 Does Not Apply To Nearly All Of The Exhibits Because They Are The Government's Internal Documents Not Disclosed To ONRC Action And Were Not Used In Settlement Negotiations With The Other Side

Rule 408 does not bar most of the evidence relating to the ONRC Action settlement negotiations for another fundamental reason – "Rule 408 does not apply to internal memoranda unless communicated to the other side in an attempt at settlement." Blue Circle Atlantic, Inc. v. Falcon Materials, Inc., 760 F. Supp. 516, 522 (D. Md. 1991), aff'd mem., 960 F.2d 145 (4th Cir. 1992). It appears that only three courts of appeals have addressed this issue, Affiliated Mfrs., Inc. v. Aluminum Co. of America, 56 F.3d 521, 528-30 (3rd Cir. 1995); Ramada Development Co. v. Rauch, 644 F.2d 1097, 1106-07 (5th Cir. Unit B May 1981), and the Fourth Circuit in affirming Blue Circle. Affiliated Manufacturers and Ramada reached a different result than Blue Circle on this legal issue, but the facts and reasoning of those cases are distinguishable because the internal memoranda at issue in those cases served as a basis on which the preparing party calculated the actual amount it offered in settlement and therefore were directly involved in settlement negotiations. Affiliated Manufacturers, 56 F.3d at 528-30; Ramada, 644 F.2d at 1106-07. Unlike the memoranda in Affiliated Manufacturers and Ramada, defendant's internal assessments of the risks of awarding specific timber sales and the legal defensibility of the

"NEPA decision equals implemented" interpretation and RTV Directive do not reflect the settlement terms the government communicated to ONRC Action. Indeed, the content of these internal memoranda were kept confidential and were used by the government to assess its litigation risks, including whether it was worth the risk to award and authorize ground-disturbing activities on particular sales despite ONRC Action's threat that doing so such would cause it to file a motion for injunctive relief. Thus, the internal memoranda here, rather than reflecting the terms of settlement the government offered ONRC Action, were used by the government to authorize actions that risked undermining the possibility of settlement.[7]

Not only has defendant failed to show the existence of settlement negotiations between December 4, 1998 and the first decision in ONRC Action on August 2, 1999, defendant has failed to make any showing that plaintiff's exhibits were actually used by the government as part of its settlement negotiations with ONRC Action. While several of the exhibits do use the word "settlement" or summarize the settlement negotiations with ONRC Action, there is no evidence that any of Scott Timber's exhibits were actually used by the government to evaluate or formulate settlement terms with ONRC Action. The majority of Scott Timber's exhibits challenged by defendant under Rule 408 deal with Sue Zike and other Forest Service personnel with knowledge of the ONRC Action plaintiffs' "at-risk" sales lists in deciding whether the risk of awarding those sales, including Scott Timber's sales at issue in this action, are worth the risk of triggering a motion for a temporary restraining order or a preliminary injunction by ONRC Action. These documents do not in any way discuss offer, compromise or settlement

[7]All of the trial exhibits challenged by defendant are the government's internal documents except for exhibits 65, 157 and 158.

negotiations themselves. Scott Timber intends to use this evidence and related testimony to establish what the Forest Service knew and when it knew it as well as what risks the Forest Service knowingly assumed in awarding the contracts to Scott Timber while keeping knowledge that these sales were on the "at-risk" lists secret.[8]

Defendant's assertion that any evidence, including internal memoranda and communications kept entirely secret from the ONRC Action plaintiffs, should be barred under FRE 408 is overboard and contrary to the policies behind FRE 408. See Power Authority of New York v. United States, 62 Fed. Cl. 376, 378 (2004) (defendant's "less nuanced approach to Rule 408 [is] unfair and contrary to the spirit the rule"). If FRE 408 were meant to be applied so broadly, then Congress would not have included FRE 408(b) which expressly recognizes that evidence of settlement negotiations may be used for purposes other than proving liability. Moreover, merely because the Forest Service acquired knowledge of facts in the context of settlement negotiations with a third party regarding a different claim from the one at bar, Scott Timber should not be barred from introducing evidence of those facts. The overly broad application of FRE 408 advocated by defendant in this action is unfair and contrary to the spirit of the rule because it "work[s] a hardship on Plaintiff's ability to mount its case." Power Authority of New York, 62 Fed. Cl. at 379.

[8]At a minimum, the exhibits identified by defendant in its motion that were created independent of the settlement negotiations include exhibits 99-101, 110, 141, 143A.

## V. Conclusion

FRE 408 does not preclude evidence of the ONRC Action settlement negotiations because such negotiations concerned third-party claims that are different than the ones brought by plaintiff. Even if FRE 408 did apply to the negotiations, FRE 408(b) allows Scott Timber to use evidence of the facts discussed therein to prove defendant's knowledge of those facts. Moreover, the majority of the exhibits objected to by defendant were prepared after settlement negotiations had ended and were never used by defendant to evaluate or offer settlement terms to ONRC Action or otherwise communicated to ONRC Action. Defendant is asking the Court to stretch the public policy behind FRE 408 to exclude far more evidence than Congress intended in drafting the Rule and thereby work an unfair hardship upon Scott Timber's ability to prove its breach of contract case. For the foregoing reasons, the Court should deny defendant's second motion in limine.

Respectfully submitted,

s/Gary G. Stevens
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Ruth G. Tiger
Eric J. Pohlner
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: June 16, 2008