IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SCOTT TIMBER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05-708C<br>(Judge Lettow) |

**DEFENDANT'S REPLY TO PLAINTIFF'S**
**OPPOSITION TO DEFENDANT'S SECOND MOTION IN LIMINE**

In its second motion in limine, defendant, the United States, moved for an order ruling that all evidence relating to settlement negotiations between the Government and the Oregon Natural Resources Council Action ("ONRC Action") is inadmissible.

Plaintiff, Scott Timber Company ("Scott") states that it intends to offer documents concerning the Forest Service's settlement negotiations with the plaintiffs in Oregon Natural Resources Council Action v. United States Forest Service, 59 F. Supp. 2d 1085 (W.D. Wash. 1999) ("ONRC Action"). The point of this evidence, according to plaintiff, is to establish that ONRC Action opposed the Forest Service's awarding of the Pigout, Jigsaw, and Whitebird timber sale contracts (they were on a list of sales prepared by ONRC Action plaintiffs), and that ONRC Action would move to enjoin these sales if the Forest Service were to award them. Plaintiff's Response to Defendant's Second Motion in Limine ("Pl. Resp.") at 3. Also, plaintiff contends that the documents it proffers establish that the Forest Service kept ONRC's lists a "secret," in some unspecified manner. As we demonstrated in our opening motion and below, evidence of settlement negotiations is not admissible.

A. Internal Documents That Are Used As The Basis To Evaluate A Party's Settlement Positions Or Are Prepared In The Course Of An Effort To Compromise Are Properly Excluded by Fed. R. Evid. 408

Scott seeks to admit into evidence a great number of Government documents relating to settlement discussions with the ONRC Action plaintiffs. Scott contends that these documents are not excluded by the provisions of Fed. R. Evid. 408 because they are internal memoranda that were never communicated to the ONRC Action plaintiffs. In support of its position, Scott relies upon Blue Circle Atlantic, Inc. v. Falcon Materials, Inc., 760 F. Supp. 516, 522 (D. Md. 1991); aff'd mem., 960 F.2d 145 (4th Cir. 1992). Pl. Br. at 9.

The reasoning of Blue Circle was soundly rejected by Third Circuit, and this Court should be guided by that decision. In Affiliated Mfrs., Inc. v. Aluminum Co. of America, 56 F.3d 521, 529 (3rd Cir. 1995) (citing Ramada Dev. Co. Rauch, 644 F.2d 1097, 1107 (5th Cir. Unit B 1981), the court held that documents, including internal documents, that are prepared by a party to evaluate its settlement position or are prepared in an effort to reach a compromise are inadmissible pursuant to the terms of Fed. R. Evid. 408. The court's reasoning in Affiliated is instructive upon this subject in that it specifically analyzed the Blue Circle court's analysis and concluded that it was based upon a misunderstanding of the treatise on which it based its holding. Affiliated 56 F.3d at 529. Specifically, the court in Affiliated found that there was no clear rule for how to treat internal memoranda that related to settlement discussions. Id. at 529 fn. 4.

Instead, as noted above, the Affiliated court elected to follow the precedent set by the Fifth Circuit in Ramada, which held that a report that was prepared as the "basis for settlement negotiations" that "represented a collection of statements made in the course of an effort to

compromise" was properly excluded under Fed. R. Evid. 408. Ramada 644 F.2d at 1107. Here, the documents plaintiff seeks to introduce into evidence constitute documents prepared by the Government in an effort to determine and evaluate its position regarding settlement. As such, they fall within the definition of Fed. R. Evid. 408 especially because plaintiff proffers this evidence to prove the Forest Service's liability in direct contravention of the policy stated in Fed. R. Evid. 408. Affiliated, 56 F.3d at 529. As such, evidence – both documentary and testimonial – relating to the Government's settlement negotiations with ONRC Action should be deemed inadmissible. As we stated in our opening brief, defendant respectfully requests that this Court disallow testimony from Mr. Edward Boling, a former Department of Justice attorney, regarding areas described on plaintiff's witness list as: "evaluation of ONRC Action and the weakness of the government's position; the lack of merit of the Forest Service's interpretation . . . communications with others regarding the ONRC Action litigation . . . and authentication and explanation of documents concerning Mr. Boling." Pl's. Witness List. Furthermore, defendant respectfully requests that this Court determine that the following documents are inadmissible under Fed. R. Evid. 408: Pl. Ex. Nos. 65, 75, 7687, 88, 95, 96, 99, 100, 101, 110, 116, 118, 119, 120, 126, 129, 132A, 139, 141, 143A, 154, 157, 158.

B. Even if Scott's Proffered Evidence Of The Government's Settlement Negotiations Were Admissible, It Is Of No Probative Value To The Court

Even if the evidence were admissible, it is difficult to share Scott's elevated view of its importance in this case. The fact that ONRC Action, as an environmental activist group, opposed the award of any timber sale contract in a National Forest is hardly a remarkable proposition. Similarly, the fact that a group of environmental activists would threaten to enjoin any timber sale that was awarded by the Forest Service in any circumstances is hardly

remarkable. The prevalence of timber sale contract awards being challenged in and temporarily enjoined by environmental lawsuits is an established fact of life in the timber industry in the Pacific Northwest – a fact well known to Scott.

Indeed, it is surprising that Scott contends that the possibility that these timber sales, or any timber sale, could be enjoined by environmental litigation could be, in any way, secret knowledge uniquely in the possession of the Forest Service, and unavailable to Scott. Scott has participated as an intervenor on the side of the Government, American Lands Alliance v. Kenops et al., 1999 WL 672213 (D.Or. 1999); Portland Audubon Soc. v. Lujan et al.,784 F. Supp. 786 (D.Or. 1992); Portland Audubon Soc. v. Lujan et al., 865 F. Supp. 1464 (D. Or. 1994). Additionally, Scott Timber itself has had numerous timber contracts suspended because of environmental litigation. In Scott Timber Co. v. United States, 40 Fed. Cl. 492 (1998), Scott challenged the suspension of eleven timber contracts that were suspended based upon an injunction issued by Judge Rothstein of the United States District Court for the Western District of Washington. Scott, 40 Fed. Cl. at 495. This litigation lasted from 1990 through 2006, and resulted in four reported opinions, including one from the United States Court of Appeals for the Federal Circuit. Scott Timber Co. v. United States, 333 F.3d 1358 (Fed. Cir. 2003); Scott Timber Co. v. United States, 40 Fed. C. 492, 496 (1998) (alleging breach of contract after the Forest Service suspended contract performance in response to a temporary restraining order issued to protect the marbled murrelet).[1] Similarly, in In re Scott Timber Co., Inc., 00-1 BCA ¶ 30,760 (Feb. 4, 2000), Scott challenged a deemed denial of its claim for damages after the

---

[1]See also Scott Timber Co. v. United States, 44 Fed. Cl. 170 (1999); Scott Timber Co. v. United States, 65 Fed. Cl. 131 (2005); Scott Timber Co. v. United States, 64 Fed. Cl. 130 (2005).

Bureau of Land Management ("BLM") suspended performance in accordance with a temporary restraining order after a district court found the BLM did not comply with environmental law. Finally, Scott brought an affirmative case, as co-plaintiff with other timber companies against the Government, requesting, among other things, that the court order the BLM to award certain timber sales despite the fact that the environmental review required by the Endangered Species Act (16 U.S.C. § 1536(a)(2)) had not been completed. Lone Rock Timber Co. v. United States Dep't of Interior, 842 F. Supp. 433, 441 (D. Or. 1994).

Scott's proffered evidence that the Forest Service may have negotiated a settlement with environmental plaintiffs that resulted in the temporary suspension of timber contracts, even if it were admissible, is of limited probative value to the Court. Scott's historic participation in environmental litigation related to timber sale contracts undermines its claim that the Forest Service possessed any secret knowledge of the possibility that the timber sale contracts at issue in this case could be suspended.

For the foregoing reasons, we respectfully request that the Court issue an order ruling that all evidence relating to settlement negotiations between the Government and the Oregon Natural Resources Council Action ("ONRC Action") is inadmissible.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

OF COUNSEL:

/s/ Joan M. Stentiford
JOAN M. STENTIFORD
ELLEN M. LYNCH
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 616-0341
Fax: (202) 514-8624

Marcus R. Wah
Rebecca Harrison
Ben Hartman
Office of the General Counsel
United States Department of Agriculture

June 18, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 18th day of June, 2008, a copy of "Defendant's Reply to Plaintiff's Opposition to Defendant's Second Motion In Limine" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joan M. Stentiford
JOAN M. STENTIFORD